UNITED STATES DISTRICT COURT
DISTRICT OF CONNETICUT

| | | |
|---|---|---|
| ALICE G. SVEGE, ADMISTRATRIX, ET AL | : | CIVIL NO. 3:01 CV 01771 (JBA) |
| Plaintiffs, | : | |
| | : | AFFIDAVIT OF SAMUEL J. |
| | : | SERO IN OPPOSITION TO THE |
| VS. | : | DEFENDANT'S MOTIONS TO |
| | : | PRECLUDE EXPERT |
| MERCEDES-BENZ CREDIT | : | TESTIMONY |
| CORPORATION, ET AL | : | |
| | : | |
| Defendants. | : | August 5, 2003 |

**COUNTY OF CAPE MAY**           )
                                 ) :ss
**STATE OF NEW JERSEY**          )

**SAMUEL J. SERO**, being sworn, deposes and says as follows:

I am a licensed Professional Engineer and a graduate of the Carnegie Institute of Technology, with a Bachelor of Science degree in Electrical Engineering. I have also studied advanced engineering mathematics at Carnegie Melon University. I am the owner of Renaissance Engineering, a company that, among other activities, provides forensic consulting services to insurance companies and lawyers representing either plaintiffs or defendants in need of expert evaluations in the field of electrical engineering. I am a member of the Institute of Electrical and Electronic Engineers and the Society of Automotive Engineers and have worked for over thirty years in various industries requiring my expertise as an electrical engineer.

In addition, I have been employed as a forensic engineer engaged in the investigation and reconstruction of accidents since1989. I have investigated over one hundred automobile accidents to determine their probable cause, including over twenty accidents involving sudden unintended accelerations. I have qualified as an expert

1

witness in court on approximately thirty- two occasions, including several automobiles cases, and have specifically been affirmed as qualified testify as an expert witness by the second circuit in the case of Jarvis vs. Ford Motor Co. regarding a Daubert challenge in the lower court.

I respectfully submit this affidavit in opposition of the motion which seeks to disqualify me as an expert in this case, and in support of the plaintiffs' application to disqualify defendant's experts, none of whom are qualified by education, training, and experience to testify as to the electronic capabilities of the Detroit Diesel Engine, the engine brake or ABS.

I have been retained by attorney Leo Gilberg on behalf of the plaintiff with regard to my expertise as an electrical engineer to evaluate and analyze the electrical systems and the electronics of the Freightliner tractor that was involved in the accident on September 16, 1999, and to determine, within a reasonable degree of engineering certainty, whether any form of failure or lack in the electronic controls of the 1998 Freightliner truck, driven by Mr. Wightman, caused or contributed to the accident.

Mr. Gilberg had asked me to do this evaluation and analysis for a number of reasons.

One is that defendants, Detroit Diesel and Freightliner claim that the ABS monitoring was on and that the tractor ABS computer or ECU was capable of independently, disengaging the engine brake upon sensing a wheel slip, lock up condition or loss of traction in the drive wheels of the tractor, associated with engine brake use on wet roads.

The defendants therefore contend as a defense to this lawsuit, that assuming that the engine brake was enabled on a wet and slippery pavement, when Wightman took his foot off the throttle, causing the rear wheels to decelerate on the wet pavement, the tractor ABS computer was so designed that it would have disengaged the engine brake during the "ABS event", which did not require the application of the service brake by the driver.

I have also been requested that I make an analysis of the electronic system of the tractor to determine whether full use of its electrical capabilities of the engine, engine brake, and ABS would have prevented this tragedy, either by designing out and significantly limiting the inherent nature of the engine brake in wet and slippery weather to suddenly jackknife and lose directional control, and to assess what electronics in the system could have been utilized to have adequately warned the driver of the danger of jackknife and loss of control in using the engine brake in wet weather conditions in a manner that would have changed the driver's manner in operating the tractor-trailer, based upon the tractor's electronic capabilities to do so.

I have read the motion papers that seek to disqualify me and the claim that as an electrical engineer I cannot fulfill the assignment given to me because I have no expertise in accident reconstruction, loss of control analysis, or human factors psychology.

It is an assertion that has no rhyme or reason.

