17 April 2003

OPINION ON:

    CASE:    Svege v. Mercedes-Benz Credit Corporation, et al.

    FOR:    Mr. Leo Gilberg, Attorney at Law

    BY:    David E. Clement, Ph.D., Human Factors Psychologist

------------------------------------------------

### Qualifications of the Expert

My name is David E. Clement, Ph.D., CPE. I reside at 3550 Overcreek Road, Columbia, SC 29206. I am a human factors psychologist, licensed in the State of South Carolina and the State of Florida, and I am board certified as an ergonomist. I am employed by the University of South Carolina as a Professor in the Department of Psychology, and in addition I have a part-time private practice as a consultant. I also am a graduate engineer (I have a B.S. in chemical engineering). Attached is a two-page resumé.

I have testified in both state and federal courts as an expert in human factors psychology. My trial testimony includes 65 appearances in person, while I have also been deposed in about 200 other cases. Attached is a seventeen-page list of trial and deposition appearances since January 1994. Also attached is a page containing my billing rates and practices.

### Relevant Areas of Expertise

The areas in psychology relevant to the case include, but are not limited to, the following: visual perception, attention, information processing, learning, memory, expectations, decision processes, response times and characteristics, and motivation. Applications of principles from these areas are part of the behavioral bases of human factors psychology and systems safety.

### Bases for Opinions in Svege

The bases for my opinions in this matter are of two types:

    1. The first includes my own coursework, reading in technical and professional books and journals, experience as an engineer and as a human factors psychologist, and continuing education during

    the past forty-plus years. In regard to this, no specific sources were consulted in reaching the opinions enumerated below (although relevant references are mentioned as illustrations of the principles described). Rather, my cumulative education, reading, and experience were relied upon. (See *Appendix A: Methods & Literature* for expansion on the methodology used in reaching my opinions. Also attached is a list of my own research publications.)

2. The second includes those materials provided by Mr. Gilberg, attorney for the plaintiff.

    a. Deposition of Scottie W. Wightman, 11/19/01.

    b. Deposition of Don Barnes, 11/21/02.

    c. Deposition of Ian Daniel McKenzie, 3/13/03.

    d. Portions of manuals from Freightliner, from Detroit Diesel, and from Jacobs Vehicle Systems (dated between 1997 and 2002)..

    e. Portions of pleadings, etc. by various parties to this action.

## My Understanding of the Facts in the Accident

On Thursday, 16 September 1999, on the Pennsylvania Turnpike, an eastbound Freightliner tractor-trailer combination driven by Scottie W. Wightman lost traction on wet pavement, skidded and jackknifed, ultimately crossing the median and striking a westbound vehicle containing members of the Svege family. The Freightliner was powered by a Detroit Diesel engine equipped with a Jake Brake (Jacobs Vehicle System). The eastbound lane of travel in which Mr. Wightman lost control was on a slight downgrade with a sweeping right-hand curve. Mr. Wightman states his speed as being about 55-58 miles per hour prior to losing control of his vehicle. Mr. Wightman states that he had prior experience driving similar Freightliner tractors, driving on the Pennsylvania Turnpike, and using an engine brake. He also states that in normal circumstances he would have the engine brake on, and in wet road conditions he would have it off. He does not recall whether it was on or off at the time of the accident, although the road was wet at that time. Just prior to the accident, the truck began to spin in a clockwise direction, and Mr. Wightman attempted to bring the vehicle out of the spin by applying the trailer brakes, without using the service brakes. This was unsuccessful, and the accident occurred.

The engine brake in Mr. Wightman's vehicle could be turned on by means of two toggle switches in the cab of the tractor. There was no warning attached to the surface near

these switches regarding any dangers involved in the use of the Jake Brake. There was no indicator light nor other mechanism to indicate that the engine brake was enabled other than the actual position of the switches.

There is a warning in the 1997 Freightliner Driver's Manual stating, in part, "Don't use the engine brake if road surfaces are slippery." Consequences in this warning are the possibility of "...personal injury and property damage." There are combinations of warnings and instructions in the Detroit Diesel Operator's Guide (2002, but not in the 1999 version), and in the Jacobs Vehicle Systems Professional Driver Techniques and Owner's Manual (1997) that include tactics for use of the engine brake under wet road conditions, and that instruct the driver to "immediately turn off the engine brake" if certain negative things are happening.

