147

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

| | | |
|---|---|---|
| ALICE G. SVEGE, ADMINISTRATRIX, ET AL. | : | CIVIL NO. 3:01 CV01771 (MRK) '04 |
| Plaintiffs, | : | |
| VS. | : | |
| MERCEDES-BENZ CREDIT CORPORATION, ET AL. | : | |
| Defendants. | : | JULY 20, 2004 |

**DEFENDANTS' SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO PRECLUDE TESTIMONY OF PLAINTIFFS EXPERT DAVID E. CLEMENT**

According to comments supplied with Plaintiffs' witness list, their expert David E. Clement proposes to testify that a specific individual – Scottie Wightman – would have behaved differently than he in fact did if only there were an "Engine Brake Active Light" on the dashboard of the truck involved in this accident. Even if Clement's other opinion testimony is relevant and reliable, which is expressly denied, this opinion testimony falls far short of being admissible under Daubert standards. Putting it more bluntly, this is wild speculation. Accordingly, Defendants request that this testimony be precluded.[1]

Plaintiffs evidently recognize that this opinion does not meet Daubert standards, in that they specifically ask the Court not use "the Court's own judgment of the reliability" of the "materials" purportedly relied upon by Clement in forming his opinion. In fact, the court has an "obligation" to ensure that Daubert standards of reliability and relevance are met. See Zaremba v. GMC, 360 F.3d 355 (2d Cir. 2004) (noting that "[i]n Kumho Tire, the Supreme Court held that

---

[1] As set forth in Defendants' Memorandum of Law in Support of Their Motion to Preclude Plaintiffs' Experts Glennon, Sero, and Clement and for Summary Judgment (Apr. 13, 2004), Defendants assert that all proffered opinion testimony by Plaintiffs' experts Glennon, Sero, and Clement should be precluded.

the trial judge's gatekeeping obligation applies not only to testimony based on 'scientific' knowledge, as in Daubert, but also to testimony based on 'technical' or 'other specialized' knowledge.")

> The Supreme Court has identified a number of factors bearing on reliability that district courts may consider, such as (1) whether a theory or technique "can be (and has been) tested," (2) "whether the theory or technique has been subjected to peer review and publication," (3) a technique's "known or potential rate of error," and "the existence and maintenance of standards controlling the technique's operation," and (4) whether a particular technique or theory has gained "general acceptance" in the relevant scientific community . . . .

*Amorgianos v. AMTRAK*, 303 F.3d 256, 266 (2d Cir. 2002). Clement's conclusion that Wightman, personally, would have turned off the engine brake if the truck had been equipped with an indicator light meets none of these criteria. In addition, the Second Circuit has recently reiterated that "the trial judge has 'the same kind of latitude in deciding how to test an expert's reliability . . . as it enjoys when it decides whether that expert's relevant testimony is reliable.'" Zaremba, 360 F. 3d at 358 (quoting Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152, 143 L. Ed. 2d 238, 119 S. Ct. 1167 (1999)). The Court may thus consider those criteria that seem most apt in determining the reliability of this opinion.

Plaintiffs assert in the Joint Trial Memorandum that

> Dr. Clement will testify . . . why the Engine Brake Active Light on the dash . . . would have been an effective warning of the active status of the engine brake at a time when it was needed, why <u>the driver of the subject tractor fit within the population of professional drivers with a CDL who had many years experience who were aware of the stricture about not using Jake Brakes when the road is wet</u> . . . and <u>that based upon the inclusion of the driver Scottie Wightman in that population of drivers</u>, Dr. Clement can opine with a reasonable degree of certainty as a human factors psychologist that for drivers who fit in that population, the Engine Brake Active Light would have been a reminder to one who already knows the danger but whose attention has been diverted or arrested by competing circumstances, and for such a driver who fit into that population of drivers, it would be more probable than not that such a driver would turn off the engine brake switch, and no harm would have to come to plaintiffs.

