UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ALICE G. SVEGE, ADMINISTRATRIX, ET AL. | : | CIVIL NO. 3:01 CV 01771 (MRK) |
| | : | |
| Plaintiffs, | : | |
| VS. | : | |
| | : | |
| MERCEDES-BENZ CREDIT CORPORATION, | : | |
| ET AL. | : | |
| | : | |
| Defendants. | : | JULY 20, 2004 |

## JOINT TRIAL MEMORANDUM

### I.    TRIAL COUNSEL

For the Plaintiff:

Leo Gilberg
305 Broadway
New York, New York 10007
t 212-822-1440
f 212-693-1410

For the Defendants

Paul D. Williams
Daniel J. Foster
Day, Berry & Howard, LLP
Cityplace I
Hartford, CT 06103-3499
t 860-275-0100
f 860-275-0343

## II.    JURISDICTION

This court has jurisdiction over this matter by virtue of the diversity of citizenship of the parties, pursuant to 28 U.S.C. § 1332.

## III.    JURY/NON-JURY

This case is to be tried to a jury.

## IV.    LENGTH OF TRIAL

Counsel anticipate a trial length of 15 days.

## V.    FURTHER PROCEEDINGS PRIOR TO TRIAL

Prior to trial, the parties seek a ruling on the Defendant Mercedes-Benz Credit Corporation's Motion for Summary Judgment, the pending Motion and Cross Motion to Exclude Experts and the Motions in Limine and Motion to Bifurcate which have been submitted with this memorandum.

## VI.    NATURE OF CASE

### A.    Plaintiff's Statement

This action arises out of a motor vehicle accident that took place on Interstate 76 in Wallace Township, Pennsylvania on September 16th, 1999.  The accident involved a collision between an SUV being operated by the decedent of one of the plaintiffs and a tractor manufactured by defendant Freightliner.  The second and sixth counts of plaintiffs' Amended Substituted Complaint filed on January 8, 2002 allege that the defendant product sellers are liable to plaintiffs pursuant to Connecticut General Statues §§52-572m(d) & 52-572q.

The plaintiffs have pleaded three legal theories of recovery against the defendants:

(a)    strict liability in tort;

(b)    negligence; and

(c)    implied warranty.

During the course of' the accident, the driver of the tractor never applied his service brake. This is not in serious dispute, and defendants do not contend that evidence exists to the contrary.

In particular, plaintiffs allege that the use of the engine brake on the tractor at the time of the accident in wet weather on a slippery roadway, conditions that were known to the product sellers to cause loss of vehicle control, was the primary cause of the tractor jackknifing as it went into a curve, losing directional control, first striking a concrete barrier to its right and then crossing over the center concrete median barrier separating opposing lanes of traffic. The tractor-trailer struck the SUV traveling in the opposite lane of traffic, killing decedent and injuring his two minor children.

Plaintiffs' claim that the use of the engine brake on the tractor on a wet slippery road surface, known to cause loss of vehicle control, made the tractor unreasonably dangerous and defective under Restatement (Second) of Torts principles establishing strict liability in tort adopted by Connecticut.

"In order to recover under the doctrine of strict liability in tort the plaintiff must prove that: (1) the defendant was engaged in the business of selling the product; (2) the product was in a defective condition unreasonably dangerous to the consumer or user; (3) the defect caused the injury for which compensation was sought; (4) the defect existed at the time of the sale and (5) the product was expected to and did reach the consumer without substantial change in condition" Giglio v. Connecticut Light & Power Co., 180 Conn. 230, 429 A.2d 486, 488 (1980) (citing Restatement (Second) of Torts §402A (1965)).

In <u>Potter v. Chicago Pneumatic Tool Company et al.</u>, 241 Conn. 199 (May, 1997), Connecticut's highest court reaffirmed Connecticut's adherence to the consumer expectation test as to whether a product was defective.

The Connecticut Supreme Court has derived the definition of "unreasonably dangerous" from comment (1) to 402A which provides that "the article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchased it, with the ordinary knowledge common to the community as to its characteristics."

The <u>Potter</u> court also held that:

1.     Under the consumer expectations test, "a manufacturer is strictly liable for any condition not contemplated by the ultimate consumer that will be unreasonably dangerous to the consumer."

2.     A jury, under appropriate circumstances, may infer a defect from the evidence without the necessity of expert testimony.

3.     The jury can draw their own reasonable conclusions as to the expectations of the ordinary consumer and the knowledge common in the community at large."  This means that a product may be in a defective condition unreasonably dangerous to the user even though no alternative design is available.

The <u>Potter</u> court, in some cases where the product is too complex for a consumer to form expectations of safety, modified the consumer expectation test by providing the jury with the product's risks and utilities and then inquires whether a reasonable consumer would consider the product unreasonably dangerous.

Among the factors that a jury may consider include:

1.     the usefulness of the product;

2.     the likelihood and severity of the danger posed by the design;

-4-

3.    the feasibility of an alternative design;

4.    the financial cost of an improved design;

5.    the ability to reduce the product's danger without impairing its usefulness or making it too expensive; and

6.    the feasibility of spreading the loss by increasing the product's price.

The availability of a feasible alternate design is a factor that the plaintiff <u>may</u>, rather than <u>must</u>, prove. (emphasis supplied).

Plaintiffs' further allege that Defendant, Detroit Diesel Corporation ("DDC"), had designed an available feasible option, at no cost to the ultimate consumer, in the form of a service brake control of the engine brake. The service brake control permitted the engine brake to be enabled only by the application of the service brake. A service brake application in this accident sequence would have activated the ABS (anti-lock braking system) of the tractor and avoided the accident with the SUV.

The service brake control was actually wired into the tractor involved in the accident, but had never been made operational.

Plaintiffs contend that while under normal driving conditions the ideal is to have use of the engine brake system without use of service brakes, the safest mechanism for control of the tractor-trailer under inclement, wet, and slippery road conditions is to have the ABS system in play. Therefore, it would be a simple matter to install a switch which transfers the on and off control from the throttle (accelerator) to the brake pedal and back again as desired. No change in the programming of the controller would be required.

This involves nothing novel, extreme or new, but simplistic switching utilized in every electrical panel that exists where you want to limit what functions are gong to be made available.

The Supplemental report of Samuel J. Sero explains in detail the operation of such a function transfer switch including his drawing or sketch, annexed to his report.

The plaintiffs contend that failure to make available in the tractor an operational brake control feature existing and wired into the tractor under conditions known to cause loss of vehicle control, made the tractor unreasonably dangerous and detective, and the defendants were negligent in failing to do so.

Furthermore, manufacturers such as defendants were negligent in failing in their duty to conduct tests on the engine brake so as to secure the production and sale of a safe product.

The plaintiffs further contend that defendants, Freightliner and DDC knew that use of the Jake brake on roadways that were wet, slippery, and icy was an accepted practice of drivers in the trucking industry.

Freightliner, in fact, included with the subject tractor, when it was sold, along with its own Driver's Manual, which stated that the engine brake should not be used on slippery roadways, the Jacobs Brake Vehicle Systems Professional Driver Techniques and Owner's Manual, considered authoritative in the industry, which gave "Driving Tips" on how to use the Jake Brake on slippery pavements.  (Exhibit K of Supplemental Report of John C. Glennon).

As well, plaintiffs are claiming that the engine brake was defective because the product sellers failed to adequately instruct and warn of the product's unreasonably dangerous properties, Conn. Gen. Stat., Sec. 52-572q.

An Engine Brake Active light had been designed by Detroit Diesel Corporation ("DDC"), the manufacturer of the electronic engine which would give warning to a driver that the engine brake is active under conditions when it should not be used (Pg. 5-40 A&I Manual), and was available to Freightliner.

-6-

The driver of the tractor-trailer testified that it was his intention and practice not to use the engine brake in wet weather, but he had no independent recollection of whether the engine brake switches were on or off, at the time he took his foot off the throttle after going into a curve on a wet highway, then hearing a "popping" sound (characteristic noise of engine brake) before going into a tractor jackknife and losing directional control of his vehicle.

An inspection of the tractor after the accident found the engine brake switches in the "ON" position, although one was broken.

Furthermore, the plaintiffs claim that the tractor was not reasonably fit for its intended purpose because it could not be driven safely on wet and slippery surfaces with the engine brake on.

Plaintiffs contend that defendant, Mercedes-Benz Credit Corporation ("MBCC") was a product seller under the CPLA.

There is evidence that MBCC was an integral partner with defendant Freightliner Corporation ("Freightliner'), both subsidiaries of Daimler-Chrysler, in bringing not only the subject tractor to market in 1998, but that MBCC had overall involvement with Freightliner in the sale of 80,000 trucks in 1998.

MBCC's involvement included both wholesale or floor-plan financing, getting the tractor into the dealership, as well as retail financing.

As well, MBCC combined with Freightliner on an advertising and marketing program called the "Freightliner Success Program", where MBCC would offer a rate reduction and Freightliner would offer product or certain warranties to put together a package to offer to buyers for the purpose of selling vehicles like the subject tractor and getting them on the road.

The package offered required that the tractor have an engine brake.

MBCC's Answer admits that they were both the owner and the lessor of the tractor.

Plaintiffs seek compensatory damages for economic and non-economic losses, as well as bystander emotional distress damages for passengers Thor Svege, Jr. and Briana Svege, who were entrapped in the SUV with their deceased parents for more than 30 minutes and punitive damages.

### B.    Defendants' Statement

This case arises from a motor vehicle accident that occurred during a rain storm on the Pennsylvania Turnpike in Chester County, Pennsylvania on September 16, 1999.  In that accident, a 1998 Freightliner FLD 132 tractor truck manufactured and sold by the defendants collided with a 1995 Chevrolet Suburban in which the plaintiffs were traveling.  The truck driver, Scottie Wightman, was operating the Freightliner tractor with a trailer carrying steel pipes proceeding eastbound on the Pennsylvania Turnpike.  Mr. Wightman lost control of the vehicle, crossed the median divide and struck the Svege vehicle that was proceeding westbound. Plaintiffs claim that the driver was using the engine brake at the time of the accident, and that his use of the engine brake on the wet roadway caused the accident.  The plaintiffs claim that the defendants failed to give Mr. Wightman adequate warnings regarding the use of the engine brake, and that, because of this, the truck was defective and unreasonably dangerous.  The Defendants deny that the truck was defective or unreasonably dangerous.  The Defendants further deny that the engine brake could have caused the accident.  The Defendants maintain that the accident occurred because the driver was operating the vehicle in a negligent manner and that he was solely responsible for this accident.  The Defendants seek a verdict in their favor.

## VII.    TRIAL BY MAGISTRATE JUDGE

Counsel have not agreed to trial by a Magistrate Judge.

## VIII.    EVIDENCE

### A.    LIST OF WITNESSES

*PLAINTIFF'S WITNESSES*

**John C. Glennon, Jr.**
**6917 West 76th Street**
**Overland Park, Kansas 66204**

Mr. Glennon is a certified automotive technologist with individual certifications in brake systems, steering and suspension systems, engine performance and electrical and electronic systems.

Mr. Glennon will testify, as more fully set forth in his Supplemental Report with Exhibits as to his analysis of the loss of control dynamics of the tractor-trailer in this case, his physical inspection of the vehicles involved in the accident and the accident site, the differences in braking as the result of service braking, engine braking, and ABS, how and why he ruled out other possible causes of loss of control, and how and why he came to his opinions that loss of directional control was caused by the engine brake being enabled when the operator took his foot off the throttle when he went into a curve on a wet and slippery roadway, a known cause of irreversible loss of control, that the ABS, absent an application of service brakes, did not have an independent capacity to disengage the engine brake and deactivation of the engine brake without service braking would only reduce braking not suspend it as ABS would, and would be ineffective in stopping loss of control, and that the service brake control would have avoided this accident.  Direct examination:  2-3 hours.

**<u>Defendants' Objection:</u>**

Defendants hereby reaffirm their objections to John Glennon Jr. and rely on their objections as set forth in their Motion to Preclude pending before the Court.

**Samuel J. Sero, P.E.**
**3352 Perrysville Avenue**
**Pittsburgh, PA 15214**

Mr. Sero is a licensed professional engineer with 37 years of professional practice as an electrical engineer, experienced in the use and understanding of microprocessor based controls such as ABS.

He will testify as to his evaluation and analysis of the electrical system and electronics of the Freightliner tractor and the various forms of control the engine brake had and did not have.

His opinions will include that the tractor ABS communication is not capable of independently disengaging the engine brake upon sensing a wheel slip condition, wheel lock or loss of traction such as is associated with engine brake use on wet roads.

Rather, the documentation indicates that the service brake must be applied for the full functioning of the ABS, and all of its peripheral controls, to take place. None of the WABCO documents support any claim of the ability of the ABS sensors to take control of the engine brake function without service brake application. For any such ability to exist the engine controller would have to be programmed to interpret and react to the signals from the various ABS systems, to specific loss of traction caused by engine braking, which is not the case.

Mr. Sero will testify regarding the service brake control option actually wired into the subject tractor but never made operational and a feasible cost-effective alternative design that retains the present use of the service brake in good weather, but eliminates the known risk of loss of control when the engine brake is used during inclement weather.

It is an alternative design that reduces the product's danger without impairing its usefulness or being expensive. Direct examination: 2 hours.

**<u>Defendants' Objection:</u>**

Defendants hereby reaffirm their objections to Samuel Sero and rely on their objections as set forth in their Motion to Preclude pending before the Court.

**Alice G. Svege and Njall Svege**
**50 East Lake Road**
**Danbury, Connecticut 06811**

The parents of Thor Svege will testify as to decedent's capacities as a son and father, his carpentry, education, skills, health, talents, recreational activities, his work around the house, and being a volunteer fireman prior to his death, as well as the capacity to carry on and enjoy his life's activities in a way that decedent would have done had decedent lived, and what the future course of his life would have been.

As well, these witness will testify as to their observance of the injuries to plaintiffs, Thor Svege, Jr. and Briana Svege, their recuperation, treatment, as well as their role in raising the children and the emotional impact upon the children of the loss of their parents. Direct examination: 1-1.5 hours.

**Catherine Rawling**
**566 Reeds Road**
**Downington, PA**

Ms. Rawlings was a paramedic dispatched to the scene of the accident.  She will testify as to what she observed and did.  Her EMS Report is Exhibit 13 on plaintiffs' Exhibit List.  Direct examination:  20-30 minutes.

**Robert F. Colen, Ph.D.**
**152 Deer Hill Avenue**
**Danbury, Connecticut 06810**

Dr. Colen will testify as to his psychological evaluation of Thor Svege and Briana Svege, and to his opinions that the traumatic loss of their parents in the subject accident is a substantial factor in causing emotional and psychological problems and conflicts as they age as contained in his report.  Direct examination:  1 hour.

**Donald A. Nicklas, M.D.**
**2865 Ringneck Road**
**Audubon, Pennsylvania 19407**

Dr. Nicklas will testify as to his autopsy of Thor Svege, Sr. and his opinions concerning the cause of his injuries and death due to this motor vehicle accident.

Dr. Nicklas will only be called if the need arises.  Direct examination:  45 minutes.

**Gary M. Crakes, Ph.D.**
**860 Ward Lane**
**Cheshire, Connecticut 06410**

Dr. Crakes will testify concerning the economic loss sustained by the Estate of Thor Svege, Sr. as contained in his Appraisal of Economic Loss dated November 26, 2001.  Direct examination:  1 hour.

**Christopher J. Cassels**
**33 Hospital Avenue**
**Danbury, Connecticut 06810**

Dr. Cassels will testify as to his orthopedic evaluation of Thor Svege, Jr.'s injuries based upon his clinical and diagnostic film examination of him as well as prior medical records, as well as his opinion that the subject accident was a substantial factor in causing the injuries sustained by Thor Svege, Jr. and Briana Svege.

Dr. Cassels' testimony will not be necessary if his report is admitted into evidence.  Direct examination:  45 minutes.

