UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ALICE G. SVEGE, ADMINISTRATRIX, ET AL., | : | CIVIL NO. 3:01 CV 01771 (MRK) |
| | : | |
| Plaintiffs, | : | |
| VS. | : | |
| | : | |
| MERCEDES-BENZ CREDIT CORPORATION, | : | |
| ET AL., | : | |
| | : | |
| Defendants. | : | JULY 20, 2004 |

**JOINT TRIAL MEMORANDUM EXHIBIT C**

**PLAINTIFFS' PROPOSED JURY INSTRUCTIONS**

1.    **PRODUCT LIABILITY — GENERAL PRINCIPALS**.

This is a product liability case.  That is, the plaintiffs allege in their Complaint that the

defendants are liable for the loss of control and crash of a Freightliner tractor into an SUV on

September 16, 1999 on the Pennsylvania Turnpike because use of the engine brake on the tractor

on wet slippery road surface, known to cause loss of vehicle control made the tractor defective

and unreasonably dangerous as designed, manufactured and sold.

The plaintiffs brought this claim under Connecticut's Product Liability Statute, Conn.

Gen. Stat. §§52-5721q, which I will refer to as the "Product Liability Law".  Under the Product

Liability Law, the Plaintiff has pleaded three legal theories of recovery against the defendant: (a)

Strict Liability in Tort; (b) Negligence; and (c) Implied Warranty.

A.    **STRICT LIABILITY IN TORT**.

The first theory that the plaintiffs rely on is strict liability in tort under Connecticut's

Product Liability Law.

In order to recover under the doctrine of strict liability in tort, the plaintiff must establish five points, by a preponderance of the evidence:

1)    The defendants were product sellers engaged in the business of selling the product;

A product seller is defined by Connecticut's Product Liability law as:

"Any person or entity, including a manufacturer, wholesaler, distributor or retailer who is engaged in the business of selling such products whether the sale is for resale or for use or consumption.  The term "product seller" also includes lessors or bailors of products who are engaged in the business of leasing or bailment of products."

Conn. Gen. Stat. §§52-572m(a).

2)    The product was in a defective condition unreasonably dangerous to the consumer or user;

3)    The defect caused the injury or injuries for which compensation is sought;

4)    The defect existed at the time of the sale; and

5)    The product was expected to and did reach the consumer without substantial change in condition.  *Giglio v. Connecticut Light and Power Company*, 180 Conn. 230, 234 (1980*). Rossignol v. Danbury School of Aeronautics, Inc.*, 154 Conn. 549, 562 (1967).

This claim is known as strict liability.  The presence or absence of negligence by the seller or manufacturer or any third person including the driver of the tractor-trailer plays no part in this claim.  Whether the seller or manufacturer knew, or should have known, about the defect also plays no part in this claim.

In a strict liability case, whether the defendants followed industry standards or practices is irrelevant.  Therefore, even if defendants complied with any standard or practice of the

industry itself this is not a defense and must not be considered by you. <u>Holloway v. J.B.</u>

<u>Systems, Ltd.</u>, 609 F.2d 1069 (3d Cir. 1979); <u>DiMeo v. Minster Machine Co.</u>, 388 F.2d 18, 20

(2d Cir. 1969).

     The reason for strict liability is that the seller, by marketing its products for use or

consumption, have assumed a special responsibility to any member of the public who may be

injured by it. The doctrine of strict liability under the Product Liability Law holds that the users

have the right to rely upon the fact that reputable sellers will stand behind their goods. Public

policy demands that the burden of injuries caused by products be placed upon those who market

the products, and be treated as a cost of doing business. Wright and Daly, Connecticut Jury

Instructions, Volume 2, §547.

**2.     THE PRODUCT WAS IN A DEFECTIVE CONDITION UNREASONABLY DANGEROUS TO THE CONSUMER AND TO THIRD PERSONS WHOM THE PRODUCT SELLER COULD EXPECT TO BE ENDANGERED BY ITS USE.**

     Under this Law of Strict Liability, you are to understand that a product is "unreasonably

dangerous" when it is dangerous to an extent beyond that which would be contemplated by the

ordinary consumer who purchases it, with the ordinary knowledge common to the community as

to its characteristics. *Restatement of Torts*, 2d, §402a, comment 1. *Giglio v. Connecticut Light*

*& Power Co.*, 180 Conn. 230, 239 (1980).

     In this case, the Plaintiffs claim that the Freightliner tractor was in a defective condition,

unreasonably dangerous, because the engine brake on the tractor was enabled when the operator

took his foot off the throttle going into a curve in wet weather on a slippery roadway, conditions

that were known to the product sellers to cause loss of vehicle control, and was the primary cause

of the tractor jackknifing, losing directional control, striking a concrete barrier to its right, then

crossing over the barrier separating opposite lanes of traffic, striking the SUV operated by Thor Svege, Sr., in the opposite lane, killing him and injuring his two minor children.