I claim only expertise in the field of electronic engineering.

I have employed the same methology that I have employed for over 30 years, namely by relating known and accepted electronical engineering principles that have been accepted, tested or peer-reviewed to the facts or evidence of the case.

In conjunction with my analysis and evaluation in this case, I have reviewed the following documents:

Defendant Detroit Diesel Objections and Responses to plaintiffs' Interrogatories and Requests for Production dated 12/9/02
    Detroit Diesel (DD) Series 60 Engine Operator's Guide
    Rockwell WABCO D-Version ABS 42-27 Service Bulletin
    DDEC IV Application and Installation Manual
    Freightliner Heavy-Duty Trucks maintenance Manual
    Freightliner FLD Conventional Drivers Manual
    Combined Vehicle Specifications/TSO
    DDEC III Functional Test Plan
    DDEC IV Software Strategy Manual
    DDEC III/IV Serial Communications Specification
    DDEC Engine Control System Specification
DDC 00191-00200
Photos PASP 1-48
Freightliner Engineering Technical Report, Winter Test T021-97/12
DD- Engine Troubleshooting
    Electronic Troubleshooting
    ProDriver
SAE J1621
SAE J1922
DD Series 60 Service Manual Section 1-29
Depositions with attachments:
    Scottie Wightman 11/19/01
    Don Barnes 11/21/02
    Ian McKenzie 3/13/03
    Trooper Martin C. Long
Rockwell WABCO ABS for Trucks, Tractors and Buses, Maintenance Manual No. 30
Revised 2-97 WABCO ABS Training Program Student Manual
Experts reports of John C. Glennon, David E. Clement, Norris Hoover, Bruce Koepke, and William Howerton
Review of excepts of the depositions of Norris Hoover, Bruce Koepke, and William Howerton

As a point of reference and without any assumptions or conclusions as to the accuracy of the statement, I have a history that on 9/16/99 Mr. Wightman was driving a Freightliner tractor-trailer on the Pennsylvania Turnpike in wet weather

4

with the engine brake on and experienced a jackknife condition and lost control of the vehicle.

However, it should be noted that defendant's proposed expert engineer, employed by Freightliner, testified that in reading the depositions of Scottie Wightman, the driver, Koepke's understanding was that Wightman believed he had the Jack Brake on.

Mr. Koepke testified at page 107, line 10:

"Q. Let me just ask you this: Did you dismiss in any conclusions you made about whether the engine brake was on and off the testimony on page 53 that we've just read that Scottie Wightman didn't have any independent recollection as he was taking that deposition whether or not it was or wasn't on?

MR. WILLIAMS: Same Objection.

A. Well, I have read both of his depositions, and as I said, it is confusing. But my understanding of these depositions is that he believed he had the Jake Brake on. But in my conclusions, I go on basically to prove that it doesn't matter if he does or not."

Annexed as Exhibit U.

A review of voluminous material including over 3000 pages of DDEC material reveals that the Rockwell WABCO D-Version ABS on the subject tractor is an electronic system that monitors and controls wheel speed during braking.

<u>Rockwell WABCO D-Version ABS,</u> Service Bulletin, page 1

As well, during an "ABS Event", the ABS computer sends a signal to shut off the engine retarder (<u>WABCO ABS Training Manual, pg. 1-28</u>)

Authorities annexed as Exhibit V

5

Donald Barnes, manager of the electrical testing department of defendant Freightliner, with a B.S Degree in Electrical Engineering, and produced as a 306 (b) witness, was deposed and testified on page 17, line 6:

> Q. When you use the term, "ABS event", what are you referring to? What's an "ABS event"?
>
> A. Well, ABS is an antilock brake system, and the antilock brake system control valves in the brakes, air brake system. And an ABS event is when you are in a braking situation and a wheel skids. And when a wheel skids, it loses contact, basically frictioned contact, with the road surface. And in order to reestablish frictional contact with the road surface, the ABS System basically pulses the brakes, and it's a very complex algorithm which -- I don't understand all the algorithms developed by WABCO. And what it does is --as the system is described, it basically is antilock. It keeps the wheels from locking up in a brake, hard brake, situation.
>
> Q. The ABS system passively monitors the vehicle wheel speed at all times; isn't that right?
>
> A. Yes.
>
> Q. In itself, is that an ABS event?
>
> A. No.
>
> Q. Is an ABS event and event where the ABS controls the wheel speed during and emergency?
>
> A. Yes.