It is argued that the engine brake was enabled (switches turned on) at the time of the accident, and thus was engaged when Mr. Wightman released the accelerator with the truck engine in gear and with the clutch pedal released, and that the actions of the engine brake contributed to his inability to avoid the jackknifing of his trailer. I have assumed that these arguments are correct in reaching my opinions. (My expertise does not include either accident reconstruction nor independent knowledge of the limitations of various braking systems, nor interactions of various braking systems.)

Opinions Concerning the Accident

My expert opinions as a human factors psychologist, to a reasonable degree of scientific certainty, are that:

1. Warnings regarding the use of engine braking in wet pavement conditions, as provided in owner's or operator's manuals were inadequate.

2. There was no warning in the tractor cab regarding the use of engine braking in wet pavement conditions.

3. There was no active indication, much less warning, in the tractor cab regarding the active status of the engine brakes when they were in fact enabled (switch or switches turned on).

4. Had an active warning and indication of the engine brake status been available in the cab of the tractor, it is more likely than not that this accident would not have occurred.

The following paragraphs expand upon these specific opinions.

1. The warnings in the various guides and manuals do not emphasize the catastrophic consequences which could occur if the engine brake were used in wet pavement

conditions (e.g., jackknifing and total loss of control of a tractor-trailer, leading to death and/or serious injuries to occupants of the tractor trailer and to occupants of any other vehicle involved in any subsequent accident). While some information and relatively weak warnings were included, research has shown that the most serious outcomes of specific hazards should be emphasized in any potentially effective warning (see, for example, Wogalter & Barlow, "Injury Severity and Likelihood in Warnings," reprinted in <u>Human Factors Perspectives on Warnings</u>, 1994, pages 201-204).

2. There is no indication in any materials I have received that a warning was near the control switches for the engine brake. It is well-known in the safety professions that warnings should be placed in a fashion that makes them visible and obvious at the time the warning is needed. (For example, see pages 680-684 in Sanders & McCormick. Full reference is in the Methods & Literature attachment at the end of this report.)

3. There is no indication in any materials that I have received that any active indicator (such as an LED display, or even a steady or flashing light) was present on the dashboard of the tractor cab. Safety principles emphasize the importance of "active" attention getters. (For example, see pages 681-682 of Sanders & McCormick.) Having an active display, such as an indicator light (either steady or flashing), and/or a lighted indicator stating "Engine Brake ON" seem to be economical and feasible alternatives.

4. Had such an active indicator display or light been on the dash of this Freightliner vehicle, a driver in the circumstances of Mr. Wightman would have been aware of the active status of the engine brake, and given his own testimony that he normally turned off the engine brake when encountering wet pavement, he would more likely than not have turned the brake off before the situation occurred which resulted in the accident. Furthermore, even had someone such as he decided for whatever reason to leave the engine brake active, when he began to lose control, he would have been aware of the engine brake status, and could have turned it off, possibly in time to avoid the loss of control. Without such knowledge in his current awareness, he would not have had sufficient time to recognize that the engine brake might be on, and take action prior to losing control.

As any action sequence is practiced over and over again in particular situations, the execution of that action sequence gradually goes from "controlled processing" (the person has to think through each step just prior to executing it) to "automatic processing" (the initiation of the action is sufficient for the entire sequence to be carried out without detailed consideration). See, for example, Salvendy, pp. 138-139 and pp. 144-145 (reference under Methods & Literature at the end of this report). Using the trailer brake to attempt to avoid jackknifing in an emergency is just such a response sequence, and becomes so automatic that a driver with more than minimal experience will be expected to respond to emergencies with this braking first (considering other possible actions only during this braking process, if at all). See, for example, Salvendy, pp. 138-139. Thus, a beginning of a jackknife sequence such as that assumed to have occurred in this accident would lead to

David E. Clement, Ph.D.                                                                                              5

automatic reliance on further (and harder) braking, and would require additional time (more than several seconds) to recognize that this action was not effective, and to evaluate and choose other actions. The primary cause of this additional time is the unexpected or unpredicted nature of this failure to regain control. Unexpected events are not processed as rapidly as expected events. See, for example, Salvendy, pp. 114-115 and pp. 204-209, and Sanders and McCormick, pp. 285-289 (reference also under Methods & Literature at the end of this report). The unexpected nature of these events can lead to a driver's processing times being more than three seconds before any different action is chosen and executed (see, for example, Sanders and McCormick, pp. 702-703).