In other words, the sole basis for Clement's conclusion that Wightman, personally, would have turned off the engine switch if there were an indicator light on the dashboard is that he had many years of experience as a driver and was "aware of the stricture about not using Jake Brakes when the road is wet."

Plaintiffs attempt to create the illusion that there is an intermediate analytical step, by noting that the fact that Wightman was a driver who was experienced and knew that he should not use the engine brake on a wet roadway puts him "in that population of drivers" who are experienced and know that they should not use the engine brake one a wet roadway. To say that he is a member of "that population of drivers" who are experienced and know that they should not use the engine brake one a wet roadway merely restates the fact that he was experienced and knew that he should not use the engine brake on a wet roadway.

Notably, Plaintiffs do not suggest that it is Clement's expert opinion that the behavior of most experienced drivers who were aware that they should not use the engine brake would be altered by the presence of an indicator light. This may be because Clement effectively admitted at his deposition that he had no basis for such a conclusion. When asked if he was "aware of any research involving knowledgeable users and the effect of adding labels to products," Clement responded that "[t]here's a fair amount of research that's been done on a variety of circumstances involving things like that. The outcome is very specific as to what the product is, what the person's experience is, and exactly what kinds of information is being added via the labels." (Deposition of David E. Clement, May 28, 2003 (Clement Dep.) at 107-08.)[2] Despite this, he admitted that he had not reviewed "any research concerning human factors issues and the

---

[2] All deposition pages cited herein were have been attached as exhibits to Defendants' Memorandum of Law in Support of Their Motion to Preclude Plaintiffs' Experts Glennon, Sero, and Clement and for Summary Judgment (Apr. 13, 2004).

-3-

operation of motor vehicles" that is "specific to trucks." (Id. at 47.) Although he twice acknowledged the significance of such research, stating that whether there are any such studies is a "[w]onderful question," he "<u>didn't do any research to determine if such studies exist</u>." (Id. (emphasis added).)

Thus, although Plaintiffs make the general statement that "Dr. Clement's opinions are based upon materials and data upon which human factors experts in the field base their opinions," no materials or data have ever been identified as the basis of Clement's opinion that the indicator light would have changed Wightman's behavior. Plaintiffs could have, but did not, obtain testimony on the subject from Wightman himself. Wightman has never stated that he would or could have turned off the engine brake after the initial loss of control, or that, for him, an indicator light would have served as an effective reminder to do so. Plaintiffs could have asked him such questions when they took his deposition, but evidently chose not to. This may because he testified that he was aware that he should not use it in the rain, that his best recollection was that he turned if off when he got on the Pennsylvania Turnpike, and that "[i]f the engine brake would have been on at that particular time, <u>there is no way that you would think to reach and turn it off</u>." (Deposition of Scottie Wightman, November 19, 2001 at 47, 58-59 (emphasis added).)

Clement himself "summarize[ed]" Wightman's testimony as describing "the <u>impossibility</u> of throwing the switch, <u>even if he had thought about it</u>, at the time of the accident. And that's throwing the engine brake switch." (Clement Dep. at 135 (emphasis added).) In light of Wightman's unqualified belief that there is "no way" a driver would think to turn off the switch during a loss of control event, it could not be reasonably inferred that Wightman, personally, would have thought to turn it off if there was an indicator light on the dashboard,

-4-

even assuming that (a) a majority of other drivers would have been prompted by the indicator light to turn off the engine brake, and (b) Clement is qualified to speak to the hypothetical mental reaction of a specific individual to a set of circumstances he has never been in, based on what the reaction of a majority of other drivers would be.

The latter presumption – that Clement is qualified to give expert opinions predicting the reaction of a specific individual to these hypothetical circumstances – is expressly denied, and, to Defendants' knowledge, entirely unsupported by case law. Plaintiffs have also failed to identify any basis for the presumption that a majority of drivers who (a) knew that they should not use the engine brake in the rain, but (b) did so anyway, and who (c) would not have remembered to turn it off when they experienced a loss of control without an indicator light, would have remembered to turn it off if reminded by an indicator light.