**Eric Svege**
**26 Driftway Road**
**Danbury, Connecticut 06811**

Mr. Svege, brother of Thor Svege, Sr., will testify as to decedent Thor Svege, Sr.'s activities before death, his relationship with his children, as a volunteer firefighter, and his capacity to enjoy his life's activities, his professional skills as a carpenter, his family activities, and what the future course of his life would have been, and to his observations of Thor Svege, Jr. and Briana Svege since the death of their parents.

**Linda Nekvasil**
**10086 South Silver Maple Road**
**Highlands Ranch, Colorado 80129**

Mrs. Nekvasil, sister of Thor Svege, Sr. will testify as to decedent, Thor Svege, Sr.'s activities before his death, , his relationship with his children, as a volunteer firefighter, and his capacity to enjoy his life's activities, his professional skills as a carpenter, his family activities, and what the future course of his life would have been, and to her observations of Thor Svege, Jr. and Briana Svege since the death of their parents.  Direct examination:  45 minutes.  Mrs. Nekvasil will testify only if needed.

**William Von-Ahn**
**55 Mill Plains Road #25-1**
**Danbury, Connecticut 06811**

Mr. Von-Ahn will testify as a classmate and friend since 10th grade concerning decedent before his death, their relationship as volunteer firefighters, and decedent's skills as a firefighter, a carpenter, a husband and father, and his capacity to enjoy life.  Direct examination:  25 minutes.  Mr. Von-Ahn will testify only if needed.

**Bob Haskell**
**P.O. Box 241**
**Rowayton, Connecticut 06853**

**Ginno Lanni**
**228 Briscoe Road**
**New Canaan, Connecticut 06840**

**Craig Lynch**
**15 Lincoln Drive**
**New Canaan, Connecticut 06840**

The above, all builders for whom decedent had worked for as a carpenter, will testify that decedent was a dependable and talented carpenter, will describe the kinds of carpentry services performed for them by decedent, and will testify as to his character and dependability.

Only one of the above will testify if needed.  Direct examination:  30 minutes.

-12-

**Thomas Dyer**
**1 East Hayestown Road, Unit 9**
**Danbury, Connecticut 06813**

Mr. Dyer will testify as to his eyewitness account of the happening of the accident, what took place in the Svege vehicle post-accident when he, Thor Svege, Jr., and Brian Svege were trapped for 20-25 minutes before being extricated from their vehicle, his observation as to the changes in Thor Svege, Jr. since the accident.  Direct examination:  30 minutes.  Mr. Dyer will be called if needed only.

**Thor Svege, Jr.**
**50 East Lake Road**
**Danbury, Connecticut 06811**

Thor Svege, Jr. may testify about the accident, what happened to him, his observations as to what took place in the vehicle after the accident, and his life before and after the accident.

**David E. Clement, PhD.**
**3550 Overcreek Road**
**Columbia, S.C. 29206**

The Court has raised issues as to the need for a human factors expert, whether counsel could argue these issues to the jury without such an expert, and requesting further clarification of these issues.

Counsel, respectfully, addresses the above, as part of his witness identification of Dr. Clement.

Dr. Clement, currently Professor of Psychology at the University of South Carolina, is a human factors psychologist, engaged in research, education and private practice for over 35 years, and licensed as an Industrial Psychologist, and is a certified Professional Ergonomist.

Dr. Clement's opinions are based upon materials and data upon which human factors experts in the field base their opinions.

Dr. Clement will testify, as more fully set forth in his Expert Report with Exhibits, as to whether an adequate warning was necessary, why the warning contained in the Freightliner Driver's Manual was inadequate, why the Engine Brake Active Light on the dash already designed by DDC and wired into the subject tractor, but not operational, would have been an effective warning of the active status of the engine brake at a time when it was needed, why the driver of the subject tractor fit within the population of professional drivers with a CDL who had many years experience who were aware of the stricture about not using Jake Brakes when the road is wet, why the distinction between awareness and knowledge is important in understanding issues of risk perception, why cognitive psychology recognizes that people may have information or experience in their overall knowledge base that at a given time is not part of what they are thinking about -- awareness, that the Engine Brake Active Light on the dash for such

people who do have the knowledge has important implications for the role of warnings for such people who do have the knowledge, and that based upon the inclusion of the driver Scottie Wightman in that population of drivers, Dr. Clement can opine with a reasonable degree of certainty as a human factors psychologist that for drivers who fit in that population, the Engine Brake Active Light would have been a reminder to one who already knows the danger but whose attention has been diverted or arrested by competing circumstances, and for such a driver who fit into that population of drivers, it would be more probable than not that such a driver would turn off the engine brake switch, and no harm would have to come to plaintiffs.

Plaintiffs respectfully submits that pursuant to Rule 703 the Court should make its decision based upon what constitutes reasonable reliance for experts in the field of human factors psychology and not substitute the Court's own judgment of the reliability of those materials. Bauman v. Centex Corp., 611 F.2nd 1115, 1120 (5th Cir., 1980), Indian Coffee Corp. v. Proctor & Gamble Co., 752 F.2nd 891 (1985).

### Defendants' Objection:

Defendants hereby reaffirm their objections to David Clement and rely on their objections as set forth in their Motion to Preclude pending before the Court.

## DEFENDANTS' WITNESSES

**Don Barnes**
**1708 Southwest Harper Way**
**Portland, Oregon**

Mr. Barnes will testify concerning Freightliner design and manufacturing practices, Freightliner warnings, the operation and use of the engine brake and bench testing performed by Mr. Barnes and in addition more specifically as set forth in his expert report (Exhibit 501). Direct Examination: 2 hours.

### Plaintiff's Objection:

Plaintiffs objection to witness Mr. Barnes has been the subject of a Daubert application by plaintiffs and will not be repeated here. However, it should be noted that defendants, who have the burden on a Daubert motion as to their challenged experts, did not call Mr. Barnes as a witness. Mr. Barnes left the Court after Mr. Koepke's testimony and did not return.

**Thomas F. Dyer**
**1 East Hayestow Road**
**Danbury, CT  06813**

Mr. Dyer will testify concerning his observations during the accident of September 16, 1999. Direct Examination: 30 minutes.

**Robert Hartshorn**
**1 Rollie Shepard Drive**
**Milbury, MA  01570**

Mr. Hartshorn will testify concerning the role of MBCC with respect to the subject tractor.  Direct Examination:  20 minutes.

**Norris Hoover**
**5201 East 48th Avenue**
**Denver, CO  80216**

Mr. Hoover will testify concerning the improper training, maintenance and operation of the vehicle by Mr. Wightman and Hensley Industries, Inc., the proper use and operation of engine brakes and as more fully set forth in the attached expert reports (Exhibits 618, 619).  Direct Examination:  30 minutes.

**William Howerton**
**1120 Massachusetts Avenue**
**Boxborough, MA  01719**

Mr. Howerton will testify concerning his accident reconstruction and specifically that the subject accident could not have been caused by an engine brake induced loss of control, that the subject tractor is not defective and unreasonably dangerous and as more fully set forth in the attached expert reports (Exhibits 516, 517).  Direct Examination:  3 hours.

**Plaintiff's Objection:**

Plaintiffs objection to witness Mr. Howerton has been the subject of a Daubert application by plaintiffs and will not be repeated here.

**Bruce Koepke**
**4747 North Channel Avenue**
**Portland, OR  97217**

Mr. Koepke will testify concerning his analysis of the subject event and that the accident was not caused by an engine brake induced loss of control.  He will testify concerning the adequacy of Freightliner warnings, that the vehicle met all federal standards and more specifically as set forth in the attached expert reports (Exhibits 617, 618).  Direct Examination:  2 hours.

**Plaintiff's Objection:**

Plaintiffs objection to witness Mr. Koepke has been the subject of a Daubert application by plaintiffs and will not be repeated here.

**Donald P. Horst**
**871 Russett Drive**
**Sunnyvale, CA  94087-1860**

Mr. Horst will testify concerning human factors and warnings and the adequacy of the Defendants' warnings as more fully set forth in the attached expert report (Exhibit 620). Direct Examination:  2 hours.

**Ian McKenzie**
**13400 Outer Drive West**
**Detroit, MI  48239**

Mr. McKenzie will testify concerning Detroit Diesel Corporation procedures, design and operation concerning the engine brake and Detroit Diesel warnings.  Direct Examination:  1 hour.

**Eric Svege**
**26 Drift Way Road**
**Danbury, CT  06811**

Mr. Svege will testify concerning Thor Svege, Sr. and his observations of Briana Svege and Thor Svege, Jr.  Direct Examination:  15 minutes.

**William Von Ahn**
**55 Mill Planes Road**
**Danbury, CT  06811**

Mr. Von Ahn will testify concerning his observations with respect to Thor Svege, Jr. and Briana Svege.  Direct Examination:  15 minutes.

**Alan Korn**
**Meritor WABCO Corporation**
**Detroit, MI**

Mr. Korn will testify concerning the design and operation of the WABCO ABS system and operation of the engine brake.  Mr. Korn will testify that service brake application is not required for the ABS system to disengage the engine brake and he will explain the system parameters for operation.  Direct Examination:  30 minutes.

**Plaintiffs' Objection**

Plaintiffs object to the admissibility of the testimony of Alan Korn of WABCO Corporation, Detroit, Michigan on behalf of the defendants.

Mr. Korn was first proposed as a fact witness by defendants on June 25, 2004 at the Hearing being conducted by the Court on <u>Daubert</u> issues.

The Court ruled that if Mr. Korn was, in fact, an expert witness, his testimony would not be permitted since disclosure requirements of Rule 26 had not been complied with.

In this Trial Memorandum, defendants state that Mr. Korn "will testify concerning the design and operation of the WABCO ABS System and operation of the engine brake. Mr. Korn will testify that service brake application is not required for the ABS System to disengage the engine brake and he will explain the system parameters for operation."

Upon information and belief, Alan Korn is the Chief Engineer for Meritor WABCO Vehicle Control Systems which is engaged in the manufacture and sale of Anti-Lock Braking systems.

To comply with Rule 701, his testimony in this case cannot be based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Even without an offer of proof by defendants, it is difficult to contemplate Mr. Korn's testimony not being based on scientific, technical, or specialized knowledge.

He would also become the fourth engineer in this case to testify on the very same issue.

The purpose of Rule 702 is to insure that a party will not evade the expert witness disclosure requirements in Rule 26 by calling an expert witness in lay witness clothing. Asplundh Mfg. Div. v. Benton Harbor Eng'g. 57 F3rd 1190 (3rd Cir., 1995). *See* Joseph, *Emerging Expert Issues Under the 1993 disclosure Amendments to the Federal Rules of Civil Procedure*, 164 F.R.D. 97, 108 (1996) (noting that 'there is no good reason to allow what is essentially surprise expert testimony' and that `the Court should be vigilant to preclude manipulative conduct designed to thwart the expert disclosure and discovery process.') F.RC.P. 701, Pg. 422, 2000 Amendments.

The plaintiffs will be sorely prejudiced if Mr. Korn is permitted to testify.

The above objections are made the subject of a Motion in Limine made part of this Trial Memorandum.

## Defendants' Reply to Plaintiffs' Objection to Alan Korn

Alan Korn will be called as a fact witness. He will offer no opinion on any subject. He will give testimony regarding the control parameters of the WABCO ABS system used in the subject vehicle from his personal knowledge. The control parameters are not a matter of opinion. The Court has determined that this is an ordinary issue of fact, rather than being a matter for expert opinion. Korn's status as an engineer does not disqualify him from serving as a fact witness. Nor will his testimony constitute unfair "surprise." At his April 1, 2004 deposition, when testifying on the basis for his statement that the ABS would disengage the engine brake immediately upon detecting an impending wheel lockup, Don Barnes testified as follows:

7   BY MR. GILBERG:
8      Q    In other words, you are saying that if
9    there is a skidding or loss of traction condition,
10   that that could not occur through the use of an
11   engine brake?

12      A    With the ABS control controlling it the way
13   it does, yes.

14      Q    Now, have you been in communication with
15   WABCO concerning your involvement in this lawsuit?

16      A    I believe I made one phone call to
17   Mr. Korn.

18      Q    And Mr. Korn holds what position at WABCO?

19      A    I believe that he is a development manager
20   at WABCO.

(Deposition of Don Barnes, April 1, 2004, at 216.)  Korn's testimony is very helpful to
establish the fact that the ABS would have disengaged the engine brake immediately after
detecting a pending wheel lockup.  It is respectfully submitted that Plaintiffs' interest in
excluding the testimony stems from the fact that they are unable to provide any evidence
whatsoever that the ABS system does not operate as Defendants describe.

**Kenneth Baker**
**128 Park Avenue**
**Wilmette, IL  60091**

Mr. Baker is the author of the Northwestern University Traffic Accident
Reconstruction Text chapter on Reconstruction of Heavy Truck Accidents.  He will testify
concerning the text meaning.  Direct Examination:  10 minutes.


**Plaintiffs' Objection**

In the same manner and for the same reasons, plaintiffs object to Mr. Kenneth S. Baker as
a witness in this case on the grounds that to comply with Rule 701, his testimony cannot be
based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

According to the Table of Contents on the cover sheet of "Reconstruction of Heavy
Truck Accident", Topic 878 of the Traffic Accident Manual by Kenneth S. Baker, Mr. Baker
authors information about braking systems, unique aspects of tractor-trailer brakes, collision
behavior, longitudinal acceleration of heavy trucks, off-tracking, roll-over, as well as speed
estimation and other speed estimation techniques.

His testimony cannot be limited to his intentions per se.

Like Mr. Korn, it is difficult to accept his testimony as not being based on scientific, technical, or specialized knowledge.

The Court has already ruled that no expert witnesses will be permitted to testify unless the disclosure requirements of Rule 26 have been complied with.

The above objections are made the subject of a motion in liminae made part of this Trial Memorandum.

**Defendants' Reply:**

Mr. Baker will give testimony regarding the meaning of a single sentence of which he is the author. That sentence reads:

"In general heavy truck tires develop approximately 75% of the coefficient of friction on passenger vehicle tires on a dry road, approximately the same coefficient of friction on a wet surface, and approximately 50% on wet ice (at approximately 30° F)."

This sentence is the sole basis for the opinion of Plaintiffs' expert Glennon that the coefficient of friction for trucks on wet roadways is approximately 75% of the coefficient of friction for passenger vehicles on wet roadways. Baker will not give direct testimony that depends in any way on whether he has any expertise. He will testify only that by stating that heavy truck tires had "approximately the same coefficient of friction on a wet surface" he meant that the coefficient of friction of trucks on wet surfaces was approximately the same as that of cars, and not that it is approximately 75% that of cars. This is fact testimony about his own intent in using a particular grammatical construction on a particular occasion. As with Mr. Korn, the fact that Baker may have some expertise (upon which Plaintiffs' expert Glennon in fact relied) does not disqualifying him from acting as a fact witness. Finally, as with Korn, Baker's testimony does not constitute unfair surprise, because an affidavit containing the substance of his testimony was served on Plaintiffs on April 13 of this year, attached to their renewed Motion for Summary Judgment.

B.    **EXHIBITS**

**PLAINTIFFS' EXHIBIT LIST**

Exhibit 1    -    Supplemental Expert Report of John C. Glennon, Jr. (Court Exhibit only)

**Defendants' Objection:**

Defendants are advised by Plaintiffs' counsel that the expert report and supplemental expert report of John Glennon will be court exhibits only and will not be offered at trial. These exhibits are inadmissible hearsay and would be cumulative of Glennon's trial testimony.

Exhibit 2       -       Expert Report of John C. Glennon, Jr. (Court Exhibit only)

**Defendants' Objection:**

Defendants are advised by Plaintiffs' counsel that the expert report and supplemental expert report of John Glennon will be court exhibits only and will not be offered at trial.  These exhibits are inadmissible hearsay and would be cumulative of Glennon's trial testimony.

Exhibit 3       -       Official Transcript of John C. Glennon, Jr. at Pittsburgh State University.

**Defendants' Objection:**

This exhibit is a copy of Glennon's official transcript that has been inappropriately altered by Plaintiffs to highlight those statements therein that they consider most helpful to their case.  Thus, its most prominent feature is what amounts to a written suggestion to the jury that they should weigh most heavily those portions that have been circled.  The written suggestion that these portions of the transcript are especially important constitutes inadmissible hearsay opinion testimony.