Further, the defendants failed to provide an adequate warning and instructions regarding this defect.

Furthermore, the plaintiffs claim that the tractor was not reasonably fit for its intended purpose because it could not be driven safely on wet and slippery surfaces with the engine brake on.

Whether a product is unreasonably dangerous is a question of fact to be determined by the jury.  You, the jury, can draw your own reasonable conclusions as to the expectations of the ordinary consumer and the knowledge common in the community at large.  *Slepski v. Williams Ford, Inc.*, 170 Conn. 18,23 (1975).

In the Plaintiffs' complaint, they have claimed that the tractor was defective and unreasonably dangerous because use of the engine brake on a wet roadway, especially on a curve, would cause loss of vehicle control.  Further, that the defendant failed to adequately warn of these defects or hazards in the tractor, and that the tractor was not reasonably fit for its intended purpose.

### B.    FAILURE TO WARN.

Critical issues of defectiveness under failure to warn provision of CPLA depends not on whether product itself is defective, but, rather, on whether warnings are necessary, and if so, whether they are adequate.  Sharp v. Wyatt, 31 Conn. App. 824, 627 A.2nd 1347 (1993).

Plaintiffs claim that the Freightliner tractor involved in this accident was defective because the product sellers did not adequately warn that the use of the engine brake on a wet

slippery road surface, known to cause loss of vehicle control, made the tractor defective and unreasonably dangerous as designed, manufactured, and sold.

Loss of control was significantly enhanced when the engine brake was enabled in a curve in combination with a wet slippery roadway.

"It is well established…that 'a product may be defective because a manufacturer or seller failed to warn of the product's unreasonably dangerous propensities.'" Giglio v. Connecticut Light & Power Co., 180 Conn. 230, 235 (1980).

Moreover, there is no dispute that the seller or manufacturer of a product is under a duty to give adequate warning of dangers of which he knows or should know which relate to the use of the product. This duty extends not only to dangers arising from improper design or manufacture, but also dangers inseparable from a properly made product of the particular kind. Giglio v. Connecticut Light & Power Co., 180 Conn. 230, 235-36 (1980); Prosser, Law of Torts, 4th ed. (1971) pp. 646-47.

[A product which can potentially cause injury to a user, and which has dangerous propensities which are not obvious so that everyone that can readily appreciate them, may require adequate directions and warnings. Without adequate warnings and directions, the product will be considered to be both unreasonably dangerous and defective, and the manufacturer will be subject to liability for injuries caused by its product.] Restatement 2d Torts, §402S, Comment J and K; Conn. Gen. Stat. §52-572q.

In this case, plaintiffs contend that the warnings regarding the use of engine braking in wet pavement conditions, as provided in owners or operator's manuals were inadequate.

The warning given by Freightliner did not emphasize the catastrophic consequences which can occur if the engine brake was used on wet pavement, especially on a curve.

Plaintiffs contend Freightliner knew or should have known as a manufacturer, that when the engine brake of a tractor-trailer is enabled in a curve on a wet roadway, the jackknife, that can ensue once initiated, normally occurs at a rate too rapid for nearly all drivers to control.

Plaintiffs claim that the warning given was insufficient and inadequate because it did not provide a complete disclosure of the existence and extent of the risk involved.  Watkins v. Ford Motor Co., 190 F. 3rd 1213, 1219-20 (11th Cir., 1999).

Further, plaintiffs complain that there was no waning in the tractor cab regarding the use of engine braking in wet pavement conditions.

There was no active indication, much less warning, in the tractor cab regarding the active status of the engine brakes when they were in fact enabled (switch or switches turned on) so that driver would know that the engine brake was active under conditions when it should not be used.

Had an active warning and indication of the engine brake status been available in the cab of the tractor, it is more probable than not that harm to the plaintiffs would not have occurred based on the circumstances of this accident.

Plaintiffs have offered evidence and there seems to be no dispute that an engine brake active light was made available by DDC to Freightliner as an option and was cost effective utilizing an electronic system on the tractor that had already been designed to accommodate it.

Plaintiffs claim had such an active light been on the dash of this Freightliner vehicle, the driver would have been aware of the active status of the engine brake and given his own testimony that he normally turned off the engine brake, he would have turned off the engine brake before the situation occurred which resulted in the accident.

Even if he had decided for whatever reason to leave the engine brake active, he would have been aware of the engine brake status and would have turned off the engine brake switch

and limited the extent of the loss of control which would have changed the loss of control dynamics of the accident and avoided the accident with the SUV.