Q. Now, for the ABS system to control wheel speed during and emergency, is something required of the operator of the tractor?

A. No.

Q. He's is not required or she's not required to make some application of the service brake in order to activate the ABS system?

A. Right. I was assuming that this was during a braking situation. Yes."

And on page 27, line 5:

Q. What are the circumstances that would cause the engine brake to be turned off when the engine brake switch is on?

A. We discussed that earlier, and I described it as an ABS event.

Q. And such an ABS event would require application of the service brake by the operator?

A. Yes."

And on page 96, line 16:

"Q. (By Mr. Gilberg) Let's look at the page that's been designated 358 in Exhibit 5, FLD Conventional Driver's Manual and let me point out to you this paragraph on the left-hand side of the page. Do you see where it says, "The Rockwell WABCO antilock braking system, ABS, is and electronic wheel-speed monitoring and control system that works with a standard air brake system", see that?

A. Mm-hmm. Yes, I do.

Q. That was true on this particular subject tractor?

A. Yes.

Q. You see the next line, "ABS passively monitors vehicle wheel speed at all times," comma? And can you tell me what's meant by passively?

A. Well, I can give you my interpretation.

Q. Okay.

A. In my opinion, the word "passively" means that it is sensing the wheel speed without influencing the rotations of the wheels.

Q. In other words, the ABS system is not controlling the wheel?

A. Well, "passively" means that the monitoring of the wheel speed, the actual monitoring and picking up the information about wheel speed, does not influence the rotation of the wheel.

Q. And it continues after the comma, "but controls wheel speed during an emergency or reduced traction stop."

A. Well, that means that it will apply control to the brake system to influence the rotation of that wheel.

Q. Now, how will it do that?

A. Okay.

Q. What mechanically takes place to control the wheel speed with the ABS?

A. My understanding of the system is that it pulses the brake air system, and those pulses are applied to the brake chamber, and then those pulses are transferred to the brake, foundation brakes, which, you know, push up against the brake drum.

Q. Are you saying that means that the brakes are activated?

A. Yes.

8

      MR. WILLIAMS: Objection as to form

      (discussion off the record)

Q. (By Mr. Gilberg) Now, this application of brakes initiated by the ABS system has nothing to do with what the driver does, or does it?

A. The driver applies the brakes.

Q. Okay, if the driver does not apply the brakes—Well, withdrawn. Let's go back. Did you tell me "controls wheel speed during an emergency reduced traction stop," meant that a pulse was sent to the brakes and activated the brakes? Is that what I understood you said?

A. Well, provided that the driver applied the brakes.

Q. Okay. So that control has to be in conjunction with the driver's decision to apply the brakes.

A. Yes.

Q. If the driver does not apply the brakes, the ABS will not send that pulse to the brakes? Is that what you're saying?

A. Yes."

Annexed as Exhibit Y.

After a very careful search of the documents in the Detroit Diesel Manuals, I have come to the opinion with a reasonable degree of certainty as an electrical engineer that although the ABS monitoring of wheel speed is continuos, no documentation exists that the tractor ABS communication is capable of independently disengaging the engine brake upon sensing a wheel slip condition or loss of traction such as is associated with engine brake use on wet roads.

Rather, the documentation indicates that the service brake must be applied for the full functioning of the ABS, and all of its peripheral controls, to take place. None of the WABCO documents support any claim of the ability of the ABS sensors to take control of the engine brake function without service brake application. For any such ability to exist the engine controller would have to be programmed to interpret and react to the signals from the various ABS systems, which is not the case.

My review of the DDEC IV Application and Installation Manual, Engine Brake Control, pgs. 5-39, and 5-40 show that the engine brake had the ability of a number of forms of control:

An engine brake disable function which is switched to the ground whenever a vehicle system, such as a traction control device, does not allow engine braking to occur. This function is a digital input that can be generated by any system such as the ABS unit output on a condition such as described in (2), **but only if the ABS is engaged by the service brake.** Engine Brake Disable, DDEC IV Application and Installation page 5-39.