In summary, it is my opinion, to a reasonable degree of certainty from the standpoint of human factors psychology, that this accident was due to the absence of any potentially effective warning regarding the use of the engine brake, and the absence of any warning or indication that the engine brake was still activated. Had such a warning and/or indication been present, the accident would not have occurred.

*(These opinions are subject to review and possible revision if further information becomes available.)*

                                                                    _____
                                                                    David E. Clement, Ph.D., CPE

                                                                    17 April 2003

## Appendix A

**Methods & Literature**

The bases for my opinions come from specific exhibits and documents in any case being considered, as well as my own coursework, research, reading in technical and professional books and journals, experience as an engineer and as a human factors psychologist, and continuing education over the past forty-plus years. Of course, I rely upon my own research in relevant areas, but the vast majority of my knowledge comes from reading the research of other scientists and combining and synthesizing the results of this research.

The research to which I refer in psychology in general, and in human factors psychology specifically, is conducted using well established principles of research design, data analysis, and interpretation. Published research has been reviewed by professional peers, and adheres to such standards as measuring error probabilities and claiming reliability of results only when the probability of error is 0.05 or less. (This refers to "Type I" error.)

In regard to my professional education, reading, and experience, individual articles and books rarely speak specifically to the circumstances of an accident. Thus, my own synthesis of a variety of sources serves as the basis for my expert opinions. However, the following references contain summaries of many research studies in human factors psychology as well as in areas of basic experimental psychology research which are applied in human factors, and could be consulted for general understanding of the principles and data involved:

    Sanders, M.S., & McCormick, E.J. (1993) <u>Human Factors in Engineering and Design</u>. (Seventh Edition) New York, N.Y.: McGraw-Hill.

    Salvendy, Gavriel (1987). <u>Handbook of Human Factors</u>. New York: John Wiley and Sons.

    Boff, Kenneth R., Kaufman, Lloyd, & Thomas, James P. (1986). <u>Handbook of Perception and Human Performance (Vol. 1: Sensory Processes and Perception)</u>. New York: John Wiley and Sons.

    Boff, Kenneth R., Kaufman, Lloyd, & Thomas, James P. (1986). <u>Handbook of Perception and Human Performance (Vol. 2: Cognitive Processes and Performance)</u>. New York: John Wiley and Sons.

    Atkinson, Richard C., Herrnstein, Richard J., Lindzey, Gardner, & Luce, R. Duncan (1988). <u>Stevens' Handbook of Experimental Psychology, 2nd ed. (Vol. 1: Perception and Motivation)</u>. New York: John Wiley and Sons.

Atkinson, Richard C., Herrnstein, Richard J., Lindzey, Gardner, & Luce, R. Duncan (1988). <u>Stevens' Handbook of Experimental Psychology, 2nd ed</u>. (<u>Vol. 2: Learning and Cognition</u>). New York: John Wiley and Sons.

Van Cott, Harold P., & Kinkade, Robert G. (Eds.) (1972) Human <u>Engineering Guide to Equipment Design (rev. ed.).</u> Washington, D.C.: U. S. Government Printing Office.

<u>Product Safety Sign and Label System</u>. (1985) Santa Clara, CA: FMC Corporation.
(FMC Corp., P. O. Box 580, Santa Clara, CA 95052; 408-289-3486)

National Safety Council (1959) <u>Accident Prevention Manual (4th ed.).</u> Chicago, IL: National Safety Council.
(NSC, Chicago, IL; page 4-2: 1) eliminate; 2) guard @ source;3) guard person)

Plus journals such as <u>Human Factors, Journal of Experimental Psychology, Professional Safety, Journal of System Safety</u> (formerly <u>Hazard Prevention</u>), <u>Standardization News</u>, etc.

Plus papers presented at annual conferences such as those of the Human Factors and Ergonomics Society.

Swain, Alan D. (1974) The Human Element in Systems Safety.