Clement is not even in a position to make an educated guess as to whether the presence of an indicator light would make any difference to drivers, much less "opine with a reasonable degree of certainty . . .[that] it would be more probable than not that such a driver would turn off the engine brake switch" if the truck were equipped with an indicator light. As more fully set forth in Defendants' Memorandum of Law in Support of Their Motion to Preclude Plaintiffs' Experts Glennon, Sero, and Clement and for Summary Judgment, Clement admitted at his deposition that he was aware that the noise made by engine brakes is so loud that it has led some communities to prohibit their use in those areas. (Clement Dep. at 61.) He also admitted that such a noise could well be the best possible indicator, but that he didn't have enough information to determine whether that was true in the present case, because he didn't know whether it would be loud enough to be heard in a rainstorm. (Id. at 59-60.) This it turn was because he had never even listened to the engine brake on this model truck, had not attempted to determine how well it

-5-

could be heard in the rain, had never driven a truck with an engine brake himself, and, to his knowledge, had never been a passenger in a truck that had an engine brake. (Id. at 30, 58-59.) Although he could easily have taken any of these steps, he evidently chose instead to assume, without any basis, that the engine brake can not be heard by the driver in a rainstorm. Clement's failure or refusal to make even a minimal effort to confirm his assumptions strongly suggests that he believed that they would not be confirmed if checked, and conclusively establishes that he has not employed a reliable methodology.

In short, the only evidence underlying Clement's opinion that Wightman would have turned off the engine brake if there had been an indicator light in the cab is Wightman's own testimony that he was aware that it should not be used in the rain and that it was his habit to turn it off when he encountered a wet roadway. Plaintiffs seek to turn this evidence on its head. The only thing that this evidence tends to show is that Wightman, in keeping with his own recollection, had the engine brake off at the time of the accident. It has no tendency to show that, if he had forgotten to turn it off, but was not reminded to do so by the fact that he began to lose control, by the noise of the engine brake, or by the position of the engine brake switches on the dashboard, he would nonetheless have been reminded to do so by the fact that an indicator light on the dashboard remained on.

Plaintiffs have the burden of showing that their proffered expert testimony meets the standards of Rule 702. They have not done so. Even if Clement can be said to have employed a methodology, rather than adopting a conclusion in search of a justification, it meets none of the Daubert criteria and, in fact, has no indicia of reliability whatsoever.

> When parties seek to introduce expert testimony in accordance with Rule 702, a district court must serve as a gatekeeper. Amorgianos, 303 F.3d at 265. The Federal Rules of Evidence "assign to the trial judge the task of ensuring that an expert's testimony both

-6-

rests on a reliable foundation and is relevant to the task at hand." Daubert v. Merrell-Dow Pharms., 509 U.S. 579, 597, 125 L. Ed. 2d 469, 113 S. Ct. 2786 (1993). United States v. Cruz, 363 F.3d 187, 192 (2d Cir. 2004). Defendants respectfully request that the Court, in its role as gatekeeper, exclude the proffered expert testimony regarding whether Wightman, personally, would have turned off the engine brake if it had been on and if there had been a light on the dashboard indicating this.

>
> DEFENDANTS,
> FREIGHTLINER CORPORATION,
> MERCEDES-BENZ CREDIT
> CORPORATION, and
> DETROIT DIESEL CORPORATION
>
> By _____
> Paul D. Williams (ct05244)
> Daniel J. Foster (ct24975)
> Day, Berry & Howard LLP
> CityPlace I
> Hartford, Connecticut 06095-3499
> (860) 275-0100
> (860) 275-0343 (fax)
> Their Attorneys

**CERTIFICATION**

THIS IS TO CERTIFY that a copy of the foregoing was mailed, on this date, postage prepaid, to:

Leo Gilberg, Esq.
305 Broadway
New York, NY 10007

_____
Paul D. Williams

-7-