Exhibit 4       -       Photo SUV (Plaintiff's Exhibit 43 at Wightman deposition)

Exhibit 5       -       Police photos taken on 9/16/99 numbered 5.1 – 5.47.

**Defendants' Objection:**

        Among the photographs Plaintiffs wish to introduce are gruesome photographs showing the bodies of Thor Svege, Sr. and the two other individuals killed in this accident.  Although Defendants have their own copies of these pictures, they have not as yet been apprised of which specific exhibit numbers correspond to the objectionable pictures.  Defendants object on the basis that those photographs showing the bodies of the decedents are inadmissible under Rule 402 as irrelevant, because they are not probative of any disputed issue.  In the alternative, those photographs should be excluded under Rule 403 because any probative value they may have is vastly outweighed by their likely prejudicial impact.
        "Photographs of corpses are, to many persons, gruesome, shocking and revolting. They are by their very nature highly inflammatory to a jury of laymen. For that reason, the rule has been established in wrongful death actions that such photographs are inadmissible unless necessary to establish a disputed fact issue. Where the trial court admits pictures of corpses without a showing of particularized need, reversal has been ordered."  Bachynsky v. State, 747 S.W.2d 868, 72 (Tex. App. 1988) (Howell, J., concurring and dissenting)(citations omitted).[1]

---

        [1] Judge Howell explained that "The judgment of remand is eminently correct. The writer does not disagree with the grounds upon which the majority relies for reversal. However, the majority should further hold that the admission of the photo of the Barker corpse in evidence was

This established rule has been adopted in this Circuit.  In <u>Ryan v. United Parcel Service, Inc.</u>, 205 F.2d 362 (2d Cir. 1953), the court found that the trial court erred by admitting a photograph of the decedent in his car after a traffic accident where two other photographs "showed clearly the damage to the car [the decedent] was driving."  <u>Id.</u> at 364 (also stating that defendant's objection that the photograph was "unnecessary, extremely prejudicial, and tending to inflame the jury" was "well founded.")

In the present case, there are more than enough photographs of the decedent's vehicle taken after the accident to show its position and condition that do not also show decedents' bodies.  The admission of photographs of decedents' bodies will not assist the jury in determining any disputed issue and will be "unnecessary, extremely prejudicial, and tending to inflame the jury."

Exhibit 6    -    Transcript of Deposition of Trooper Martin Long.

Exhibit 7    -    Transcript of Deposition of Norris D. Hoover.

**<u>Defendants' Objection:</u>**

Norris D. Hoover will testify at trial.  The transcript of his testimony is hearsay.

Exhibit 8    -    Certification of Birth, Thor Svege, Sr.

Exhibit 9    -    Transcript of Deposition of Elizabeth Ann Flynn.

Exhibit 10    -    Inspection Notes of Philip Fekete.

**<u>Defendants' Objection:</u>**

The "Inspection Notes of Philip Fekete" are hearsay that do not fall within any exception to the hearsay rule.  In addition, Plaintiffs cannot establish a foundation as to the accuracy of those notes.

Exhibit 11    -    Photo of dash of subject Freightliner tractor taken 11/6/99.

**<u>Defendants' Objection:</u>**

Plaintiffs are not able to establish an adequate foundation for this exhibit, which is a picture of the interior of this truck taken on November 6, 1999, more than seven weeks after the accident.  The exhibit is evidently offered to prove what the position of the two engine brake

---

also reversible error -- harmful reversible error." <u>Bachynsky v. State</u>, 747 S.W.2d 868, 873 (Tex. App. 1988); <u>see also id.</u> at 872 (majority states that "Although we are inclined to conclude that the error of admitting evidence of Barker's suicide probably did cause the jury to render an improper verdict, we need not do so in view of our holding above [that reversal was necessary for other reasons].")

switches was prior to the accident.  As further set forth in Defendants' first <u>Motion to Preclude Testimony of Plaintiffs' Experts, Glennon, Clement and Sero and for Summary Judgment</u> (June 30, 2003) at 10-11, Plaintiffs have not shown that the photograph accurately depicts the condition of the switched before the accident.

Plaintiffs have no basis for suggesting that the position of the switches was not a result of the collision itself, particularly in light of the fact that the driver's seat belt was not operational at the time, the truck was badly damaged, and one of the two engine brake switches was broken by the time the picture was taken.  Even if Plaintiffs provided some basis for concluding that the position of the switches did not change during the accident, they can provide no basis for the inference that the position of the switches did not change between the accident and the time at which the photograph was taken, because many people had access to the vehicle during the weeks when it was at a wrecker's facility, and the truck was uncovered and had a large hole in the back.  In summary, there is no one who can testify that the picture accurately depicts what the interior of the cab looked like prior to the accident.

Exhibit 12    -    Photo SUV (Plaintiff's Exhibit 44 at Wightman deposition)

Exhibit 13    -    EMS Report of Catherine Rawlings.

**<u>Defendants' Objection:</u>**

Ms. Rawlings is currently listed as a witness.  Plaintiffs will object to this Exhibit only if Ms. Rawlings does not testify.  Inadmissible hearsay will require redaction to the document.

Exhibit 14    -    Transcript of Deposition of Scottie Wightman.

Exhibit 15    -    EMS Report of John Wanczyk.

**<u>Defendants' Objection:</u>**

The EMS report of John Wanczyk is inadmissible hearsay, and Plaintiffs can not provide a foundation for its admission.  Inadmissible hearsay will require redaction to the document.

Exhibit 16    -    Jacobs Engine Brake Retarder, Bloomfield, Connecticut, 10/17/85.

**<u>Defendants' Objection:</u>**

This exhibit, "Jacobs Engine Brake Retarder, Bloomfield, Connecticut, 10/17/85" is hearsay, and Plaintiffs can not provide a foundation either for its accuracy or for its relevance, given the date of the document.

Exhibit 17     -     Ohio Traffic Engineering Manual, Pg. 1.

**Defendants' Objection:**

The "Ohio Traffic Engineering Manual" is hearsay for which the Plaintiffs are also unable to provide a proper foundation.

Exhibit 18     -     Freightliner FLD Conventional Drivers Manual, Engine Braking System, 7,30, Warning, 7.31.

Exhibit 19     -     DDC Engine Operator's guide, 2002, Engine Brake Operation.

**Defendants' Objection:**

Plaintiffs evidently intend to introduce a 2002 Detroit Diesel operators' manual for the purpose of showing that the engine brake involved in this accident, and consequently the truck itself, were defective in that they did not have proper warnings or instructions. Because this manual was produced after the accident occurred, it is not relevant to the issue of whether the warnings or instructions that had been provided as of the time of the accident were inadequate, nor is it relevant to the issue of whether an alleged inadequacy in the warnings or instructions available to the driver at the time of the accident was the cause of the accident. In the alternative, any marginal relevance is substantially outweighed by the undue prejudice, waste of time, and potential for confusion of the issues that would result from the introduction of this evidence. Defendants submit that this exhibit should therefore be excluded under Rule 403.

Exhibit 19.1  -     DDC Engine Operator's guide, 1999, Engine Brake Operation.

**Defendants' Objection:**

This operator's guide is irrelevant because there is no evidence that Mr. Wightman read it, and, consequently, the alleged inadequacy of the warnings or instructions contained therein could not be a cause of this accident.

Exhibit 20     -     Jacob Vehicle Systems Professional Driver Techniques and Owners Manual - including Driving Tips - Slippery Pavement.

**Defendants' Objection:**

This exhibit is irrelevant because there is no evidence that Mr. Wightman read any such manual. Consequently, the alleged inadequacy of the warnings or instructions contained therein could not be a cause of this accident.

Exhibit 21     -     Traffic Collision Investigation Northwestern University.

Exhibit 22      -      Model Commercial Driver License Manual.

Exhibit 22.1   -      <u>Bumper to Bumper</u>.

**<u>Defendants' Objection:</u>**

This exhibit is hearsay, and Plaintiffs can not provide a proper foundation for its admission.

Exhibit 23      -      <u>Physics</u>, Fourth Edition, Douglas C. Giancoli.

**<u>Defendants' Objection:</u>**

This exhibit is hearsay, and Plaintiffs can not provide a proper foundation for its admission.

Exhibit 24      -      Calculated Total Friction Demand.

Exhibit 25      -      Highway map of scene of accident.

Exhibit 26      -      Traffic Accident Reconstruction - Vol. 2 of the Traffic Accident
                       Investigator Manual Northwestern University Traffic Institute.

Exhibit 27      -      A Policy on Geometric Design of Highways and Streets - AASHTO.

**<u>Defendants' Objection:</u>**

This exhibit is hearsay, and Plaintiffs can not provide a proper foundation for its admission.

Exhibit 28      -      SAE 831788 - Directional Control of Retarder Equipped Heavy Trucks
                       Operating on Slippery Surfaces Vehicle Research and Test Center,
                       NHTSA. (Radinski).

**<u>Defendants' Objection:</u>**

Defendants object to the admission of this exhibit, which is a study published in 1984 reporting the results of tests concerning engine brakes. Defendants submit that this exhibit is irrelevant because the tests referred to therein were not conducted under conditions that are substantially similar to that of the accident that gave rise to this case. Significantly greater angles of articulation, unloaded trailers, lower gears and artificial road surfaces are just some of the distinguishing factors. Perhaps most importantly, the study did not concern trucks with antilock brake systems (ABS). In the tests referred to in the study, the engine brakes were left on as the subject vehicles went across various surfaces. Unlike the trucks tested twenty years ago, the truck involved in this accident did have an ABS that would have prevented the engine brake from remaining on after a wheel slip was detected.

As proponents of this evidence, Plaintiffs must "make a foundational showing that the . . . test conditions were <u>substantially similar</u> to conditions on the [truck involved in this accident]."

Stecyk v. Bell Helicopter Textron, Inc., 295 F.3d 408, 412 (3d Cir. 2002).  Thus, in Brooks v.
Chrysler Corp., 786 F.2d 1191 (D.C. Cir. 1986), in which the plaintiffs alleged a product defect
in a 1979 Chrysler LeBaron, the court affirmed the District Court's exclusion under Rule 403 of
a National Highway Traffic Safety Administration study of alleged problems with 1976-1980
Chrysler automobiles, including LeBarons.  In so holding, the court held that "[e]vidence of prior
instances is admissible on the issues of the existence of a design defect and a defendant's
knowledge of that defect only if a plaintiff shows that the incidents occurred under circumstances
substantially similar to those at issue in the case at bar.  Even when substantial similarity of
circumstances is proven, the trial judge has broad discretion to exclude those exhibits under Rule
403." Id. at 1195 (citations and internal quotation marks omitted).

This standard has also been adopted in Connecticut.  See State v. Dontigney, 215 Conn. 646, 577
A.2d 1032, 1034 (Conn. 1990)("The results of a test to determine the distance from which a
homicide weapon had been fired may be shown if the test was conducted under conditions
substantially similar to those involved in the commission of the crime. . . . However, if the
conditions are materially different, the results of the test will be excluded.")(emphasis added.)

It is particularly important to exclude the evidence of such tests when the conditions, although
dissimilar in a material respect, are nonetheless "confusingly similar."  In Mattis v. Carlon Elec.
Prods., 295 F.3d 856, 863 (8th Cir. 2002), the court noted that

> The field monitoring studies in question were performed after Mattis's exposure.
> They measured the air quality that two California construction workers breathed
> while they were working with another Carlon cement product in trenches outside
> in 70 degree weather with wind.  The district court excluded the studies because
> they were performed under significantly different working conditions and because
> they used different product types.  The district court concluded that the studies
> were not substantially similar to Mattis's exposure, but they were "confusingly
> similar."  We agree and find no abuse of discretion by the district court.

If this proposed exhibit were admitted, there is a substantial danger that the jury would
incorrectly believe that the tests referred to therein had a tendency to show the effect of the
engine brake on the directional control of the vehicle driven by Scottie Wightman.  In fact, those
tests are irrelevant, because they do not have any tendency to show what effect, if any, the engine
brake would have on the directional control of a truck that does have an ABS as it moved down a
road with a grade of 1.7 at 57-58 miles per hour.

The present case stands in stark contrast to Stecyk, cited above, because the Defendants can
demonstrate that the differences between the accident at issue and conditions under which the
tests were performed are material.  In Stecyk, the plaintiffs alleged that the crash of an aircraft
was caused by the leaking of a particular kind of seal.  Stecyk, 295 F.3d at 411.  The District
Court permitted the defense to introduce evidence of tests of other seals purporting to show that
the leak would not have occurred, despite the plaintiffs' assertion that the lack of centrifugal
force rendered the test conditions insufficiently similar to the conditions prevailing at the time of
the accident.  Id.  The Court of Appeals upheld this ruling, because, although a witness for the
defendants "testified that centrifugal pressure did not affect the result of the tests," the plaintiffs

"failed to produce a witness, a report, or any evidence to support their argument that the lack of centrifugal forces imposed on the seal rendered the conditions meaningfully dissimilar. Thus, the only evidence before the District Court was defense reports and witness testimony that the tests were substantially similar to conditions on the Osprey." Id. at 413.

In the present case, by contrast, the Defendants have presented overwhelming evidence that the ABS with which the truck involved in this accident was equipped would have disengaged the engine brake when it detected impending wheel lock-up. The differences in conditions between the tests referenced in Plaintiffs' proposed exhibit 28 and those of the accident are therefore directly relevant to the particular fact Plaintiffs intend to show, which is that the engine brake caused the loss of control of this vehicle. Therefore, those tests were not performed under substantially similar conditions, and the exhibit should be excluded as irrelevant. In the alternative, it should be excluded under Rule 403 because any probative value it could have is so minimal as to be overwhelmed by considerations of unfair prejudice and possible confusion.

Exhibit 29    -    A Policy on Geometric Design of Highways and Streets – AASHTO. (Wet Traction Values).

**Defendants' Objection:**

This exhibit is hearsay, and Plaintiffs can not provide a proper foundation for its admission.

Exhibit 30    -    Hydroplaning and Roadway Tort Liability.

**Defendants' Objection:**

This exhibit is hearsay, and Plaintiffs can not provide a proper foundation for its admission.

Exhibit 31    -    Transcript of Deposition of Robert Hartshom.

Exhibit 32    -    Anti-Lock Braking System – WABCO Student Manual.

**Defendants' Objection:**

This exhibit concerning WABCO is hearsay, and is irrelevant. WABCO is not a defendant. This document merely describes the ABS manufactured by WABCO, which is not alleged to be defectively designed.

Exhibit 33    -    DDEC IV Application and Installation Manual, 5.9 Engine Brake Controls, 5.9.1 Operation.

Exhibit 34    -    Rockwell WABCO D-Version ABS, Service Bulletin.

**Defendants' Objection:**

This exhibit concerning WABCO is hearsay, and is irrelevant. WABCO is not a defendant. This document merely describes the ABS manufactured by WABCO, which is not alleged to be defectively designed.

Exhibit 34.1    -        Rockwell WABCO Maintenance Manual for D Version.

**Defendants' Objection:**

This exhibit concerning WABCO is hearsay, and is irrelevant. WABCO is not a defendant. This document merely describes the ABS manufactured by WABCO, which is not alleged to be defectively designed.

Exhibit 35      -        Combined Vehicle Specifications/TSO Report for subject tractor.

Exhibit 36      -        Transcript of Deposition of Ian Daniel McKenzie, Director of Electronic systems for Detroit Diesel Corporation.
                         OBJECTION. No designations were offered by the plaintiffs.

Exhibit 37      -        Supplemental Expert Report of Samuel J. Sero, P.E. dated February 3, 2004. (Court Exhibit only)

**Defendants' Objection:**

Defendants are advised by Plaintiffs' counsel that all listed expert reports and supplemental expert reports will be court exhibits only and will not be offered at trial. These exhibits are inadmissible hearsay and would be cumulative of the experts' trial testimony.