You may consider the habit or custom of the driver of normally having the engine brake active in dry weather and turning it off in wet weather. F.R. E., Rule 406.

To be a cause of injury, a defendant's product need not be the sole or even the dominant cause. That product need not be the last cause. It is enough if a defendant's product was a substantial factor in bringing about injury to the plaintiff, even though many or a large number of other products or other conditions also contributed to the injury. There may be many causes of an injury and each maybe a substantial cause. The question is whether a reasonable person would regard defendant's product as a cause of injury. Skinner v. Stone, Raskin & Israel, 724 F.2d 264 (2d Cir. 1983); Texasgulf v. Colt Industries, 615 F. Sup. 648 (S.D.N.Y. 1984).

If you find from the evidence that use of the engine brake on a wet roadway surface or failure to adequately warn that the tractor could become uncontrollable during foreseeable wet or slippery conditions, were defects which made the tractor unreasonably dangerous and that the plaintiffs' decedent, Thor Svege, Sr., died or plaintiffs, Thor Svege, Jr. and Briana Svege were injured because of this defect, then the plaintiffs are entitled to a recovery of money damages.

**3.    THE DEFECT CAUSED THE INJURY OR INJURIES FOR WHICH COMPENSATION IS SOUGHT.**

The plaintiffs must establish causation, that is, that the product caused the injuries or deaths. The connection between the crash and the injuries or deaths are obvious, and if you find that the tractor was defective, the requirements of causation would be satisfied.

**4.    THE DEFECT EXISTED AT THE TIME OF THE SALE.**

The evidence is that there were no changes to the tractor after its initial delivery which affected the engine brake or its use.  Therefore, this element is established if you find that the defect existed in the tractor.

**5.    THE PRODUCT WAS EXPECTED TO AND DID REACH THE CONSUMER WITHOUT SUBSTANTIAL CHANGE IN CONDITION.**

The final requirement as set forth above is that the product was expected to and did reach the consumer without substantial change in condition.  Again, since there was no change to the tractor relating to the tractor or the engine brake after its delivery, this issue is established if you find that the tractor was defective.

**C.    NEGLIGENCE.**

In addition to the strict liability in tort and failure to warn claims, the plaintiff claim damages for negligence.  Negligence is the failure to use reasonable care.  Reasonable care is that degree of care that a reasonably careful person would use under like circumstances. Negligence may consist in either doing something that a reasonably careful person would not do under like circumstances, or in failing to do something that a reasonably careful person would do under like circumstances.

The plaintiffs claim that the defendants Freightliner and DDC were negligent in equipping the tractor with an engine brake that was known to cause loss of vehicle control when enabled on a wet and slippery roadway.

Furthermore, plaintiffs complain that Freightliner, despite using engine brakes since 1976, never conducted testing of the engine brakes.

There is evidence in the form of Freightliner's sworn response to an interrogatory that "there has been no testing performed on the engine brake to its knowledge."

Defendants Freightliner and DDC were under a duty to make such tests and inspections as were reasonably necessary to secure the production of a safe product. The exact nature of the tests and inspections depends upon the seriousness of the harm that might occur and the number of people who were potentially at risk. Where a serious risk of harm is present, or a large number of people might be endangered, extensive and probing tests, experiments and efforts are necessary. Defendants are charged with the knowledge and information that would have been revealed had the defendants conducted such tests and experiments. Lindsay v. Ortho Pharmaceutical, 637 F.2d 87 (2d Or. 1980); Borel v. Fibreboard Paper Products Corp., supra, 493 F.2d at 1089-90 (5th Cir. 1969); International Harvester Co. v. Sharoff, 202 F.2d 52, 54 (10th Cir. 1953).

The law imposes upon manufacturers such as defendants the duty to make such tests and inspections as are reasonably necessary to secure the production and sale of a safe product.

A breach of this duty constitutes negligence.

Lindsay v. Ortho Pharmaceutical, 637 F.2nd 87 (2nd Cir. 1980); Schenck v. Pelkey, 176 Conn. 245, 405 A. 2nd 665 (1978); Borel v. Fibreboard Paper Products Corp., supra, 493 F.2d at 1089-90 (5th Cir. 1969); International Harvester Co. v. Sharoff, 202 F.2d 52, 54 (10th Cir. 1953).

Plaintiffs further contend that the defendants were negligent in failing to adequately warn and instruct that use of the engine brake on a wet and slippery roadway could lead to loss of directional control which could be, especially on a curve, irreversible.

Finally, plaintiffs claim that Freightliner was negligent for failure to manufacture a tractor that was reasonably fit for its intended purpose.