An Engine Brake active light is an option. This would give warning to a driver that the EB is active under conditions when it should not be used. Page 5-40 A&I manual.

There is Service Brake control, which can be implemented, or not. This can allow the operation of the engine brake only when the service brake is engaged and the engine brake function in on. Page 9 of Combined Vehicle Specifications/TSO Report shows for the subject vehicle shows that "Service Brake Activates Retarder—off" was actually wired into the tractor involved in this accident, but had never been made operational.

10

This option was available at no cost.

Authorities annexed as Exhibit W.

Ian Daniel McKenzie, Director of Electronic Systems for Detroit Diesel testified at his deposition on page 60, line 6 as follows:

"Q. Is there a service brake control which could be implemented that would allow the operation of the engine brake only when the service brake is engaged and the engine brake function is on?

    A. I'm not sure what you mean by the engine brake function is on, so could please restate your question?

    Q. Well, if the engine brake switch is on – in other words, there will be a service brake control that would allow the operating of the engine brake only when the service brake is engaged and the engine brake switch is on.

    A. I think I understand the question now. Thank you for restating. Yes, that was a customer selectable option.

    Q. And where are you reading from?

    A. The DDEC Software Strategy Manual, Section 8.3.2.2.6, vehicle speed conditions, where it states the brake release switch is off or Jake service brake enable is not set.

    Q. And at what is the cost of such on option? I'm not asking for an exact figure, but to create this kind of an option what kind of a cost are we talking about?

A.  It was at the time a standard feature of the DDEC IV control module and is available to the end customer at no cost, he simply needs to turn it on or off."

Authorities annexed as Exhibit X.

I have reviewed Exhibit R annexed to these papers, an SAE paper titled "Directional Control of Retarder- Equipped Heavy-Trucks Operating on Slippery Surfaces which on page 2 reports simulations of heavy trucks in turning maneuvers in which the retarder is applied where the vehicle experiences such a sudden jackknife that the driver has only 0.5 seconds to react between the time the articulation angel of the jackknife begins to increase rapidly until the time the jackknife becomes uncontrollable.

A reading of Mr. Wightman's deposition gives vivid and textbook testimony of a sudden jackknife that in a mater of seconds became uncontrollable due to loss of directional control.

With typical driver reaction times (ideal conditions, no rain, no slippery roads, etc.) of about 1.5 seconds, drivers like Mr. Wightman cannot recognize the critical condition they are in to make a service brake application and actuate on ABS event.

This service brake control of the engine brake which allows operation of the engine brake only when the service brake is applies would have permitted Mr. Wightman to actuate ABS, release the air pressure in the skidding rear axle wheels, and disengaged the engine brake. In short, with a reasonable degree of certainty as an electrical engineer, in my opinion, implementation of the service brake option would have avoided the accident with the SUV.

In my opinion with reasonable degree of certainty as a licensed professional electrical engineer, the design of the subject tractor electronically which permitted it to be used in wet and slippery conditions, under conditions known to cause loss of vehicle control was unreasonably dangerous and defective, by not designing into it an operational service brake control feature that defendants had already made feasible and cost-effective. An engine brake active light is also an option. This would give warning to a driver that the engine brake is active under conditions when should not be used, page 5-40 A&I manual.

I do not claim to be a warning expert, and my function here is to show that this option existed, and I leave to David E. Clement, Ph.D, the human factors psychologist, to express any opinions on this matter.

It is respectfully submitted that the above functions, the Service Brake Control and the Engine Brake active light are recognition by the product sellers that the engine brake has limited safe operating parameters.

Basically, this is a case dealing with electronic devices and I respectfully submit that my testimony will be helpful to the trier of the facts.

Based upon all of the above, I respectfully request the Court to deny the defendant's motion and permit me to testify and the plaintiffs to have their day in Court.

Samuel J. Sero

Sworn to before me this
5th day of August, 2003

2007645
BRUCE W. RIORDAN
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires Feb. 4, 2005

14