Exhibit 38      -        Engine Brake Theory (Exhibit 38 of Koepke Deposition)

**Defendants' Objection:**

Defendants are advised by Plaintiffs' counsel that all listed expert reports and supplemental expert reports will be court exhibits only and will not be offered at trial. These exhibits are inadmissible hearsay and would be cumulative of the experts' trial testimony. This exhibit purports to be from the Jacobs Engine Brake web site. Jacobs is not a party to this case.

Exhibit 39      -        Transfer Switch Drawing.

Exhibit 40      -        Report of David E. Clement, Ph.D., Human Factors Psychologist.

**Defendants' Objection:**

Defendants are advised by Plaintiffs' counsel that all listed expert reports and supplemental expert reports will be court exhibits only and will not be offered at trial. These exhibits are inadmissible hearsay and would be cumulative of the experts' trial testimony.

Exhibit 40.1    -    Human Factors In Engineering and Design, Sanders & McCormick.

**Defendants' Objection:**

This exhibit is hearsay for which the Plaintiffs can not provide a proper foundation.

Exhibit 40.2    -    Handbook of Human Factors and Ergonomics, Salvendy.

**Defendants' Objection:**

This exhibit is hearsay for which the Plaintiffs can not provide a proper foundation.

Exhibit 40.3    -    American National Standard for Product Safety Signs & Labels, ANSI-Z535-4.

**Defendants' Objection:**

This exhibit is hearsay for which the Plaintiffs can not provide a proper foundation.

Exhibit  41    -    SAE890738 – Application and misapplication of computer programs for Accident Reconstruction. Terry D. Day and Randall L. Horgens (1989).

**Defendants' Objection:**

This exhibit is hearsay for which the Plaintiffs can not provide a proper foundation.

Exhibit 42    -    Life Table for white males, 2001 National Vital Statistic Reports, Vol. 52, No. 14.

Exhibit 43    -    Life Table for white females, 2001 Natural Vital Statistic Reports, Vol. 52, No. IX.

Exhibit 44    -    Appraisal of Economic Loss – Thor Svege, Gary M. Crakes, Ph.D.

**Defendants' Objection:**

This appraisal by Gary M. Crakes, Ph.D. is hearsay and would be cumulative of Crakes' trial testimony.

| | | |
|---|---|---|
| Exhibit 45 | - | U.S. Income Tax Returns for Thor Svege, Sr., and Svege Construction, Inc. |
| Exhibit 46.1 | - | Court of Probate Certificate for Alice G. Svege as Administratrix of Estate of Thor Svege, Sr. |
| Exhibit 46.2 | - | Court of Probate Certificate for Alice G. Svege as Guardian of the Estate of Thor Svege, Jr. |
| Exhibit 46.3 | - | Court of Probate Certificate for Alice G. Svege, as Guardian of Estate of Briana Svege. |
| Exhibit 47 | - | Transcript of Deposition of David E. Clement, Ph.D. Pgs. 1-4, 89-92. |

**Defendants' Objection:**

These pages from the transcript of Clement's deposition testimony constitute hearsay and would be cumulative of his testimony at trial.

| | | |
|---|---|---|
| Exhibit 48 | - | Freightliner Engineering Technical Report. |
| Exhibit 49 | - | Fire Department Records of Thor Svege, Sr. Defendants' OBJECTION. No foundation and contains hearsay. |
| Exhibit 50 | - | Federal Motor Carrier Safety Regulations, Sec. 390.5. Defendants' OBJECTION. No foundation and contains hearsay. |
| Exhibit 51 | - | Licensing of Svege Construction, Inc. |
| Exhibit 52 | - | Photo of left side of trailer post-accident with Glennon. |
| Exhibit 53 | - | Photos of right side of trailer post-accident marked A, B, C, and D. |

**Defendants' Objection:**

Insofar as the pictures depict the decedents' bodies, Defendants object and submit that they should be excluded under Rule 403, as further set forth in their objection to Plaintiffs' Exhibit 5.

| | | |
|---|---|---|
| Exhibit 54 | - | Post-accident photo showing opening to enter cab of tractor from the rear. |
| Exhibit 55A | - | DVD of AVI of PC Crash simulation of Howerton. |

Exhibit 56        -        The Engine Brake

Exhibit 57        -        Defendant Freightliner Corporation's Responses to Plaintiff's
                           Interrogatories and Request for Production.

**Defendants' Objection:**

    Freightliner's response to discovery requests incorporates objections.  As a result, introducing this as an exhibit will cause confusion and prejudice.  That confusion and prejudice outweighs any need for the exhibit, because Plaintiffs may simply ask Freightliner witnesses any pertinent questions relating to this document.

Exhibit 57.1      -        Manuals provided by Freightliner, Pg. 10, (Jacobs Vehicle Systems
                           Professional Driver Techniques).
                           See OBJECTIONS to Exhibits 19, 19.1, 20.

Exhibit 57.2      -        No testing performed on the engine brake, Pg. 13.

Exhibit 57.3      -        Warnings for heavy rain conditions, Pg. 14.

Exhbt 57.4-5     -        Pg. 27, Safety Meetings.

Exhibit 58        -        Brandywine Hospital Record of Thor Svege, Jr.

**Defendants' Objection:**

Hearsay.  Should be redacted from document.

Exhibit 59        -        Brandywine Hospital Record of Briana Svege.

**Defendants' Objection:**

Hearsay.  Should be redacted from document.

Exhibit 60        -        Report of Christopher J. Cassels, M.D., dated 12/5/01 re: Thor Svege, Jr.

Exhibit 61        -        Report of Robert S. Colon, Ph.D., dated 12/28/01. (Court Exhibit only)

**Defendants' Objection:**

    This exhibit is inadmissible hearsay and would be cumulative of Colon's trial testimony.

Exhibit 62        -        Certification of Death of Thor Svege, Sr.

**Defendants' Objection:**

Like the photos of decedents' bodies, the death certificate of Thor Svege, Sr. is not probative of any disputed issue and can serve no purpose but to inflame the passions or sympathy of the jury. It is not disputed that Thor Svege Sr. is dead or that he died as a result of this accident. Consequently, Defendants object to these proposed exhibits on the grounds that they are not relevant under Rule 402, or, in the alternative, any probative value they may have is substantially outweighed by their prejudicial impact.

Exhibit 62.1   -   Autopsy of Thor Svege, Sr.

**Defendants' Objection:**

Like the photos of decedents' bodies, the autopsy of Thor Svege, Sr. are not probative of any disputed issue and can serve no purpose but to inflame the passions or sympathy of the jury. It is not disputed that Thor Svege Sr. is dead or that he died as a result of this accident. Consequently, Defendants object to these proposed exhibits on the grounds that they are not relevant under Rule 402, or, in the alternative, any probative value they may have is substantially outweighed by their prejudicial impact.

Exhibit 63        -        Green Funeral Home bill.

Exhibit 64        -        Wedding Day Photo of Thor Svege, Sr.

**Defendants' Objection:**

This exhibit is not relevant to any disputed issue. Any probative value it may have is substantially outweighed by the prejudice to the Defendants resulting from its appeal to the jury's sympathy. Defendants ask that it be excluded under Rule 402 and/or 403.

Exhibit 64.1   -   Family photo.

**Defendants' Objection:**

This exhibit is not relevant to any disputed issue. Any probative value it may have is substantially outweighed by the prejudice to the Defendants resulting from its appeal to the jury's sympathy. Defendants ask that it be excluded under Rule 402 and/or 403.

Exhibit 64.2   -   Photo of Thor Sr. and Jr. — 4/99.

**Defendants' Objection:**

This exhibit is not relevant to any disputed issue. Any probative value it may have is substantially outweighed by the prejudice to the Defendants resulting from its appeal to the jury's sympathy. Defendants ask that it be excluded under Rule 402 and/or 403.

Exhibit 64.3    -    Photo of Thor Jr. and mother, 9/13/99.

**Defendants' Objection:**

This exhibit is not relevant to any disputed issue.  Any probative value it may have is substantially outweighed by the prejudice to the Defendants resulting from its appeal to the jury's sympathy.   Defendants ask that it be excluded under Rule 402 and/or 403.

Exhibit 65    -    Photo of family home built by Thor Svege, Sr.

**Defendants' Objection:**

This exhibit is not relevant to any disputed issue.  Any probative value it may have is substantially outweighed by the prejudice to the Defendants resulting from its appeal to the jury's sympathy.   Defendants ask that it be excluded under Rule 402 and/or 403.

Exhibit 66    -    Post-accident photo of Thor Jr. numbered 66.1 – 66.5.

**Defendants' Objection:**

As of this writing, Defendants have not obtained copies of these photographs.  This objection will be withdrawn with regard to exhibit 66 if in Defendants' good faith opinion these photographs are not subject to exclusion under Rule 402 or 403 as irrelevant, prejudicial, or cumulative.

Exhibit 67    -    T.J. and Briana– Christmas 1999.

**Defendants' Objection:**

This exhibit is not relevant to any disputed issue.  Any probative value it may have is substantially outweighed by the prejudice to the Defendants resulting from its appeal to the jury's sympathy.   Defendants ask that it be excluded under Rule 402 and/or 403.

Exhibit 68    -    Photos of Fire Department activities, 68.1– 66.5.

**Defendants' Objection:**

This exhibit is not relevant to any disputed issue.  Any probative value it may have is substantially outweighed by the prejudice to the Defendants resulting from its appeal to the jury's sympathy.   Defendants ask that it be excluded under Rule 402 and/or 403.

Exhibit 69.1    -    Certificate of Marriage (civil).

**Defendants' Objection:**

This exhibit is not relevant to any disputed issue.  Any probative value it may have is substantially outweighed by the prejudice to the Defendants resulting from its appeal to the jury's sympathy.   Defendants ask that it be excluded under Rule 402 and/or 403.

Exhibit 69.2   -        Certificate of Marriage (religious).

**Defendants' Objection:**

This exhibit is not relevant to any disputed issue.  Any probative value it may have is substantially outweighed by the prejudice to the Defendants resulting from its appeal to the jury's sympathy.   Defendants ask that it be excluded under Rule 402 and/or 403.

Exhibit 70.1   -        Certificate of Birth, Thor Svege, Jr.

Exhibit 70.2   -        Certificate of Birth, Briana Svege.

Exhibit 71       -        MBCC Lease Agreement (open-end) with Certificate of Title.

Exhibit 72       -        Certificate of Origin for a vehicle.

Exhibit 73       -        Bill of Sale (Kentucky Freightliner to MBCC).

Exhibit 74       -        Invoice – Freightliner to Kentucky Freightliner to be paid by MBCC of Norwalk, Connecticut.

Exhibit 75       -        Marketing Notice – "Freightliner Success Program".

**Defendants' Objection:**

The notice regarding "Freightliner Success Program" is irrelevant because the Freightliner truck at issue was not bought pursuant to any such marketing program.

Exhibit 76       -        Combined Advertisement of Freightliner and MBCC.

**Defendants' Objection:**

The advertisement of Freightliner and MBCC is irrelevant to any material issue in this case and is more prejudicial than probative.

Exhibit 77       -        Complaint and Affidavit in action by MBCC, as owner and lessor, to recover subject tractor.

**Defendants' Objection:**

The complaint and affidavit in the references action by MBCC are irrelevant because they have no tendency to show that MBCC was in the business of selling or leasing, as opposed to merely financing the sale of lease, of trucks.

Exhibit 78    -    Wightman's driver's log from 8/1/99 to 9/15/00 (Exh. 7-7Q at Hensley deposition)

**Defendants' Objection:**

No foundation without corresponding deposition testimony.

Exhibit 79    -    Record of Road Test (Exh. 26 at Hensley Deposition).

**Defendants' Objection:**

No foundation without corresponding deposition testimony.

Exhibit 80    -    Certification of Road Test (Exh. 27 at Hensley Deposition)

**Defendants' Objection:**

No foundation without corresponding deposition testimony.

Exhibit 81    -    Results of Controlled Substance Test of Wightman on 8/10/99 (Exh. 37 at Hensley deposition)

**Defendants' Objection:**

No foundation without corresponding deposition testimony.

Exhibit 82    -    Medical Examiner's Certificate of Scottie Wightman (Exh. 28 at Hensley deposition)

**Defendants' Objection:**

No foundation without corresponding deposition testimony.

Exhibit 83    -    Request for Information from previous employer (Exh. 29 at Hensley deposition)

**Defendants' Objection:**

No foundation without corresponding deposition testimony.

Exhibit 84     -     Driver's Check List (Exh. 30 at Hensley deposition)

**Defendants' Objection:**

No foundation without corresponding deposition testimony.

Exhibit 85     -     Photo of PA Turnpike looking East (Exh. 40 at Wightman deposition)

Exhibit 86     -     Photo of PA Turnpike looking East (Exh. 41 at Wightman deposition)

Exhibit 87     -     Photo of inside of cab of tractor (Exh. 6 of Hensley deposition)

**Defendants' Objection:**

No foundation without corresponding deposition testimony.

Exhibit 88     -     Police photo rear of SUV (Exh. 45-N Wightman deposition)

Exhibit 89     -     Police photo of front and left side of trailer (Exh. 45-Y Wightman deposition)

Exhibit 90     -     Police photo of inside of SUV (Exh. 45-000 Wightman deposition)

Exhibit 91     -     Total Station Traverse Printout

Exhibit 92     -     Total Station Pennsylvania State Police

Exhibit 93     -     Brandywine Hospital Record of Scottie Wightman

Exhibit 94     -     Police photo (Exhibit 17, 1-11 at Long deposition)

Exhibit 95     -     Police photos (Exhibit 17, 1-6 at Long deposition)


## DEFENDANTS' EXHIBIT LIST

501.     Report of Don Barnes dated March 11, 2004 (Court Exhibit only)

502.     ABS ECU Harness diagram (Barnes Exhibit 2)

503.     ABS Inst-Diag, Dash Harn (Barnes Exhibit 3)

504.     ABS Floor Harness (Barnes Exhibit 8)

505.     ABS MCH O/L Harness (Barnes Exhibit 9)

506.    Engine MCH O/L Harness (Barnes Exhibit 10)

507.    Engine ECU Harness (Barnes Exhibit 11)

508.    Engine Main Lab Harness (MCH) (Barnes Exhibit 12)

509.    Application Engineering – Cab Dimensions (Barnes Exhibit (A-F)

510.    ABS Test Checklist WABCO D Version (Barnes Exhibit 17A)

511.    ABS Test Checklist WABCO D Version (Barnes Exhibit 17B)

512.    Freightliner Heavy-Duty Trucks Maintenance Manual

513.    SAE J1922 (Barnes Exhibit 23)

514.    Rockwell WABCO Maintenance Manual No. 30 (Barnes Exhibit 27)

515.    Toolbox Software documentation (Barnes Exhibit 25)

516.    Report of  Bruce Koepke dated June 27, 2003 (Court Exhibit only)

517.    Supplemental Report of Bruce Koepke dated March 10, 2004 (Court Exhibit only)

518.    Video tape of Brake Demonstration dated August 14, 2003

519.    Report of William Howerton dated June 27, 2003 (Court Exhibit only)

520.    Supplemental Report of William Howerton dated March 11, 2004 (Court Exhibit only)

521.    William Howerton's Analysis Notebook

522.    DVD – Jake Brake Analysis

**<u>Defendants' Reponse:</u>**

The exhibit to which Plaintiffs object merely puts into a new visual form an analysis the substance of which (a) has already been disclosed to Plaintiffs and (b) is based entirely on factual premises about which Howerton was questioned at length by Plaintiffs' counsel.  It does not constitute unfair surprise.  This exhibit will help the jury to understand Howerton's analysis.  <u>See</u> <u>Livingston v. Isuzu Motors</u>, 910 F. Supp. 1473, 1495-96 (D. Mon. 1995) (admitting new simulations disclosed "a few weeks before trial" based on underlying data most of which had previously been provided; "Given defendants' opportunity to review and evaluate more than 90 percent of the data presented from February to June of 1995 and the weeks between May and June to study the additional 12 runs in the simulation, this court finds their argument of being unduly hampered unpersuasive."); <u>State v. Shuttlesworth</u>, 2001 Wis. App 58, 624 N.W.2d 421; 2001 Wisc. App. LEXIS 98 *11 (Wis. App. 2001) ("If, after preparing the initial reports, the FBI had conducted further tests on the DNA evidence, there may have been additional protocols to be

disclosed to the defense. Here, however, there is no evidence additional testing was done. Rather, the FBI expert merely broadened his conclusions about the data that had already been gathered.")