In order for the plaintiffs to recover under the negligence issue, they must prove by a preponderance of the evidence that the defendants owed a duty of reasonable care in its design and manufacture of the tractor and engine brake, that the defendants negligently breached its duty by failing to test the engine brake and by failing to include a service brake activation of the engine brake option, which was available and cost effective, for use limited to wet slippery road conditions; in failing to adequately warn that the use of the engine brake in wet and slippery conditions could result in loss of directional control when it knew or should have known that drivers were operating their tractors in accordance with the accepted practice of using engine brakes in wet and slippery road conditions as recommended by Jacobs Professional Driver Techniques Manual supplied by Freightliner with its tractors, and Freightliner was negligent for failure to manufacture a tractor reasonably fit for the purpose it was going to be used. Also, that the negligence of the defendant was a proximate cause of the injuries or deaths of the plaintiffs or plaintiffs' decedents.

Negligence or a defect in a product may be legal cause of loss, injury or damage, even though it operates in combination with the act of another if such other cause occurs at the same time as the negligence, or at the same time the defect has its effect, and if the negligence or defect contributes substantially to producing such loss, injury or damage.

### D.    BREACH OF IMPLIED WARRANTY.

In addition to strict liability in tort and negligence claims, the plaintiffs claim damages for breach of an implied warranty. Specifically, the plaintiffs claim that the defendants impliedly warranted that the engine brake equipped tractor was fit for its ordinary purpose and safe for use in a normal manner. The plaintiffs claim that Freightliner and the other product sellers breached

this implied warranty because the tractor was not fit for its ordinary purpose or safe for its use in a normal manner when its engine brake was being used on a wet and slippery roadway.

In order for the plaintiffs to recover under the breach of implied warranty theory, they must prove, by a preponderance of the evidence, six elements.  Those elements are:

    1)    That a warranty exits;

    2)    That there is a merchant;

    3)    That there is a sale;

    4)    That the goods are "merchantable";

    5)    That there are damages or an injury;

    6)    That there is causation.

1.    **<u>Warranty</u>**.

The plaintiffs must prove that a warranty exists to establish cause of action under this breach of warranty claim.  <u>Chamberlain v. Bob Matick Chevrolet, Inc.</u>, 4 Conn. Cir. 685, 239 A.2d 42 (1967).  The fact that the tractor is held out for purchase by the public, as in this case, is a representation or warranty that it is reasonably fit for a purpose.  Kimble & Lesher, *Products Liability*, 26 (1979).  Under the implied warranty of merchantability, the seller stands behind the quality and fitness of his product, and he will be responsible for damages that occur if the product fails to measure up to the qualities that it impliedly is represented to posses.  *Id*., at 22.

An implied warranty does not arise out of any agreement between the parties.  The implied warranty is independent of the parties' intentions, and is created by law.  The foundation of the implied warranty is in the public policy of promoting fair dealings between sellers and buyers.  63 Am. Jur. 2d (1984).

In this case, the fact that the tractor was held out for purchase by the public was a representation that it was reasonably fit for its purpose, and was safe to use.  This implied

warranty is one created by law to protect the buyer and the public.  Independent of any intentions of the parties.

2.      **A Merchant.**

In addition to establishing a warranty, the plaintiffs must establish that the defendants were merchants.  "Merchant" means a person who deals in goods of the kind, or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practice or goods involved in that transaction...*Conn. Gen. Stat.* §42a-l-104.  In this case, the defendant has admitted that it was engaged in the business of manufacturing and selling tractors.  Thus, you may conclude that the defendant was a merchant, and that the plaintiffs have established this aspect of their claim under breach of implied warranty.

3.      **A Sale.**

In order to establish a breach of an implied warranty, the plaintiffs must establish that there was a sale of the tractor.  It is uncontradicted in this case that a sale of the subject tractor occurred, therefore, this element is established.

4.      **Merchantability.**

Another element the plaintiffs must establish to prevail under the theory of breach of implied warranty is merchantability.  Merchantable means that the goods are "fit for the ordinary purposes" for which the goods are purchased.  Alee, *Products Liability*, §5.01 (1984).  Fitness for the ordinary purpose is a broader concept than just doing a single job; it contains ideas of doing that job safely.  *Id.*

In this case, you must determine whether the use of the engine brake on a wet and slippery roadway, conditions known to cause loss of vehicle control, further enhanced when used on a curve, or the lack of adequate warnings and instructions regarding such uses is safe for its

intended purposes. You are not called upon to evaluate the merchantability of all tractors sold by the defendants, rather you must consider the specific tractor involved in this case. If you find that the tractor was not merchantable, that is, not safe for its intended purpose, you must find that the defendant breached its implied warranty of merchantability.