523.    DVD –  Collision Analysis

524.    DVD – Accident Simulation

525.    Photographs of Pennsylvania Turnpike (A-GG)

526.    Photographs of Tractor (A-W)

527.    Photographs of Trailer (A-U)

528.    Photographs of Svege vehicle (A-Z)

529.    Pennsylvania State Police Photographs of Accident Scene (A-Y)

530.    Aerial Photograph of Pennsylvania Turnpike

**Defendants' Response**:

Although these aerial photographs were taken well after the accident, there is no basis for any suggestion that there has been any change in the layout of the pertinent roadway.  Defendants' expert William Howerton will authenticate the photographs at trial.

531.    Total Station Traverse Printout

532.    Total Station Pennsylvania State Police Diagrams (A-D)

533.    Reconstruction Diagrams (A-H)

534.    Printouts from PC-Crash (A-B)

535.    Photomodeler Photographs of Svege Vehicle (A-B)

536.    Photograph of Trailer

537.    Photograph of Pennsylvania Turnpike looking west

538.    Jake Brake Retarding Performance Chart

539.    EDSMAC Analysis Diagrams (A-D)

540.    Photographs of Pennsylvania Turnpike (A-T)

541.    Photographs of Svege Vehicle (A-R)

542.    Photographs of Jake Brake Test (A-Q)

543.    Photographs of Pennsylvania Turnpike (A-KK)

544.    Supplemental Report of John Glennon Jr. (Court Exhibit only)

545.    John Glennon Jr. Letter of Retention

546.    John Glennon Jr. Field Notes

547.    <u>The Engine Brake</u> by John C. Glennon

548.    Report of Samuel Sero dated April 14, 2003 (Court Exhibit only)

549.    Supplemental Report of Samuel Sero dated February 3, 2004 (Court Exhibit only)

550.    Correspondence from David Clement, Ph.D. dated April 17, 2003

551.    Billing Statement from David Clement, Ph.D. dated April 17, 2003

552.    Correspondence from Leo Gilberg to Robert Colen, Ph.D. dated December 3, 2001

553.    Correspondence from Leo Gilberg to Robert Colen, Ph.D. dated April 16, 2003

554.    Office notes of Dr. Colen (5 pages, exhibit 5 from deposition)

555.    Fax sheet from Leo Gilberg to Gary Crakes dated April 23, 2003

556.    Correspondence from Leo Gilberg to Gary Crakes dated November 5, 2001

557.    1999 Federal Income Tax Return for Svege Construction, Inc.

558.    1999 State of Connecticut Corporation Business Tax Return for Svege Construction, Inc.

559.    1999 Federal Income Tax Return for Thor & Aileen Svege

560.    1999 State of Connecticut Income Tax Return for Thor & Aileen Svege


561.    Complaint in Svege, Jr. , et al v. Crisdel Group, Inc. ,et al dated September 14, 2001

**Defendants' Response:**

This exhibit is not irrelevant.  The Plaintiffs' admission that parties other than the Defendants are responsible for this accident is highly relevant to their claim that Defendants are responsible. Defendants also submit that Plaintiffs can hardly claim unfair prejudice at having the jury know what other claims they have made in court actions relating to liability for this accident.

562.    Complaint in Dyer, et al v. Scottie Wightman, et al dated August 6, 2001

**Defendants' Response:**

Defendants assert that the cause of this accident was the negligence of Scottie Wightman and his employer. Defendants further assert that, even if the truck at issue was defective, which is expressly denied, the negligence of those actors was an intervening or superseding cause. Defendants respectfully submit that they are entitled to introduce evidence of this, including admissions by the Plaintiffs in this matter. Defendants further respectfully submit that the introducing of this evidence will not mislead the jury or result in unfair prejudice, but that to the contrary, the exclusion of this evidence would likely bring about those results.

563.    Deposition Transcript of Scottie Wightman's dated November 19, 2001

564.    Deposition of Trooper Martin Long dated April 14, 2003

565.    Deposition Transcript of Willis Hensley dated November 15, 2001

566.    Affidavit of Kenneth Baker

567.    Photograph of the front of the tractor (Exhibit 2 from Hensley depo)

568.    Photograph of the front of the tractor (Exhibit 4 from Hensley depo)

569.    Photograph of the inside of the tractor (Exhibit 5 from Hensley depo)

570.    Photograph of inside of cab of tractor (Exhibit 6 from Hensley depo)

571.    Scottie Wightman's driver's log from August 1, 1999 through September 15, 1999
          (Exhibit 7-7Q from Hensley depo)     blank through blank R

572.    Photographs of a pipe being hauled by the tractor trailer (Exhibit 9 from Hensley depo)

573.    Photograph of a trailer (Exhibit 10 from Hensley depo)

574.    Photograph showing the logo on the side of the tractor (Exhibit 11 from Hensley depo)

575.    Photographs showing an ICC and identification numbers on the side of the tractor
          (Exhibit 12 from Hensley depo)

576.    Broker confirmation sheets (Exhibit 13, 13A and 13B from Hensley depo)

577.    Bill of lading (Exhibit 13C from Hensley depo)

578.    Truck delivery form (Exhibit 13D from Hensley depo)

**Defendants' Response:**

Plaintiffs maintained in a prior action that the improper handling of the truck at issue by its driver, Scottie Wightman, resulted from improper training and supervision by his employer. The fact that his employer did not take adequate steps to maintain safety, and routinely required or permitted its drivers to drive hours in excess of safety limits, is relevant to this case.

579.   U.S. Department of Transportation safety compliance review of March 19, 1999 of Hensley Industries (Exhibit 14, 14A through 14J from Hensley depo)

580.   U.S. Department of Transportation Notice of Claim - Violations of 49 CFR 395.8(e) (Exhibit 15 from Hensley depo)

581.   U.S. Department of Transportation Notice of Unsatisfactory Safety Rating (Exhibit 16 from Hensley depo)

582.   Letter to U.S. Department of Transportation 4/2/99 from Hensley Industries (Exhibit 17 from Hensley depo)

583.   U.S. Department of Transportation Safety Compliance Review dated August 20, 1999 (Exhibits 2, 18 and 19 from Hensley depo)

584.   U.S. Department of Transportation Notice of Claim – Violations of 49 CFR 382.301(a) and 395.3(b)(2) (Exhibit 20 from Hensley depo)

585.   Scottie Wightman's fuel receipts and cash advance (Exhibit 21 from Hensley depo)

586.   Scottie Wightman's fuel receipts and cash advances August 15, 1999 (Exhibit 22 from Hensley depo)

587.   Scottie Wightman's fuel receipts and cash advances September 16, 1999 (Exhibit 23 from Hensley depo)

588.   Pennsylvania Turnpike Commission receipts of 9/15/99, Ohio Turnpike receipt of 9/16/99, Flying Travel Plaza receipt of 9/15/99 (Exhibit 24 from Hensley depo)

589.   Driver's License information of Scottie Wightman (Exhibit 31 from Hensley depo)

**Defendants' Response:**

This evidence tends to show that Wightman's employer did not adequately train and supervise its drivers, but permitted Wightman to drive despite his record.

590.   Manual DOT inspection of tractor involved in accident dated 1/16/98 (Exhibit 33 from Hensley depo)

**Defendants' Response**:

This document is relevant because it tends to show that the subject vehicle was not inspected, and that, because of this, its license plate was switched with that of another vehicle.

591.   Photographs of Pennsylvania Turnpike (Exhibit 40, 41 from Wightman depo)

592.   Photographs of Svege vehicle (Exhibit 42, 45H, 45J, 45K, 45N, 45O, 45Q, 45T, 45V
           from Wightman depo – A-)

593.   Photograph of tractor (Exhibit 45EEE from Wightman depo)

594.   Scottie Wightman's Driving History Record Certified by Commonwealth of Kentucky
           (Exhibit 46 from Wightman depo)

**Defendants' Response**:

        This evidence tends to show that Wightman's employer did not adequately train and supervise its drivers, but permitted Wightman to drive despite his record.

595.   Photograph of tractor taken by Eric Svege (Von Ahn depo)

596.   Photographs taken on November 6, 1999 by P. Fekete (A to PP)

597.   Freightliner Pre-Delivery Service and Owner's Warranty Registration

598.   DDEC IV Application and Installation page 5-39

599.   DDEC IV Application and Installation page 5-40

600.   DDEC IV Application and Installation page 5-41

601.   DDEC IV Application and Installation page 5-42

602.   Rockwell WABCO D-Version ABS 42-27 Service Bulletin

603.   SAE SP-1405, Buckendale Lecture: Commercial Vehicle Braking Systems: Air Brakes,
           ABS and Beyond by Leonard C. Buckman, P.E.

**Defendants' Response**:

The basis of Plaintiffs' objection is unclear.  This paper clearly states that the ABS used on the subject vehicle will disengage the engine brake without regard to whether the service brake pedal is applied.  The court has ruled that this is a question of fact not suitable for expert testimony. Accordingly, Defendants have produced factual evidence showing this.  In addition, Plaintiffs' expert Sero has opined that there is no literature making this point explicitly, and, on that basis,

has maintained that it is not in fact true. Defendants, consequently, wish to use this evidence not to support the expert opinions of their own experts, but to show (a) that the ABS will in fact disengage the engine brake without use of the service brake, (b) that Sero's "opinion" that no literature states this is wrong, and (c) that all of Plaintiffs' proffered "expert" testimony regarding the functioning of the ABS and engine brake is not based on even a rudimentary understanding of those systems. This evidence is relevant to each of those points, each of which is relevant to this case.

604.    Commercial Driver License Manual

605.    Freightliners FLD Conventional Driver's Manual

606.    Federal Motor Carrier Safety Regulations Handbook, page 192

**Defendants' Response:**

        Section 392.14, "Hazardous conditions; extreme caution" is relevant to this case in that it tends to show that the accident was caused by Wightman's negligent or reckless driving rather than by nay alleged defect in the vehicle.

607.    Warning chart from Proceedings of the Human Factors Society

**Defendants' Response:**

Exhibits have not been exchanged as of this writing. Defendants agreed to delay the exchange at the request of Plaintiffs' counsel.

608.    Anti-Lock Braking System (ABS) for Trucks, Tractors and Buses, Maintenance Manual
        No. 30 Revised 11-98

609.    Warning Label from Failure Analysis study

**Defendants' Response:**

Exhibits have not been exchanged as of this writing. Defendants agreed to delay the exchange at the request of Plaintiffs' counsel.

610.    Handwritten Calculations of Bruce Koepke (Exhibit 5 from Koepke depo)

611.    Screen Printout of WABCO diagnostic program (Exhibit 6 from Koepke depo)

612.    Email regarding Gear Ratios (Exhibit 11 from Koepke depo)

613.    Jake Brake documentation from website (Exhibit 23 from Koepke depo)

614.    SAE Paper 880001, Buckendale Lecture: Heavy Duty Truck Tire Engineering
        (Exhibit 44 from Koepke depo)

615.   UMTRI Friction Values – Wet Surface from Mechanics of Heavy Trucks
       (Exhibit 45 from Koepke depo)

616.   UMTRI Friction Values – Wet Surface from Mechanics of Heavy Trucks
       (Exhibit 46 from Koepke depo)

617.   Jake Brake Retarding Performance Chart (Exhibit 56 from Koepke depo)

618.   Report of Norris Hoover dated June 29, 2003 (Court Exhibit only)

619.   Supplemental Report of Norris Hoover dated March 4, 2004 (Court Exhibit only)

620.   Report of Donald P. Horst, Ph.D. dated June 24, 2003 (Court Exhibit only)

621.   Academic Records from Pittsburg State University regarding John Glennon

622.   DDC Software Strategy Manual

623.   DDEC III Functional Test Plan

624.   Federal Motor Vehicle Safety Standards § 571.121 S5.1.6.2

625.   DDEC III System Display Programming History (DDC 191-200)

626.   Pennsylvania State Police – General Investigation Report (report and traverse printout
       only)

627.   Commonwealth of Pennsylvania – Police Accident Report (Exh. 1 of Markley's
       deposition)


**<u>Plaintiffs' Objections to Defendants' Exhibits:</u>**

         The Court ruled on June 24, 2004 at the Daubert Hearing that no expert could use or refer

to documents or material in support of their opinions that were not used or referenced in their

expert reports or at their depositions, and ruled that plaintiffs' expert, John Glennon, could not so

refer to a document in his file which did not meet the above criteria to add support to his

testimony.

         The above forms the basis for plaintiffs' objection to the following numbered exhibits:

The on-the-eve production of this material runs counter to the Court's ruling, and should not be permitted into evidence.

Although Rule 403, F.R.C.P. does not explicitly deal with unfair surprise pre se, it does speak of unfair prejudice and considerations of undue delay, all of which were encompassed in the Court's ruling of June 24, 2004.

The above are plaintiffs' objections based upon the Court's ruling.

Plaintiffs object to other proposed exhibits for evidence as follows:

<u>603</u>.    SAE SP-1405, Buckendale Lecture: Commercial Vehicle Braking Systems: Air Brakes, ABS and Beyond by Leonard C. Buckman, P.E. – Meritor WABCO

Plaintiffs first became aware of this document from defendants attorneys on July 15, 2004.

None of defendants experts, Koepke, Howerton or Barnes in their opinions, or at the Hearing depositions, ever referred to this 166 page document in any way.

On the contrary, on June 25, 2004, pursuant to the Court's injury, defendants admitted that the sole basis for their opinions that engine brake will be independently disengaged without service brake application are the demonstrations that were filmed and shown to the Court.

Defendant expert, Barnes, who was present in Court for two (2) days, absented himself unannounced from the Courtroom, after Mr. Koepke testified, and was never called by defendants, nor was he made available to plaintiffs.

However, his report mimics that of Koepke.

It should be noted, to avoid any confusion, that plaintiffs do not challenge Exhibit 614 an SAE paper identified as a Buckendale Lecture. First of al, it was Exhibit 44 at the Koepke depositions, and it author is not Bruckman, and its subject matter is not ABS, but tires.

607. Warning chart from <u>Proceedings of the Human Factors Society</u>

The defendants do not identify the author, and, to the best of my knowledge, defendant have not furnished counsel with a copy of this document.

The report of defendants' human factors psychologist, Donald P. Horst, Ph.D., contains no reference to this chart or the source given. It should be noted that Dr. Horst's report contains the materials he reviewed as well as selected publications he contributed to numbering perhaps 30.

None of the above are <u>Proceedings of the Human Factors Society</u>

608. Warning Label from Failure Analysis study

As identified, counsel has no knowledge of this document or its source. It was not an Exhibit at any deposition, and, to the best of counsel's knowledge, counsel has never been served with this document.

The report of Dr. Horst does not refer to it.

522. DVD – Jake Brake Analysis

This DVD was first received on July 15, 2004.

When viewed, this DVD identifies itself as an Animation, and is defendants' version of the jackknife.

Mr. Howerton testified on June 25, 2004 that he had never generated a visual animation based upon Wightman's testimony that he jackknifed.

Immediate inquiry to defendants' counsel for an AVI, Audio Visual Interpretation, of the simulation values, such as plaintiffs' Exhibit 55A, giving a running account of pertinent data and values, speed, etc. on the screen, revealed that no AVI has been generated.

Mr. Howerton did not rely on this DVD at his deposition or Hearing, and, by not producing it, plaintiffs' were effectively precluded from questioning Mr. Howerton about it.

The on-the-eve production of this material runs counter to the Court's ruling, and should not be permitted into evidence.

Although Rule 403, F.R.C.P. does not explicitly deal with unfair surprise pre se, it does speak of unfair prejudice and considerations of undue delay, all of which were encompassed in the Court's ruling of June 24, 2004.

The above are plaintiffs' objections based upon the Court's ruling.