     5.      **<u>Death, Injuries and Damages</u>.**

In addition, the plaintiffs must prove that Thor Svege, Sr. died and that his children, Thor, Jr. and Briana, were injured or damaged to satisfy the requirements of an implied warranty claim. In the case at bar, there is no doubt that plaintiffs' Decedent died and that the infant plaintiffs were injured or damaged as a result of this incident. Therefore, this element is satisfied.

     6.      **<u>Causation</u>.**

Finally, the plaintiffs must prove causation, that is, that the product caused the deaths of plaintiffs' Decedent or injuries to the plaintiffs. Again, the connection between the incident and the injuries is obvious, and if you find that the loss of control of the tractor due to use of the engine brake or lack of warning or was not safe for use of an engine brake on wet and slippery road surfaces, would be satisfied.

     E.      **<u>CONCLUSION</u>.**

In sum, the plaintiffs have presented three legal theories of liability: strict liability in tort, negligence, and implied warranty. Under the strict liability in tort, there are three factual allegations of liability." The plaintiffs will have sustained their burden of proof, under strict liability in tort if they have proven either that the tractor was unreasonably dangerous when the engine brake was used on a wet and slippery roadway, conditions known to cause loss of control, or that there was a failure by Freightliner to adequately warn of the hazards involved with engine brake use on a wet and slippery roadway or that the tractor was not reasonably fit for its intended

purpose because it could not be driven safely on wet and slippery surfaces with the engine brake on.

The plaintiffs will have sustained their burden of proof under negligence if they prove that the defendant failed to use reasonable care in its design, manufacture and sale of the tractor. The plaintiffs will have sustained their burden of proof under breach of implied warranty, if they have proven that the tractor was not reasonably fit for its intended purpose because it did not do the job safely. Thus there are four factual scenarios which if proven would support the plaintiffs' verdict: (1) that the product is unreasonably dangerous; () that the defendant failed to warn adequately; (3) that the defendant failed to use reasonable care; or (4) that the defendant breached its implied warranty. The plaintiffs do not need to prove all of four theories in order to sustain their burden. They only need to prove one.

If you find that the plaintiffs have not met their burden of proof on any of these scenarios, then you would return a verdict for the defendant.

## II. <u>**DEFENDANTS' BURDEN ON SPECIAL DEFENSES**</u>.

The defendants have raised certain special defenses in this case. In considering thee defenses, you should consider that the defendant has the burden of proving each element of these defenses by the preponderance of the evidence.

## III. <u>**DEFENSES**</u>.

One is that defendants, Detroit Diesel and Freightliner claim that the ABS monitoring was on and that the tractor ABS computer or ECU was capable of independently, disengaging the engine brake upon sensing a lock up condition or loss of traction in the drive wheel s of the tractor, associated with engine brake use on wet roads, which did not require the application of the service brake by the driver.

The defendants also claim that such an independent disengagement of the engine brake would have prevented loss of control due to engine brake induced lock-up or loss of traction.

The plaintiffs deny that such an independent capacity exists, and that no published literature exists anywhere that supports defendants' claim, not even their own literature, and that for any such ability to exist, the engine controller would have to be programmed to interpret and react to ABS monitoring of engine brakes induced deceleration of the wheel, which is not the case.

Further, plaintiffs deny that such an independent disengagement of the engine brake could prevent loss of control, and that deactivation of the engine brake without service brake application only reduces engine braking, but does not suspend it as an ABS release mode would. The reduction in braking will not allow the wheels to roll free unless the service brake activates ABS control of wheels.

Defendants also claim that the tractor could only lose traction if the co-efficient of friction of the roadway is on the order of ice.

BURDEN OF PROOF, GENERALLY

The issues in this case simply stated are these:

1.    Was the Jake Brake on?

2.    Was there a Jack Brake induced loss of control under the circumstances of this accident?

It is the plaintiffs who have the burden of proof on those issues which they must establish by a preponderance of the credible evidence.

To establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not true.

If, after considering all the evidence and testimony on a given issue, you find that both sides of the issue are equally probable, then the plaintiffs have failed to sustain their burden and you must decide that issue against the plaintiffs.

However, the plaintiff need prove no more than a preponderance. As I indicated, a preponderance of the evidence means the greater weight of the evidence. It refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents.

In determining whether an element of a claim has been proved by a preponderance of the evidence, you may consider the relevant testimony of all witnesses, regardless of who may have called them; and all the exhibits received in evidence, regardless of who may have produced them or offered them.

So long as you find that the scales tip, however slightly, in favor of the plaintiff, then that element will have been proven by a preponderance of the evidence.

Likewise, the defendants bear the burden of proof on its special defenses. They must prove the elements of such defense by a preponderance of the evidence.

Some of you may have heard of proof beyond a reasonable doubt. That is the proper standard in a criminal trial. That requirement or standard does not apply to a civil case such as this one and you should not consider it in this case.