Plaintiffs object to other proposed exhibits for evidence as follows:

<u>530</u>.  Aerial photographs of Pennsylvania Turnpike of Accident Scene.

Objection. – Rule 403.

These photographs were taken in June of 2003.

An abundance of photographs exist and will be in evidence taken within a few hours, days and weeks after the accident.

No qualification has been offered that the accident scene depicted in the aerial photographs are the same that existed on the day of the accident.

The probative value is substantially outweighed by confusion it may create or needless presentation of cumulative evidence.

<u>566</u>.  Affidavit of Kenneth Baker.

Objection. – Hearsay, Rule 801(c).

This objection is made as part of plaintiffs' objection as well to Mr. Baker's testimony as a live witness which will be addressed in another portion of the Trial Memorandum.

That objection is that Mr. Baker will have to testify based upon scientific, technical, or other specialized knowledge and defendants have not complied with Rule 26 relating to experts.

The affidavit objection is a basic one. Rule 26 includes a general requirement that, ideally, testimony be taken in open court under oath, in the personal presence of the trier of the fact, and subject to cross-examination.

579 – 584. Various proceedings between the U.S. Department of Transportation and Hensley Industries, Inc. d/b/a Four H. Trucking, the employer of Scottie Wightman including Notice of Violations, Unsatisfactory Safety Rating, and Compliance Review.

Objection. – Relevancy.

Rules 401, 402 and 403 F.R.C.P.

Scottie Wightman began his employment with Four H Trucking on August 20, 1999.

Nothing Scottie Wightman did had any bearing on the Department of Transportation proceedings or their determinations.

This evidence is irrelevant to the issues in this case involving these plaintiffs and even if these documents were somehow relevant, they should be excluded under Rule 403 because of the danger of unfair prejudice, confusion of the issues, misleading the jury and waste of time.

589 and 594.

589. Driver's License information of Scott Wightman (Exhibit. 31 of Hensley deposition).

594. Scottie Wightman's Driving History Record certified by Commonwealth of Kentucky (Exhibit 16 Wightman deposition).

Objections to the above offers of evidence are taken together under Rules 401, 402, 403 and 404(b0.

The records being offered deal with a variety of traffic infractions incurred by Scottie Wightman driving over 1,000,000 miles of driving as a tractor-trailer driver.

Consistent with Rule 404(b), evidence of these past infractions is not admissible as a basis of suggesting the inference to a jury that conduct on a particular past occasion was in conformity with Scottie Wightman's actions in the case at issue.

562.    Complaint in Dyer et al. v. Scottie Wightman dated September 14, 2001.

Objection. – Relevancy under Rules 401, 402 and 403.

The present plaintiffs were joined as co-plaintiffs in the above action which was brought in this Court and was before Judge Janet Bond Arterton.

The defendants were Scottie Wightman and Hensley Industries, Inc. d/b/a Four H Trucking who denied the allegations of the Complaint.

No trial was held.

There was, in part, joint discovery, with the defendants in the pre sent case, which included the depositions of Wightman and Hensley, and discovery of documents now being offered by these defendants herein.

However, the cases were never consolidated other than for discovery.

Mr. Wightman's deposition in the Dyer case is the same deposition being offered by the defendants herein, in which Mr. Wightman testified to the premise relied on by plaintiffs herein, namely, that Wightman drove into a curve on a wet roadway, took his foot off the throttle, heard a popping noise, (characteristic of a Jake Brake), his tractor rear axles slid to the left, steering became difficult, he experienced a tractor jackknife, lost directional control of the tractor-trailer, and the accident ensued.

None of the plaintiffs are capable of testifying as to how the accident occurred.

Introduction of the Complain t in this strict liability case will only confuse the issues, mislead the jury, create a danger of unfair prejudice, and cause the jury to speculate as to the status of the lawsuit.

The case was never tried, but was settled under a limited policy considering that it included three (3) deaths, and three (3) injuries.

The Dyer and Svege plaintiffs shared equally in the proceeds.

The amounts received by the Svege plaintiffs will be revealed to the Court in camera if the Court requests at the Find Pre-trial Conference.

Since the settlement cannot be revealed to the Jury, admitting the complaint only creates the problems which Rule 403 was meant to avoid.

561. Complaint in Svege et al v. Crisdel Group, Inc., dated September 14, 2001.

Objection.  -  Relevancy under Rules 402, 402 and 403.

The above case was brought against the Commonwealth of Pennsylvania Turnpike Commission and other defendants involved in the construction and installation of the median concrete barrier that separated east and westbound traffic at the place of the accident.

All actions have either been discontinued with prejudice or dismissed with prejudice.

The case against the Turnpike Authority was dismissed on the grounds of sovereign immunity on January 14, 2004, and against the concrete manufacturer and installer on January 26, 2004 on the grounds of government contractor defense, and upon the grounds that it was only speculation that a different carrier could have prevented the tractor-trailer from crossing into the opposing lanes of traffic.

Introduction of the Complaint will only confuse the issues in this case, mislead the jury to speculate on the issues and status of another action, and create a danger of unfair prejudice on issues that are irrelevant to the issues in the present case.

The present defendants have been aware of the Pennsylvania action, and upon information and belief, have been in communication with the Turnpike attorneys.

This complaint should be excluded since it is irrelevant to the claim that the loss of control of the tractor-trailer initiated the events that led to loss of control and the accident.

563 – 565.  The only objections to these depositions are the specific objections made to designated questions and answers found in another part of this Memorandum.

590.  Manual DOT inspection of tractor dated 12/16/98 (Exhibit 33 of Hensley deposition).

Objection. – Relevancy.

Rules 401, 402 and 403.

There is no relevancy to the DOT inspection of the tractor required to be performed before delivery of the tractor to Hensley and the condition of the tractor on the date of accident.

Post-accident inspections by a certified policy inspector concluded that there was no reason, either mechanical or hydraulic, why the combination tractor-trailer would not have performed on the date of the accident in accordance with the Vehicle Equipment and Inspection Regulations.

612.  E-mail regarding Gear Ratios (Exhibit 11 from Koepke deposition).

Objection. – Hearsay.

Rules 801, 802 and 803.

<u>612</u>.  E-mail from Ataman Kayim responding to Mr. Koepke's request, and purportedly advising Mr. Koepke of the gear ratios for a tractor identified as SN924095, which is not the tractor involved in this accident.

It is unclear as to whether these are Mr. Kayim's gear ratios or whether he obtained them from "an in-house Fuller guy."

In either case, it is hearsay.

Mr. Kayim is not listed as a witness, fact or expert, and plaintiffs have been deprived of the right to cross-examine Mr. Kayim or the "in-house Fuller guy."

Plaintiffs have questions as to the admissibility of other exhibits, but they are not so clearly identified that plaintiffs can make any informed decision.

<u>606</u>.  Federal Motor Carrier Safety Regulations Handbook, page 192, is an example.

The handbooks that counsel has nothing on Page 192 that is relevant to this case.

**<u>PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE<br>TROOPER LONG'S CONCLUSION</u>**

Plaintiffs move in limine to exclude, remove or redact the following sentence contained in the PA State Police General Investigation Report (Exhibit 626) and Police Accident Report (Exhibit 627)

The sentence reads:

"Unit 1 was traveling east on the PA Turnpike in the right lane and traveling too fast for extreme heavy rain conditions."

This sentence is found on Pg. 1 and Pg.4 of Exhibit 626, and the first page designated 001444 of Exhibit 627.

The author of the statement arrived at the accident scene according to the records and his own testimony at 12:15 p.m. on the day of the accident, September 16, 1999.

The accident itself according to the Police Report was at 10:40 a.m.

Trooper Lone did not see or interview the operator, Scottie Wightman, until September 29, 1999 at the hospital.

On October 19, 1999, Trooper Long first issued summary charges against Scottie Wightman.

There was no charge that Wightman exceeded the speed limit of 65 mph. Wightman testified to going between 55-58 mph.

Trooper Long was not a witness to the accident or the conditions that existed at the time.

It is well settled that police officers findings of fact at the scene when they arrive are admissible, but not their conclusions.

This statement should be excluded.

### C.     DEPOSITION TESTIMONY

### PLAINTIFFS' DESIGNATION OF TESTIMONY

1.          **Scottie Wightman**
            **1153 Mudlick Road**
            **Salt Lick, KY  40371**

Mr. Wightman was the operator of the tractor-trailer involved in the accident.

The following are designations by page references of the deposition transcript which may be read into the evidence.

-          Pg. 5, Line 11 to Pg. 6, Line 25.

-          Pg. 7, Line 8 to Pg. 8, Line 10

-          Pg. 9, Line 17 to Pg. 14, Line 2.

-           Pg . 14, Lines 3-9.

-           Pg. 14, Line 13 to Pg. 15, Line 20.

-           Pg 16, Lines 7-10.

-           Pg. 17, Line 8 to Pg. 18, Line 6.

-           Pg. 19, Lines 2-7.

-           Pg. 20, Line 14 to Pg. 21, Lines 4, 15-19, 22 to Pg. 22, Line 4.

-           Pg. 23, Lines 14, 24 to Pg. 24, Line 3.

-           Pg. 24, Line 22 to Pg. 25, Line 21.

-           Pg. 26, Line 21 to Pg. 27, Line 11.

-           Pg. 27, Line 22 to Pg. 28, Line 21

-           Pg. 31, Lines 12-25.

-           Pg. 33, Line 21 to Pg. 34, Line 25.

-           Pg. 35, Lines 7-18.

**<u>Defendants' Objection:</u>**

Objection to Plaintiffs Page 35, Line 7 through Page 35, Line 18. Rule 401 and 411.

-           Pg. 36, Line 10 to Pg. 37, Line 1

-           Pg. 38, Lines 15-20.

-           Pg. 40, Line 12 to Pg. 41, Line 8.

-           Pg. 44, Lines 8-17.

-           Pg. 46, Line 11.

-           Pg. 47, Lines 10-24.

-           Pg. 48, Line 8 to Pg. 49, Line 2.

-           Pg. 49, Lines 21-25.

- Pg. 50, Lines 5-18.

- Pg. 50, Line 23 to Pg. 51, Line 5.

- Pg. 52, Lines 4-23.

- Pg. 52, Line 24 to Pg. 53, Line 11.

- Pg. 53, Lines 16-23.

- Pg. 54, Lines 10-13.

- Pg. 54, Line 14 to Pg. 55, Line 2

- Pg. 58, Line 18 to Pg. 59, Line 25.

- Pg. 62, Line 23 to Pg. 63, Line 13.

- Pg. 68, Lines 19-23.

- Pg. 71, Line 9 to Pg. 72, Line 1.

- Pg. 73, Lines 12-24.

- Pg. 81, Line 23 to Pg. 82, Line 1.

- Pg. 82, Line 9 to Pg. 83, Line 3.

- Pg. 83, Lines 19-25.

- Pg. 85, Line 9 to Pg. 86, Line 17.

- Pg. 87, Line 19 to Pg. 88, Line 1.

- Pg. 88, Lines 7-17.

- Pg. 88, Lines 23-25.

- Pg. 89, Lines 13-17.

- Pg. 89, Line 18 to Pg. 90, Line 17.

- Pg. 103, Line 24, to Pg. 104, Line 10.

- Pg. 104, Lines 21-24.

- Pg. 105, Lines 15-20.

- Pg. 106, Line 14 to Pg. 107, Line 2.

- Pg. 107, Lines 8-12.

- Pg. 107, Line 25 to Pg. 108, Line 2.

- Pg. 110, Lines 1-4.

- Pg. 111, Lines 18-24.

- Pg. 112, Lines 16-25.

- Pg. 114, Lines 10-21.

- Pg. 118, Line 8 to Pg. 119, Line 5.

- Pg. 120, Line 3 to Pg. 121, Line 8.

- Pg. 122, Line 14 to Pg. 123, Line 13.

- Pg. 123, Line 20 to Pg. 124, Line 5.

- Pg. 124, Line 25 to Pg. 125, Line 8.

- Pg. 126, Line 12 to Pg. 127, Line 3.

- Pg. 127, Lines 7-13.

- Pg. 127, Line 17 to Pg. 128, Line 11.

- Pg. 131, Line 19 to Pg. 132, Line 7.

- Pg. 132, Lines 21-23.

- Pg. 133, Lines 1-3.

- Pg. 134, Lines 9-16.

- Pg. 135, Lines 11-24.

- Pg. 136, Lines 3-24.

- Pg. 137, Lines 9-24.

-       Pg. 138, Lines 17-25.

-       Pg. 139, Lines 1-7.

-       Pg. 139, Line 8 to Pg. 140, Line 5.

-       Pg. 142, Line 7 to Pg. 143, Line 6.

-       Pg. 143, Lines 10-16.

-       Pg. 144, Lines 5-22.

-       Pg. 145, Lines 5-7.

-       Pg. 145, Lines 13-23.

-       Pg. 146, Line 6 to Pg. 148, Line 9.

-       Pg. 153, Lines 2-15.

-       Pg. 154, Line 4 to Pg. 155, Line 18.

-       Pg. 156, Line 20 to Pg. 157, Line 25.

-       Pg. 158, Line 12 to Pg. 159, Line 1.

-       Pg. 159, Lines 7-15.

-       Pg. 160, Line 25 to Pg. 161, Line 11.

-       Pg. 162, Lines 5-18.

-       Pg. 163, Lines 11-13.

-       Pg. 163, Lines 14-24.

-       Pg. 164, Lines 6-18.

-       Pg. 165, Lines 16-22.

-       Pg. 166, Line 6 to Pg. 167, Line 8.

-       Pg. 188, Line 21 to Pg. 189, Line 5.

-       Pg. 189, Lines 11-22.

- Pg. 194, Lines 3-6.

- Pg. 195, Line 14 to Pg. 197, Line 21.

- Pg. 198, Lines 9-23.

- Pg. 198, Line 24 to Pg. 199, Line 7.

- Pg. 199, Line 8-21.

- Pg. 200, Line 8 to Pg. 201, Line 17.

- Pg. 202, Line 16-23.

- Pg. 203, Line 4 to Pg. 207, Line 9.

- Pg. 207, Lines 17-22.

**Defendants' Cross-Designation of Wightman**

Mr. Wightman will testify by deposition concerning the circumstances of his employment and the manner in which the accident occurred. He will testify pursuant to deposition transcript and exhibits identified by the witness.

Scottie Wightman, deposition of November 19, 2001

Page 15, Line 21 through Page 16, Line 6

Page 16, Line 11 through Page 17, Line 7

Page 18, Line 7 through Page 19, Line 1

Page 19, Line 10 through Page 20, Line 4

Page 22, Line 5 through Page 23, Line 13

Page 25, Line 22 through Page 26, Line 12

Page 27, Line 12 through Page 27, Line 18

Page 28, Line 22 through Page 31, Line 11

Page 32, Line 1 through Page 33, Line 4

Page 33, Line 8 through Page 33, Line 20

Page 37, Line 2 through Page 37, Line 21

**Defendants' Response:**

This is not hearsay. When asked if <u>he himself</u> gave different versions of his story at different times, in an effort to impeach the testimony he was then giving, he replied "I don't recall."

Page 39, Line 16 through Page 40, Line 11

Page 41, Line 21 through Page 43, Line 3

Page 43, Line 20 through Page 44, Line 7

**Defendants' Response:**

Plaintiffs' Objection misconstrues the purpose of this evidence. It is not offered to undermine Wightman's credibility but as evidence of the fact that, as Plaintiffs asserted in their previous suit against Wightman et al., the accident was caused by Wightman's negligence in driving at an excessive speed, driving with a careless disregard for the safety of persons and property, and driving at a speed unsafe in light of the conditions. This is a critical issue and Wightman's pleas of guilty to those charges in connection with this very accident are highly probative of that issue. This evidence poses no danger of "<u>unfair</u> prejudice" as envisioned by Rule 403. Plaintiffs' attorney asked Wightman the pertinent questions himself. Had Plaintiffs wished to know more about the circumstances regarding these guilty pleas, they could have asked Wightman at his deposition. Plaintiffs are evidently confusing evidence that is unfavorable to them with evidence that is unfairly prejudicial.