Throughout these instructions to you, I will use the word "prove" from time to time with reference to the burden of proof. I will also speak of your "finding" various facts as to the elements of the claims made, or special defenses asserted, in this case. You are to understand my use of the word "prove" to mean "prove by a preponderance of the evidence," even if I don't always repeat that long phrase.

Similarly, when I say that you must "find" a fact in order to return a verdict in favor of the plaintiffs or defendant, you must find that fact to have been proved by a preponderance of the evidence, even if I simply use the word "prove."

Our rules for assessing damages in death cases give no precise mathematical formula for the jury to apply. The assessment of damages in a wrongful death action must, of necessity, represent a crude monetary forecast of how the decedents' lives would have evolved. No one life is like any other, and damages for the destruction of one's life furnish no fixed standard for any others. The jury is to take into consideration all of the evidence which is offered with reference to the decedents in attempting to value the destruction of their lives. This evidence relates to their health, their personalities, their character and opportunities to live full and rich lives. You are to bear in mind what kind of a person Thor Svege, Sr. was, how he reacted to life and what kind of life he probably would have lived.

See Katsekos v. Nolan, 170 Conn. 637, 658 (1976); Floyd v. Fruit Industries, 144 Conn. 659 (1957).

**B.    LIFE EXPECTANCY.**

In assessing damages for the wrongful death of Thor Svege, Sr., you should consider his life expectancy at the time of his death. In this regard, plaintiffs introduced evidence that Thor Svege, Sr. was 32.84 years old when he died. According to the life expectancy statistics compiled by the United States Department of Health and Human Services, Vital Statistics, and introduced into evidence, a 32 year old white male had a life expectancy of 43.46 years. Of course, Thor Svege, Sr. might have lived longer or he might not have lived so long.

**C.    DAMAGES.**

While a suit for damages for wrongful death must be brought by the Administrator, which in this case would be his children, T.J. and Briana, and any recovery passes into the decedents' estates for distribution, still the damages for wrongful death are assessed on the basis of the loss to the decedent had he lived, not on the basis of the losses to the estates. There are two broad categories of damages: economic and non-economic.

1.    **Economic Damages**.

Economic damages are funeral expenses, and loss of income, after taxes and the decedent's personal living expenses, which resulted from the death of the decedent and destruction of his capacity to earn wages, for the time period beginning with the decedent's death on September 16, 1999, and continuing through the date you render this verdict. In this regard, the plaintiffs offered evidence of a funeral expenses and evidence regarding each of the decedents' earnings, including Income Tax Returns. You may consider this evidence in awarding damages for past economic damages. As the trier of fact, you should determine the period of time for which the decedent would have continued to earn income, and you may take into account not only his age, but also his health, and the extent of his interest in or commitment to his work as a carpenter and work in home improvement and construction.

Plaintiffs have introduced evidence that Thor Svege, Sr. would have had a work-life to age 65 and had he lived he would have worked another 32.16 years.

There is in evidence the opinion of plaintiffs' economist, Dr. Gary Crakes, that the total net discounted economic loss of Thor Svege, Sr. would be $863,234 based upon mean annual earnings of $37,109 from 1994 to 1998 or $951,788 based upon annualized earnings of $45,417 in 1999.

2.    **Non-Economic Damages**.

Non-economic damages include compensation for the destruction of Thor Svege's capacity to carry on and enjoy life's activities in a way he would have done had he not been injured and died. The plaintiffs claim that the death of Thor Svege deprived him of the opportunity to lead a normal life, with family relationships, recreational activities and pursuits. Under Connecticut law, damages for the destruction of the plaintiff Decedents' abilities to enjoy and carry on life's activities, in addition to the economic damages. The jury is to take into consideration all of the evidence which is offered with reference to the Decedent and plaintiffs, Thor Svege, Jr. and Briana Svege, in attempting to value the destruction of the life of the Decedent and the value of the loss of the injured plaintiffs to enjoy life.

In summation, these are the things that may be weighed by you in determining what value to place on the destruction of the plaintiffs' Decedent to carry on all of life's activities. Katsekos v. Nolan, 170 Conn., at 65.

A.    Post-mortem damages with regard to funeral expenses for the Decedent;

B.    Damages for the death itself to Thor Svege, Sr.;

C.    Damages for the destruction of Thor Svege, Sr.'s capacity to carry out and enjoy all of life's activities; and

D.    Damages for any conscious pain and suffering that Thor Svege, Sr. underwent prior to his injuries and death, and if you should so find, any mental pain and suffering which he experienced when he realized his life and that of his family was in danger.

Economic damages also encompasses compensation for the loss of life from the date of your verdict forward into the future. If you find that Thor Svege, Sr. would have lived beyond that present date, then you should award a sum of money to fairly compensate for the loss of enjoyment of life in the future.