Although Plaintiffs assert that Pennsylvania law would prevent the introduction of this evidence, Connecticut law is to the contrary. <u>See, e.g.</u>, <u>Jacobs v. Goodspeed</u>, 180 Conn. 415, 418, , 917 (1980) (where "the defendant pleaded guilty to following too closely in violation of § 14-240 . . . . The defendant's guilty plea to the statutory violation was an admission tending to prove his negligence.")(citations omitted); <u>see also</u> <u>State v. Gilnite</u>, 202 Conn. 369, 374 n.4, 521 A.2d 547 (1987)("A plea of nolo contendere has virtually the same legal effect as a guilty plea; the only practical difference is that a nolo contendere plea may not be used as an admission in a subsequent criminal or civil case.")

As Plaintiffs note, Fed. R. Evid. 410 does not address guilty pleas that are not withdrawn. The fact the rule provides specifically that pleas of guilty that are later withdrawn and pleas of nolo contendere are inadmissible, but does not address guilty pleas not withdrawn, plainly indicates that such pleas are ordinarily admissible under the Rules. <u>See also</u> <u>United States v. O'Meara</u>, No. 94-3834MN, 1995 U.S. App. LEXIS 13239, *1 (8th Cir. May 31, 1995) (per curiam) ("Anyway, Rule 410 only bars the use of guilty pleas that are actually withdrawn."); U.S.C.S. Fed. R. Evid. 410, Stephen A. Saltzburg, Daniel J Capra, and Michael M. Martin, COMMENTARY ("Scope of the Rule . . . . If the defendant accepts an offer and pleads guilty, this fact is admissible as an admission, assuming that it passes the threshold of Rule 403.")

Page 44, Line 23 through Page 47, Line 9

Page 47, Line 25 through Page 48, Line 7

Page 49, Lines 3 through 4

Page 49, Line 7 through Page 49, Line 20

Page 50, Line 1 through Line 4

Page 50, Line 19 through Line 22

Page 51, Line 6 through Page 51, Line 17

Page 53, Line 12 through Page 53, Line 15

Page 53, Line 24 through Page 54, Line 9

Page 55, Line 4 through Page 58, Line 17

Page 60, Line 1 through Page 61, Line 18

Page 61, Line 22 through Page 62, Line 22

Page 63, Line 14 through Page 68, Line 18

**Defendants' Response:**

This testimony is relevant to the issue of causation.  Plaintiffs' attorney asked about the suspension of Mr. Wightman's in New York, and the warning he received for a log book violation, in an apparent attempt to show that this accident was caused by the negligence of Wightman and his employer, who sanctioned such log book violations so that its drivers could drive a greater number of hours per week than permitted by safety regulations.  Defendants maintain that, as claimed by the Plaintiffs in their previous suit, these were the true causes of this accident, and respectfully submit that they should be able to prevent admissible evidence of this to the jury.

Page 68, Line 24 through Page 70, Line 1

Page 70, Line 4 through Page 70, Line 7

Page 70, Line 10

Page 70, Line 23 through Page 71, Line 8

Page 72, Line 2 through Page 73, Line 5

Page 73, Line 25 through Page 74, Line 18

Page 80, Line 17 through Page 81, Line 22

Page 82, Line 2 through Page 82, Line 8

Page 83, Line 4 through Page 83, Line 18

Page 84, Line 1 through Page 85, Line 8

Page 86, Line 18 through Page 87, Line 18

Page 88, Line 2 through Page 88, Line 6

Page 88, Lines 18 and 19 through Page 88, Line 21

Page 89, Line 1 through Page 89, Line 5

Page 89, Line 10 through Page 89, Line 12

Page 90, Line 18 through Page 95, Line 11

Page 95, Line 17 through Page 96, Line 14

Page 96, Line 16 through Page 97, Line 23

Page 98, Line 3 through Page 98, Line 7

Page 98, Line 12 through Page 98, Line 14

Page 99, Line 5 through Page 103, Line 21

Page 105, Line 21 through Page 106, Line 13

Page 107, Line 3 through Page 107, Line 7

Page 107, Line 13 through Page 107, Line 24

Page 110, Line 5 through Page 111, Line 5

Page 114, Line 1 through Page 114, Line 4

Page 114, Line 22 through Page 118, Line 7

Page 119, Line 6 through Page 120, Line 2

Page 124, Line 6 through Page 124, Line 20

Page 124, Line 22 through Page 124, Line 23

Page 125, Line 9 through Page 126, Line 11

Page 127, Line 4 through Page 127, Line 6

Page 127, Line 15 through Page 127, Line 16

Page 128, Line 13 through Page 128, Line 20

Page 128, Line 24 through Page 131, Line 18

**<u>Defendants' Response:</u>**

This testimony is relevant to the issue of causation.  Plaintiffs' attorney asked about Mr. Wightman's license suspension in various states, and whether he received safety training from his employer, in an apparent attempt to show that this accident was caused by the negligence of Wightman and his employer.  Defendants maintain that, as claimed by the Plaintiffs in their previous suit, these were the true causes of this accident, and respectfully submit that they should be able to prevent admissible evidence of this to the jury.

Page 132, Line 13 through Page 132, Line 20

Page 133, Line 7 through Page 134, Line 8

Page 134, Line 19 through Page 135, Line 10

Page 135, Line 25 through Page 136, Line 2

Page 136, Line 25 through Page 137, Line 8

Page 137, Line 25 through Page 140, Line 6

Page 142, Line 6 through Page 143, Line 7

Page 143, Line 7 through Page 143, Line 9

Page 143, Line 17 through Page 144, Line 4

Page 144, Line 23 through Page 145, Line 4

Page 145, Line 8 through Page 146, Line 5

Page 148, Line 10 through Page 153, Line 1

Page 153, Line 16 through Page 153, Line 24

Page 155, Line 19 through Page 156, Line 19

Page 158, Line 1 through Page 158, Line 11

Page 159, Line 2 through Page 159, Line 6

Page 159, Line 16 through Page 160, Line 12

Page 161, Line 12 through Page 161, Line 25

Page 162, Line 19 through Page 163, Line 10

Page 163, Line 25 through Page 164, Line 5

Page 164, Line 19 through Page 165, Line 15

Page 165, Line 23 through Page 165, Line 25

Page 167, Line 9 through Page 167, Line 20

Page 167, Line 24 through Page 169, Line 23

Page 170, Line 7 through Page 172, Line 1

Page 172, Line 6 through Page 176, Line 24

Page 181, Line 7 through Page 181, Line 19

Page 182, Line 14 through Page 183, Line 2

Page 183, Line 21 through Page 184, Line 14

Page 184, Line 18 through Page 184, Line 23

Page 186, Line 14 through Page 188, Line 20

Page 189, Line 23 through Page 190, Line 20

Page 190, Line 23 through Page 191, Line 2

Page 191, Line 4 through Page 192, Line 7

Page 192, Line 9 through Page 193, Line 4

Page 193, Line 7 through Page 194, Line 2

Page 194, Line 7 through Page 195, Line 13

Page 197, Line 22 through Page 198, Line 8

Page 202, Line 4 through Page 202, Line 8

**Plaintiffs' Objection to Defendants' Cross Designation of Wightman:**

Page 38, Line 10 through Page 38, Line 14 Hearsay – Rules 801 and 802 Offered in evident to prove the matter asserted.

Page 41, Line 21 through Page 43, Line 3
Page 63, Line 20 to Page 44, Line 7. Objection – Rule 609 and Rules 403 and 404.

The overriding protection of Rule 403 requires that probative value not be outweighed by danger of unfair prejudice to plaintiffs in a strict liability in tort and implied warranty case where witness is not a party.

Witness, Scottie Wightman, a Kentucky resident, pleaded guilty under a plea agreement in Pennsylvania to five (5) summary charges and had two (2) charges dismissed. He paid a $125.00 fine and was assessed 9 points on his license.

In Pennsylvania State Courts, evidence of summary convictions is precluded.

This distinction has been based upon the fact that expedience and convenience, rather than guilt, often control the defendant's decision to plead guilty. The distinction is bolstered by 42 PA. Cons. Stat: Ann §6142(a), a recodification of previous Vehicle codes which state specifically that 'a pleas of guilty or nolo contendere, or a payment of the fine and costs . . . by any person charged with a violation (of the Vehicle Code) shall not be admissible as evidence in any civil matter arising out of the same violation or under the same facts or circumstances."

Both Fed. R. Evid 410 as well as Fed. R. Crim P11(e)(6) are silent on the admissibility of a plea of guilty itself.

There is no issue but that Mr. Wightman was not under the influence of alcohol or drugs pursuant to lab results taken within an hour or so following the accident.

The plaintiffs' case is premised upon a known loss of vehicle control when an engine brake is enabled on a tractor-trailer on a wet and slippery roadway, particular on a curve, for which there exists demonstrated admissible evidence.

The introduction of these guilty please with the assessment of a minimal fine, upon information and belief, $125.00, most probably made as a matter of convenience and expediency on the advice of the trucking company lawyers, where three persons were killed and three injured, will create undue prejudice to plaintiffs', which outweighs this line of attack on the witness' credibility.

As a result of the arranged pleas, Mr. Wightman was able to keep his CDL license, and testified at his deposition that he works as a truck driver.

Although the District Attorney's office initially investigated the case, it agreed to the plea arrangement.

-       Page 49, Lines 3 through 4 Objection. There is no answer to question.

-       Pg. 65, Line 6 to Pg. 67, Line 11 – Objection – Rules 401-403, F.R.C.P. – Relevancy. See Police Report, Pg. 1462, annexed hereto.

Mr. Wightman was not charged with driving with a suspended license, and he had a valid Kentucky license. According to Pg. 1462 of the Police Report, New York State failed to timely notify a compact State, Kentucky, of any request for suspension due to non-payment of a fine. Although suspended in New York, he retains a valid Kentucky license.

The testimony being proffered also contains testimony by Wightman denying any notification of suspension.

-     Page 128, Line 24 through Page 131, Line 18

Objection – Relevancy. Rules 401-403 F.R.C.P. Past driving history of non-party witness is not relevant, and any relevancy would be outweighed by prejudice and confusion of the issues in this case.

2.     Norris D. Hoover

    Mr. Hoover is defendants' driver expert.

-     Pg. 5, Lines 8-21

-     Pg. 6, Line 22 to Pg. 7, Line 2

-     Pg. 8, Line 17-19

-     Pg. 21, Line 25 to Pg. 24, Line 20

-     Pg. 26, Line 5 to Pg. 27, Line 22

-     Pg. 35, Line 25 to Pg. 36, Line 13

-     Pg. 39, Lines 12-23

-     Pg. 54, Line 18 to Pg. 55, Line 25

-     Pg. 56, Line 7-13

-     Pg. 56, Line 16 to Pg. 58, Line 1

-     Pg. 58, Line 2 to Pg. 59, Line 6

-     Pg. 59, Line 20 to Pg. 60, Line 18

-     Pg. 65, Line 21-25

-     Pg. 66, Line 23 to Pg. 67, Line 23

-     Pg. 96, Line 10-25

-     Pg. 105, Line 9 to Pg. 109, Line 8

-     Pg. 109, Line 23 to Pg. 110, Line 24

-       Pg. 111, Line 8 to Pg. 112, Line 15

-       Pg. 119, Line 19 to Pg. 120, Line 18

-       Pg. 134, Line 18-23

-       Pg. 135, Line 9-15

-       Pg. 139, Line 4-20

-       Pg. 148, Line 4-14

-       Pg. 149, Lines 3-5

-       Pg. 149, Line 17 to Pg. 151, Line 3

-       Pg. 153, Line 24, to Pg. 154, Line 22

-       Pg. 159, Lines 1-14

-       Pg. 161, Line 7-11

-       Pg. 164, Line 5-23

**<u>Defendants' Objection:</u>**

Defendants object to use of this testimony in Plaintiffs' case in chief.  First, Plaintiffs have not designated Hoover as an expert, and are therefore not entitled to introduce expert testimony by him as part of their case in chief.  Second, this testimony constitutes hearsay that falls under no exception to the hearsay rule.  Because Defendants intend to call Hoover to testify at trial, use of his deposition for purposes other than impeachment is not justified under Rule 32 (a)(3), which governs use of deposition testimony "by any party for any purpose."  Fed. R. Civ. P. 32 (a)(3).  Nor does this testimony fit into the "former testimony" exception to the hearsay rule.

Plaintiffs are not generally entitled to present testimony by defense experts.  <u>See, e.g.,</u> <u>Owens v. Silvia</u>, 838 A.2d 881, 901-02 (R.I. 2003); <u>Starkey v. Hunt-Madani Professional</u> <u>Associates, P.A.</u>, No. C .A. No. 84C-SE-50, 1988 Del. Super. LEXIS 112, *4 (Del Super. Ct. Mar. 31, 1988)("plaintiff may not under the facts of this case compel the testimony of any expert engaged by defendants").

Squarely on point is <u>Owens v. Silvia</u>, in which the Rhode Island Supreme Court affirmed trial court's refusal to permit a plaintiff to introduce deposition testimony of defense expert where plaintiff had not disclosed the deponent as an expert, notwithstanding the fact that the defense did not call the expert itself.  <u>Owens v. Silvia</u>, 838 A.2d at 901-02.  In the present case, Defendants intend to call Hoover as a witness, and Plaintiffs may cross-examine him, using his deposition if they wish.

As noted above, the witness in question is expected to testify at trial. As a result, his there is no basis for admitting his deposition testimony under Rule 32 (a)(3). Furthermore, this testimony, which is clearly hearsay, can not be admitted under the "former testimony" exception, because that exception applies only when the declarant is unavailable. See Fed. R. Evid. 804 (b)(1). "[T]he reason that defendants' expert [witness is] unavailable to plaintiff was not because [he] lived and worked out-of-state, but because plaintiff failed to designate [him] as such in his answers to interrogatories and failed to engage [him] as testifying expert witnesses for plaintiff in this case." Owens, 838 A.2d 901. Even if Hoover himself were truly unavailable, his deposition testimony would be inadmissible, because "before the former testimony of an expert witness can be used, there should be some showing not only that the witness is unavailable, but that no other expert of similar qualifications is available or that the unavailable expert has some unique testimony to contribute." Carter-Wallace, Inc. v. Otte, 474 F.2d 529, 536-37 (2d Cir.1972).

If Plaintiffs believe they need or would benefit from expert testimony on subjects addressed by Norris Hoover, they could and should have engaged an expert to testify on those subjects.

3.     Trooper Martin Long

Trooper Long is a Pennsylvania State Police Officer who was called to the accident scene for the purposes of investigation of the accident.

- Pg. 4, Line 6 to Pg. 15, Line 19

- Pg. 16, Line 3 to Pg. 25, Line 10

- Pg. 29, Lines 6-20

- Pg. 35, Line 7 to Pg. 36, Line 2

- Pg. 36, Line 3 to Pg. 40, Line 14

- Pg. 40, Line 20 to Pg. 49, Line 15

- Pg. 51, Line 2 to Pg. 53, Line 22

- Pg. 54, Line 16 to Pg. 55, Line 4

- Pg. 55, Line 9-22

- Pg. 56, Line 6 to Pg. 57, Line 11

- Pg. 57, Line 12 to Pg. 59, Line 22

- Pg. 60, Line 21 to Pg. 61, Line 1

-    Pg. 61, Line 21 to Pg 64, Line 4

-    Pg. 65, Lines 3-22

-    Pg. 66, Line 2 to Pg. 67, Line 2

-    Pg. 70, Line 1 to Pg. 71, Line 3

-    Pg. 70, Line 16 to Pg 79, Line 11

-    Pg. 80, Line 11 to Pg. 82, Line 6

-    Pg. 82, Line 23, to Pg. 83, Line 3

-    Pg. 84, Line 2 to Pg. 89, Line 4

-    Pg. 90, Line 9 to Pg. 94, Line 20

-    Pg. 95, Lines 3-4

-    Pg. 95, Line 6-9

-    Pg. 95, Line 13 to Pg. 102, Line 9

**Defendants' Objection:** Pg. 98, Line 7 through Pg. 98, Line 11

Speculation – Rule 401, 602.