See <u>Katsekos v. Nolan</u>, 170 Conn. 637, 658 (1976); <u>Floyd v. Fruit Industries</u>, 144 Conn. 659 (1957).

      3.      **Damages for Thor Svege, Jr. and Briana Svege**.

The plaintiffs, Thor Svege, Jr. and Briana Svege, are seeking non-economic damages, past and future. I will now explain this type of damages to you.

      A.      **Non-Economic Damages**.

Thor Svege, Jr. and Briana Svege claim compensation for the injuries they received, which have been described in the case. They also claim compensation for past pain and suffering. Finally, they claim compensation because of their past reduction of their ability to pursue and enjoy life's activities.

Now I am going to give you some general instructions on how to measure these various items of past non-economic damages. I want to preface my remarks with the observation that all of the items of past non-economic damages claimed by the plaintiffs in their complaint, which I have just listed for you, are proper elements of damages under our laws. More specifically, if the plaintiffs prove all the necessary elements of their case, they are entitled to damages for the injuries themselves; past emotional distress; past pain and suffering; and a past reduction in their ability to pursue and enjoy life's activities.

With regard to emotional distress, plaintiffs Thor, Jr. and Briana, claim that they sustained bystander emotional distress during their presence in the vehicle driven by their father at the time and following the accident while they were entrapped in the vehicle.

Connecticut recognizes the right to recover for bystander emotional distress if four conditions are met.

First, the bystander must be closely related to the injury victim.  Relationships between family members satisfy this condition, which was the case here.

Second, the emotional injury suffered by the bystander must arise from "the contemporaneous sensory perception of the event or conduct that causes the injury;...or by viewing the victim immediately after the injury causing event if no material change has occurred with respect to the victim's location and condition."

Third, the injury to the victim must be substantial, resulting in either death or serious physical injury.  Finally, the bystander must have suffered a "serious emotional injury – that is 'a reaction beyond that which would be anticipated in a disinterested witness and which is not an abnormal response to the circumstance.'"  This last requirement does not require a physical manifestation in order to be compensable, but must be serious enough that a reasonable person "normally constituted would be unable to adequately cope with the mental stress engendered by the circumstances."  Clohessy v. Badder, 237 Conn. 31, 675 A2nd 852 (1996).

In addition to bystander emotional distress, the two minor plaintiffs are claiming emotional distress resulting from the loss of their parents.

[The rule is that the plaintiffs are to get fair and just compensation for the injuries they have suffered.  It is for you, in the exercise of your best judgment, to say what is fair and just compensation to them.  There is no fixed rule which you can apply.  You have to apply sound common sense in reaching the amount of your verdict.] Wright and Daly, *Connecticut Jury Instructions*, 3d ed., Vol., 1, §225a (1981).

Mental suffering is as proper an element of damages as f physical suffering when it is accompanied by physical injury and when it is a natural and proximate consequence of the physical injury.  Wright and Daly, *Connecticut Jury Instructions*, 3d ed. Vol. 1 §240b (1981).

[You should evaluate a claim for mental suffering such as the one made by the plaintiffs in this case in the same way that you would evaluate a claim for physical suffering. "A plaintiff need only establish a claim for mental or emotional distress by a fair preponderance of the evidence...] Buckley v. Lovallo, 2 Conn. App. 579, 589 (1984).

B.     **Future Non-Economic Damages**.

Damages may include future as well as past suffering. Plaintiffs claim compensation for future pain and suffering and for the reduction of their abilities to pursue and enjoy life's activities. As for the future, you must, as best you can in your honest judgment, compensate the plaintiffs for such results as are reasonably probable. Insofar as you find that it is reasonably probable in the future that the plaintiffs will undergo suffering of any kind, that they will suffer emotional distress, that they will be incapacitated, that they will suffer physical impairment, or that their activities will be restricted, you will attempt to compensate them for those things. Wright and Daly, *Connecticut Jury Instructions*, 3d ed., Vol. 1, §226b f (1981).

In this regard, the plaintiffs' claim that they will suffer from the after-effects of their injuries for the rest of their lives. In connection with these claims you should consider the probable duration of each's life. Evidence was offered by plaintiffs to show that according to Life Table for white males, U.S., 2001, Thor Svege, Jr. is now 8.85 years old and has a life expectancy of 66.75 years as shown by the mortality table which is in evidence as plaintiffs' Exhibit _. The plaintiffs have also offered evidence to show according to Life table for white females, U.S., 2001, that Briana Svege is now 6.68 years old and has a life expectancy of 74.02 years. You will also consider the particular condition of strength, health and physical stamina of these particular plaintiffs as bearing upon the probable duration of their lives, whether longer or

shorter than the average person for ones of their ages, as given in the mortality tables. Wright and Daly, Connecticut Jury Instructions, 3d ed. Vol. 1, §226i (1981).