-    Pg. 103, Line 19 to Pg. 108, Line 2

-    Pg. 108, Line 15 to Pg. 109, Line 10

-    Pg. 110, Line 12 to Pg. 111, Line 5

-    Pg. 111, Line 17 to Pg. 112, Line 9

-    Pg. 113, Line 2 to Pg. 114, Line 19

-    Pg. 116, Line 3 to Pg. 117, Line 7

-    Pg. 150, Line 6 to Pg. 151, Line 13

-    Pg. 151, Line 14 to Pg. 152, Line 7

-    Pg. 152, Line 15 to Pg. 154, Line 13

-      Pg. 159, Line 23 to Pg. 161, Line 8

**Defendants Move to Strike –** Page 161, Lines 3 through 8 as unresponsive and speculative – Rule 401 and 602.

-      Pg. 178, Line 5 to Pg. 179, Line 2

-      Pg. 179, Lines 20-24

-      Pg. 181, Line 22 to Pg. 183, Line 7

**Defendants' Cross-Designation of Trooper Long**

Page 82, Line 13 through Page 82, Line 22

Page 83, Line 4 through Page 83, Line 24

Page 89, Line 5 through Page 89, Line 22

Page 102, Line 10 through Page 103, Line 18.

Page 109, Line 11 through Page 110, Line 11

Page 121, Line 17 through Page 122, Line 3

Page 143, Line 23 through Page 150, Line 5

Page 155, Line 3 through 159, Line 19

Page 164, Line 11 through 165, Line 4

Page 165, Line 24 through Page 170, Line 24

Page 176, Line 21 through Page 177, Line 18

Page 179, Line 7 through Page 179, Line 14

Page 180, Line 1 through Page 181, Line 21

     4.      Robert Hartshorn

Mr. Hartshorn is the District Finance Manager for DaimlerChrysler Services Commercial Vehicles, formerly known as Mercedes-Benz Credit Corporation

The following are designations by page reference of the deposition transcript which may be read into evidence:

-     Pg. 6, Line 11 to Pg. 7, Line 18

-     Pg. 9, Lines 9-13

-     Pg. 10, Line 10-23

-     Pg. 13, Lines 2-5

-     Pg. 13, Line 23, to Pg. 14, Line 3

-     Pg. 14, Line 22 to Pg. 15, Line 2

-     Pg. 15, Line 21 to Pg. 17, Line 1

-     Pg. 21, Line 11 to Pg. 22, Line 14

-     Pg. 23, Line 10 to Pg. 24, Line 18

-     Pg. 25, Line 18 to Pg. 26, Line 11

-     Pg. 27, Line 5 to Pg. 87, Line 20

## **Defendants' Objection:**

Page 27, Line 18 through Page 32, Line 2 – Rule 401, 403 -- Irrelevant to any of the issues in this litigation.

Page 33, Line 24 through Page 37, Line 22 – Rule 401, 403, 411 -- Irrelevant and relates to insurance coverage.

Page 37, Line 24 through Page 50, Line 11 – Rule 401, 403, 411, 602 – Irrelevant to the issues involved in this litigation deal with issues of insurance, wholesale financing which are irrelevant. The testimony is more prejudicial than probative.

Page 50, Line 22 through Page 54, Line 13 – Rule 401, 403, 411, 602 -- Irrelevant to the issues involved in this litigation deal with issues of insurance, wholesale financing which are irrelevant. The testimony is more prejudicial than probative.

Page 56, Line 10 through Page 56, Line 20 – Unnecessary colloquy.

Page 57, Line 4 through Page 64, Line 9 – Rule 401, 403, 411, 602 -- Irrelevant and more prejudicial than probative.  Deals with issues completely unrelated to the subject claim.

Page 66, Line 5 through Page 66, Line 23 – Rule 401, 403 -- Irrelevant.

Page 67, Line 21 through Page 67, Line 1 – Is unclear and misstates the witnesses testimony.

Page 68, Line 12 through Page 68, Line 18 – Rule 401, 403, 602 -- Irrelevant and immaterial to the claims made.

Page 68, Line 19 through Page 69, Line 6 –  Rule 401, 403, 602 -- Speculation.

Page 71, Line 10 through Page 81, Line 8 – Rule 401, 403, 602 -- Testimony refers to issues unrelated and irrelevant to this litigation.

Page 81, Line 16 through Page 87, Line 20 – Rule 401, 403, 411, 602 -- Unrelated to the subject litigation.  Deals with issues of repossession.

**Defendants' Cross-Designation on Hartshorn's Deposition**

Page 18, Line 21 through Page 19, Line 1

Page 20, Line 2 through Page 20, Line 10

Page 20, Line 14 through Page 20, Line 25

## DEFENDANTS' DESIGNATION OF TESTIMONY

1.       **William J. Fiscus**
      **121 Sando Street**
      **Indiana, PA  15701**

      Mr. Fiscus will testify that he was proceeding westbound on I76 and passed the tractor trailer in the eastbound lane.  He will testify by deposition that the tractor trailer had too much speed for prevailing conditions.
William Fiscus, deposition of January 24, 2002

      i) page 14, line 22 – page 25, line 10

      ii) page 32, lines 8 – 21

      iii) page 41, line 20 – page 43, line 8

      iv) page 43, line 21 – page 44, line 15

2.       **Willis Hensley**
      **709 West Maple Street**
      **Nicholasville, KY  40356**

Mr. Hensley will testify by deposition as to the lack of compliance by Hensley Industries with federal motor vehicle safety regulations including violations that contribute to the accident, post-accident conversations with Scottie Wightman.  He will testify pursuant by deposition and by exhibits identified by the witness.

Willis Hensley, deposition of November 15, 2001:

     i)  page 14, line 23 – page 16, line 9

     ii) page 31, line 15 – page 98, line 12

**<u>Defendants' Response:</u>**
Pg. 43, Line 25 – 19

This evidence establishes a relevant pattern or policy of misconduct.

**<u>Defendants' Response:</u>**
Pg. 48, Lines 13-16

This evidence concerns whether the safety measures and driver oversight implemented by Wightman's employer were negligent in light of the known dangers of unsafe practices, and is therefore relevant.

**<u>Defendants' Response:</u>**
Pg. 50, Lines 7-10.

This is not hearsay; whether a professional truck driver's license has been revoked would ordinarily be within the first-hand knowledge of not only the driver but also his employer.  It is relevant because it goes directly to whether Wightman was a fit driver and the seriousness of his culpability in this accident.

**<u>Defendants' Response:</u>**

Pg. 54, Line 25 to Pg. 74, Line  18

This evidence establishes a relevant pattern or policy of misconduct.

     iii) page 121, line 5 – page 122, line 15

     iv) page 123, line 10 – page 134, line 7

     v) page 136, line 16 – page 138, line 22

     vi) page 140, lines 10 – 25

     vii) page 150, lines 8 – 14

**Defendants' Response:**

This evidence tends to show that, as Plaintiffs' asserted in an earlier suit, this accident was caused by the negligence of the driver, Scottie Wightman, and his employer as a result of, inter alia, the inadequacy of the training provided by the employer.

**Plaintiffs' Objection to Willis Hensley:**

Plaintiffs object to the proffered deposition testimony of Willis Hensley by the defendant as follows:

-    Pg. 41, Line 9-20 – Objection – Hearsay. Rule 801(c) and 802 offered in evidence to prove the truth of the matter asserted.

-    Pg. 43, Line 25 – 19 – Objection – Relevancy. Violations against Hensley vehicles after the date of accident are not probative of issues in this case.  Rules 401-403

-    Pg. 48, Lines 13-16 – Objection - Relevancy. Testimony not probative to issues in this case or otherwise relevant. Rules 401-403 F.C.P.R.

-    Pg. 50, Lines 7-10. – Objection – Hearsay and Relevancy. Rules 401-403, 801-802 F.R.C.P.

-    Pg. 54, Line 25 to Pg. 74, Line  18 – Objection – Relevancy. Rules 401-403 F.R.C.P. Testimony of safety compliance reviews of U.S. Department of Transportation for Hensley Industries for dates prior to employment of Scottie Wightman. No relevancy to issues in this lawsuit affecting Scottie Wightman who first became employed on 8/20/99.

-    Pg. 124, Line 7 to Pg. 127, Line 12 – Objection – Hearsay. Rule 801(c). Hearsay. Offered in evidence to proved the truth of the matter asserted.

-    Pg. 140, Line 19-25 – Objection – Hearsay. Offered in evidence to prove the truth of the matter asserted. Rule 801(c).

-    Pg. 150, Lines 8-14 – Objection – Relevancy. Rules 401, 402, and 403.

IX.    **STIPULATIONS AND PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**STIPULATIONS OF UNCONTROVERTED FACTS**

On September 16th, 1999, a motor vehicle accident occurred on the Pennsylvania turnpike involving a 1998 Freightliner FLD 132 tractor trailer truck driven by Scottie Wightman and a 1995 Chevrolet Suburban 1500 driven by Thor Svege, Sr.

**PLAINTIFFS' STATEMENT OF CONTESTED ISSUES OF FACT AND LAW**

1.    Was the Jake Brake "on" when the tractor-trailer lost control?

2.    Was there a Jake Brake induced loss of control under the circumstances of road and weather that existed at the time of this accident?

3.    Was the ABS programmed to detect engine brake induced loss of traction in the rear wheels on the drive axles of this tractor?

4.    Did the ABS on this tractor have the independent capacity to disengage the engine brake without service brake application by the driver?

5.    Would independent disengagement of the engine brake without service brake application needed to activate ABS control of braking, prevent loss of control?

6.    Was the design of the tractor unreasonably dangerous by not designing into it an operation service brake control feather of the engine brake during inclement weather conditions which would not interfere with engine brake operation during normal driver conditions, and which defendant, DDC, had made feasible, cost effective, and available to Freightliner?

7.    Did defendants act with the reckless disregard for the drivers of its tractors and the motoring public when it knew but failed to provide adequate warnings and instructions that engine brake induced loss of traction to the tractor rear wheels when used on a wet and slippery

roadway, and most pronounced, during a turning maneuver, will cause jackknifing which, once initiated, will occur at a rate too rapid for nearly all drivers to control?

8.      Have plaintiffs Thor Svege, Jr. and Briana Svege proven the necessary elements to entitle them to damages for bystander emotional distress separate and apart from any other damages they may be entitled to?

## DEFENDANTS' STATEMENT OF CONTESTED ISSUES OF FACT AND LAW

1.  Whether the engine brake of the subject Freightliner FLD 132 tractor truck was "on" at the time of the September 16th, 1999 accident.

2.  Whether the engine brake in the Freightliner FLD 132 tractor truck at the time of the subject accident was capable of causing the accident, whether in the on or off position.

3.  Whether the accident was caused by the engine brake of the tractor truck.

4.  Whether the tractor truck, equipped with an engine brake, was defective and unreasonably dangerous as claimed by the plaintiffs.

5.  Whether the tractor truck, if defective and unreasonably dangerous as claimed by the plaintiffs, proximately caused plaintiffs' injuries.

6.  Whether the defendants acted with reckless disregard for the safety of product users or consumers by selling the tractor-trailer truck without the various warnings requested by plaintiffs' experts.

7.  Whether Scottie Wightman and/or Hensley Industries were the cause of the plaintiffs' injuries because he failed to control his vehicle, and/or because Hensley Industries did not properly train and supervise Mr. Wightman.

8.  The amount of damages sustained by each of the plaintiffs.

IX.    (b)    **Jury Trial:**

    1.    **Proposed Voir Dire Questions**

        Plaintiffs' proposed voir dire questions are attached as Exhibit A.

        Defendants proposed voir dire questions are attached as Exhibit B.

    2.    **Proposed Jury Instructions**

        Plaintiffs' proposed jury instructions are attached as Exhibit C.

        Defendants' proposed jury instructions are attached as Exhibit D.

        Defendants' Objections to Plaintiffs' Jury Instructions are attached as
           Exhibit E.

    3.    **Proposed Verdict Form**

        Plaintiffs' proposed verdict forms are attached as Exhibit F.

        Defendants' proposed verdict forms are attached as Exhibit G.

    4.    **Brief Description of Case and Parties**

**Plaintiffs' Version.**

Let me begin by introducing to you the parties to this action and their attorneys.

This case has been brought on behalf of the plaintiffs by Alice G. Svege, in her representative capacity as the Administratrix of the Estate of Thor Svege, Sr. and as the Guardian of the Estates of minor children, Thor Svege, Jr. who is known at T.J. and his sister Briana Svege.

Alice Svege is the mother of Thor Svege, Sr. and the grandmother who is raining the children.

The Sveges live in Danbury.

Do any of the prospective jurors know the Sveges?

The Sveges are represented by the attorney Leo Gilberg.

Do any of you know him?

The Sveges have brought a lawsuit against certain defendants.  They are:

-        Freightliner Corporation of Portland, Oregon, a manufacturer of trucks.

-        Detroit Diesel Corporation of Detroit, Michigan, a manufacturer of electronic engines that are used in trucks like those manufactured by Freightliner.

-        The last defendant is Mercedes-Benz Credit Corporation of Lisle, Illinois who was the registered owner of the truck manufactured by Freightliner.

All of the defendants are represented by Paul D. Williams of the Firm of Day, Berry & Howard.

Do any of you have some association with any of the defendants I named?

Do any of you know Mr. Williams or his law firm?

I'm going to briefly give you some very basic background as to what this case is about so that you can better understand what your role as a juror would be if you are chosen.

What I say is not evidence and you are not to take it as such.

What I say may also raise questions in your mind, which can only be answered by listening to the evidence that will be presented to you beginning tomorrow.

This case involves an unfortunate accident which occurred on September 16, 1999 on the Pennsylvania Turnpike in the vicinity of Dowingtown, Pennsylvania.

The SUV being driven in a westerly direction on the PA Turnpike by Thor Svege, Sr. and in which his children were among the passengers, was struck by a tractor-trailer which had been going east on the PA Turnpike and lost control in a curve and came over into the westerly lanes and struck the SUV.

-77-

Thor Svege, Sr. died, and his two children, Thor, Jr. and Briana were injured.

The plaintiffs bring this action against these defendants under the Connecticut Products Liability Act.

I will not tell you all the legal reasons for this action at this time, but will tell you that the plaintiffs essentially say that the activation of the engine brake or Jake Brake in the tractor in extremely wet weather and on slippery road conditions that plaintiffs say were known to cause loss of vehicle control, made the tractor defective and unreasonably dangerous, and was the primary reason for the loss of control.

If you do not know what an engine brake or a Jake Brake is, you will soon be very familiar with the term if you become a juror in this case.

The defendants deny any responsibility for the accident, maintain that the engine brake was not activated or "on", and even if it was on, the ABS system on the tractor would have independently disengaged the engine brake.

There you have a small glimpse of the issues, and I hope a better perspective to consider your jury service in this case.

It is a case that will present you with multiple issues.

For these parties, this is an important time and no small matter.

It is their day in Court.

And our purpose is now to constitute a jury that will true and fairly try the issues the parties will bring before you, and render a verdict that is just.

**Defendants' Version**

See Defendants' Statement of the Case on Page 8.

## X.     ANTICIPATED EVIDENTIARY PROBLEMS

The parties await the Court's rulings on MBCC's Motion for Summary Judgment and the

Motions to Preclude and Cross Motions to Preclude Expert Witnesses to which defendants' file

the Supplemental Memorandum as required by the Court. Additionally, the defendants' have

filed a Motion to Bifurcate.

PLAINTIFFS,


By_____
    Leo Gilberg, Esq. (CT 22824)
    305 Broadway
    New York, New York  10007
    Their Attorneys
    (212)822-1440


DEFENDANTS,
FREIGHTLINER CORPORATION,
MERCEDES-BENZ CREDIT
CORPORATION, and
DETROIT DIESEL CORPORATION


By_____
    Paul D. Williams (ct05244)
    Daniel J. Foster (ct24975)
    Day, Berry & Howard LLP
    CityPlace I
    Hartford, Connecticut 06095-3499
    (860) 275-0100
    (860) 275-0343 (fax)
    Their Attorneys