Of course, nothing absolute can be known. The best that can be done is to make a fair estimate taking into account all of the material factors of common observation and experience in connection with your allowance for these permanent injuries, if you find such permanent injuries, which might be expected to reduce the probable duration of life or to impair the physical or mental conditions of the plaintiffs. Wright and Daly. *Connecticut Jury Instructions*, 3d ed., Vol. 1, §226i (1981).

In sum, "[d]amages may include future as well as past suffering and are measured by the extent of the loss incurred, as well as money can measure it. Damages are incapable of precise measurement. For that reason, considerable latitude is allowed by a jury by our courts in evaluating damages." Wright and Daly. *Connecticut Jury Instructions*, 3d ed., Vol. 1, §231c (1981).

## V.     <u>PUNITIVE OR EXEMPLARY DAMAGES</u>.

In addition to the damages of which I have been speaking and which are designed to the plaintiffs for their injuries and losses, the plaintiffs claim additional damages which we call "exemplary" or "punitive damages." In order to recover exemplary or punitive damages, the plaintiffs must prove more than an invasion of their rights. They must prove that the wrong done was willful, wanton, or malicious, and that the defendant was acting in reckless disregard of the rights and safety of others. *Markey v. Sanangelo*, 195 Conn. 76, 78 (1985); *Bordonaro v. Senk*, 109 Conn. 428, 431 (19290; *Dubay v. Irish*, 207 Conn. 518 (1988). Even though a defendant has no actual intention to cause harm, it may nevertheless be liable for punitive damages if it acts with a reckless indifference to the rights of others.

Devitt v. Mamulik, 176 Conn. 657, 663 (1979); United Aircraft Corp. v. Intl Assn. of Machinists, 161 Conn. 79, 106 (1971); Lentine v. McAvoy, 105 Conn.528 (1927); Collens v. New Canaan Water Co., 155 Conn. 477, 489-90 (1967); Wright and Daly, Connecticut Jury Instructions, Vol. 1, 3d ed., §256 at 460 (1981); Wright & FitzGerald, Connecticut Law of Torts, §174, 2d ed. (1982).

The plaintiffs contend that defendants, Freightliner and DDC knew that use of the Jake Brake on roadways that were wet, slippery, and icy was an accepted practice of drivers in the trucking industry, and the engine brake would be so used.

Freightliner, in fact, included with the subject tractor, when it was sold, along with its own Driver's Manual, which stated that the engine brake should not be used on slippery roadways since it could cause loss of vehicle control, the Jacobs Brake Vehicle Systems Professional Driver Techniques and Owner's Manual, considered authoritative in the industry, which gave "Driving Tips" on how to use the Jake Brake on slippery pavements. It advised that a driver experienced in the use of engine brake in dry weather, could use the engine brake on wet or icy pavement, but to turn off the engine brake switch should loss of traction, wheel lock, or fishtailing occur.

DDC had no warnings whatsoever concerning the engine brake until 2002, when its Engine Operator Guide cautioned not to use the engine brake on wet or slippery pavement unless the tractor was equipped with ABS, and if the drive wheels began to lock or there was a fishtail motion, to deactivate the engine brake.

Defendants' driving expert Norris Hoover has testified that he uses the engine brake in wet weather and professional drivers can be expected to do so.

What the defendants failed to communicate, and, in fact, have concealed, is the full seriousness of the problem.  Namely, that when an engine brake is enabled on wet pavement on a curve an engine-brake-induced jackknife can come about so suddenly, that with the typical driver reaction time, drivers like the driver of this tractor, with 16 years experience, cannot recognize the critical condition they are in before the jackknife is at the point of no return and loss of control is irreversible.

Plaintiffs claim that this practice of using engine brakes in bad weather conditions when traction is unpredictable and attempting to turn off the system to prevent a loss of control if "fishtailing" is experienced, is unsafe in that the probability of loss of control is very high.  This recommended practice is reckless and in complete disregard for the safety of the motoring public.

If the plaintiffs have proven to you that the conduct of the Defendant had any one of these characteristics, then they are entitled to have you add to the damages given in compensation for their losses and injuries an additional sum as exemplary or punitive damages.

Respectfully submitted,

LEO GILBERG, ESQ.,
Plaintiffs:  Alice G. Svege, Administratrix of
The Estate of Thor Svege, Sr. and Alice G.
Svege, as guardian of the Estate of Minor
Children, Thor Svege, Jr. and Briana Svege


By:
_____
LEO GILBERG, ESQ.,
305 Broadway
New York, New York  10007
212-822-1440
Federal Bar No. CT22824