UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ALICE G. SVEGE, ADMINISTRATRIX, ET AL | : | CIVIL NO. 3:01 CV 01771 (JBA) |
| | : | |
| Plaintiffs, | : | |
| VS. | : | |
| | : | |
| MERCEDES-BENZ CREDIT CORPORATION, | : | |
| ET AL | : | |
| | : | |
| Defendants. | : | JULY 20, 2004 |

**JOINT TRIAL MEMORANDUM EXHIBIT D**

**DEFENDANTS' PROPOSED JURY INSTRUCTIONS**

JURY'S DUTY TO BE IMPARTIAL TO ALL PARTIES

In deciding the facts of this case, you must not be swayed or influenced by any sympathy or prejudice for or against any of the parties. You must carefully and impartially consider all the evidence in the case, follow the law given to you by the court and reach a just verdict regardless of the consequences.

In this action, the Plaintiffs have made claims against Freightliner Corporation, Detroit Diesel Corporation, and Mercedes-Benz Credit Corporation, which are corporations. You must not allow the fact that defendants are corporations to influence your decision here. Under no circumstances may you allow sympathy and compassion, or the fact that the defendants are corporations, to affect your consideration of the law or the evidence. You must decide this case on the evidence, and on the law as I give it to you.

Rizzo Pool Co. v. Del Grosso, 232 Conn. 666, 689 n.35, 657 A.2d 1087 (1995);

Marko v. Stop & Shop, Inc., 169 Conn. 550, 558, 364 A.2d 217 (1975);

Gigliotti v. United Illuminating Co., 151 Conn. 114, 120-21, 193 A.2d 718 (1963).

SPECULATION IS NOT PERMITTED

Your verdict must stand upon evidence and cannot stand upon mere conjecture.  The mere possibility that a thing may be true will not properly support the conclusion that it is true. Your findings in this case must be based upon proven facts and cannot be based upon mere guess, conjecture, surmise possibility, or speculation.

If, for example, you find that the preponderance of the evidence shows that it is merely possible that the engine brake of the truck was a proximate cause of this accident, you must find that the plaintiffs have not proven their case.  Only if you find that the plaintiffs have proven by a preponderance of the evidence that the engine brake caused the accident may you return a verdict for the plaintiffs.


Rizzo Pool Co. v. Del Grosso, 232 Conn. 666, 689 n.35, 657 A.2d 1087 (1995)

ADMISSIONS BY PARTIES

Out-of-court statements made by parties, which are not consistent with their claims at trial, may be used against them as an admission of the facts stated.  It is for you to determine what weight is to be given to any alleged admission if you find that it has been made.  In that connection, you should consider the circumstances under which the statements were given as bearing upon the weight it is to be accorded.

Gosselin v. Perry, 166 Conn. 152, 161, 348 A.2d 623 (1974);

Worden v. Francis, 153 Conn. 578, 581-82, 219 A.29 442 (1966).

TESTIMONY OF EXPERT WITNESS

During the trial you heard the testimony of several persons who were described as expert witnesses. Witnesses who, by education and experience, have become expert in some art, science, profession or calling, may state their opinions as to relevant and material matters within their areas of expertise.  They may also state the reasons underlying their opinions.

"Merely because an expert witness has expressed an opinion does not mean, however, that you must accept his or her opinion.  Now, in weighing and considering the testimony of these so-called experts, in determining the extent to which you will attach weight to the opinions which they gave, you are to apply to them the same rules that you apply to any witness, insofar as it relates to the interest, bias or prejudice, appearance and demeanor upon the witness stand, frankness and candor and so forth.  You are to determine whether these witnesses are possessed of peculiar and exclusive knowledge and experienced in a specialized field.  The value which of course is to be attached to their testimony, and the weight to be accorded it, will of course depend upon many other things: upon the actual skill possessed by the so-called expert, by the experience he has had, and the training he has had."

It is up to you to decide whether each expert witness's background, training and experience is sufficient to justify the opinion or opinions offered.  You  must also decide whether each expert's opinions were based on sound reasons, judgment, and information.

You should consider each opinion of each expert and give it such weight, if any, as you may think it deserves.  You are not to determine the weight of the evidence by the number of expert witnesses called on either side, but by the quality and professional attainment of the witness.

If you should conclude that the reasons given in support of the opinion are not sound or not believable, you may disregard it. If you feel that it is outweighed by other evidence, you may disregard it. Finally, if an expert's opinion is based on factual assumptions that you do not find proven, you must disregard that opinion.

II Douglass B. Wright & William L. Ankerman, Connecticut Jury Instructions §§ 325 (a) (4th ed. 1993);

Maiz v. Virani, 253 F.3d 641, 667 (11th Cir. 2001);

Van Detti v. Parsons Bros. Inc., 146 Conn. 282, 286, 150 A.2d 200 (1959);

Simard v. Comm'r of Motor Vehicles, 62 Conn. App. 690, 696, 772 A.2d 1137 (2001);

Common Fund For Non-Profit Orgs. v. KPMG Peat Marwick, LLP, No. 96 Civ. 02505 (GBD), 2003 U.S. Dist. LEXIS 3656 (S.D.N.Y. March 12, 2003);

Hurst v. F.W. Woolworth Co., No. 95 CIV. 6584 (CSH), 1997 U.S. Dist. LEXIS 17233 *6 (S.D.N.Y. Nov. 3, 1997);

Devito v. United Air Lines, Inc., 98 F. Supp. 88 (E.D.N.Y. 1951).

STRICT LIABILITY (Sec. 52-572m)

In this case, plaintiffs claim that the accident was caused by the truck's engine brake being on. The plaintiffs have brought this claim pursuant to a Connecticut law known as "the Connecticut Products Liability Act." Under that law, one who manufactures or sells a product that is defective and unreasonably dangerous is subject to liability for harms caused by that unreasonably dangerous condition. The manufacturer or seller, however, is not an insurer, and is not required to guarantee that no one will be harmed by use of the product. The law does not require that a product be perfect or accident-proof, or incapable of causing injury. Nor is a product seller required to incorporate the greatest possible safety features in its product. Rather, the defendants are required to use only such means as are necessary to make the product reasonably safe for its intended use.

The defendants can be liable for damages to the plaintiffs only if the plaintiffs prove each of the following elements by a fair preponderance of the evidence:

1.     the defendants were engaged in the business of selling the truck;

2.     the truck was in a defective condition that made it unreasonably dangerous;

3.     the defective condition of the truck was a proximate cause of the injuries for which Plaintiffs seek compensation;

4.     the defect existed at the time of the sale; and

5.     the product was expected to and did reach the consumer without substantial change in condition.


Vitanza v. Upjohn Co., 257 Conn. 365, 377, 778 A.2d 829 (2001) (citing Potter v. Chicago Pneumatic Tool Co.);

<u>Giglio v. Conn. Light & Power Co.</u>, 180 Conn. 230, 234, 429 A.2d 486 (1980);

<u>Potter v. Chicago Pneumatic Tool Co.</u>, 241 Conn. 199, 210, 694 A.2d 1319, 1328 (1997);

II Douglass B. Wright & William L. Ankerman, <u>Connecticut Jury Instructions</u> §§ 511 (dd), (ee)

(4th ed. 1993);

Conn. Gen. Stat. §§ 52-572m to 52-572q.

STRICT PRODUCTS LIABILITY:  UNREASONABLY DANGEROUS DEFECT --
GENERALLY

A product is in a defective condition unreasonably dangerous to the user when it has the

potential for causing harm greater than that which the ordinary user who purchases the product

would contemplate.  A product is not defective or unreasonably dangerous merely because it is

possible to be injured by using it.  Rather the test you should apply is that a product is in a

defective condition unreasonably dangerous to the consumer if it has a potential for causing

injury that is greater than or different from that which would be contemplated by the ordinary

consumer who used it.

Devitt & Blackmar, Instructions § 82.03; Charge to the Jury delivered by the Honorable

Jose A. Cabranes in Paul Moshier v. Spider Staging Sales Co., Civil No. H-78-294 (JAC) (D.

Conn. Feb. 29, 1984).

PRODUCT UNREASONABLY DANGEROUS AS DESIGNED

In this case the plaintiffs have alleged that the truck was unreasonably dangerous as designed. The mere fact that under certain circumstances an accident may occur in connection with the use of the truck does not, of itself, make the product unreasonably dangerous. You must consider whether the risk of the product outweighed the utility of the product.

A product is not dangerously defective when it is safe for normal use. The defendants are not required to guarantee that the truck sold is incapable of doing harm. Therefore, the mere happening of the accident does not create legal responsibility on the part of the defendants. The law does not require the product seller to sell a truck that is incident-free or foolproof. The defendants' duty is to manufacture and sell a product that is reasonably safe.


O'Malley, Grenig & Lee, 3 Federal Jury Practice and Instructions (5th ed. 2000) § 122.23;

Potter v. Chicago Pneumatic Tool Co., 241 Conn. 199, 221 n.15, 223 n.17, 694 A.2d 1319 (1997);

Savage v. Scripto-Tokai Corp., 266 F. Supp. 2d 344, 350-51 (D. Conn. 2003);

Restatement (Second) Torts § 402A (1965).

PRODUCT CONSIDERED AS A WHOLE

In determining whether a truck was unreasonably dangerous and defective, you should consider whether the vehicle as a whole was reasonably designed. You should not consider only a single component or system.

Daly v. General Motors Corp., 20 Cal. 3d 725, 575 P.2d 1162, 144 Cal. Rptr. 380 (1978).

MODIFIED CONSUMER EXPECTATION STANDARD (RISK / UTILITY)

There is some risk of harm associated with the use of any product.  A product is unreasonably dangerous only if the risk of harm outweighs the utility or benefits of the product's design.  In determining whether the plaintiffs have met their burden of establishing that the product was defective and unreasonably dangerous as designed, you must weigh the risks and utility of this particular product's design by considering the following factors:  (1) the usefulness and desirability of the product itself; (2) the likelihood that the product will cause injury and the probable seriousness of injury; (3) the feasibility of a reasonable alternative design at the time the product was manufactured; (4) the financial cost of a reasonable alternative design that does not have risks associated with the design here; (5) the manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility; (6) the user's ability to avoid danger by the exercise of care in the use of the product; (7) the user's anticipated awareness of the dangers inherent in the product and their avoidability because of general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instructions, and (8) the "state of the art" relative to the design of the product at the time it was manufactured.

Potter v. Chicago Pneumatic Tool Co., 241 Conn. 199, 221 n.15, 223 n.17, 250, 694 A.2d 1319 (1997);

Armentrout v. FMC Corp., 842 P.2d 175, 183-84 (Colo. 1992).

INDUSTRY STANDARDS

Defendants have presented evidence that this truck was designed and manufactured in accordance with industry standards and practices.  In deciding whether the plaintiffs have proven that this truck is defective or unreasonably dangerous, you may consider what the industry standards or practices were when the truck was designed.  Industry standards are different from the state of the art.  The state of the art is the level of relevant scientific, technological and safety knowledge that existed and was reasonably feasible at the time of design.  Industry standards, on the other hand, are the custom of the industry at the time the product was designed.  You may consider both in determining whether this product was defective or unreasonably dangerous.

Potter v. Chicago Pneumatic Tool Co., 241 Conn. 199, 694 A.2d 1319, 1345-46 (1997);
Wagner v. Clark Equip. Co., 243 Conn. 168, 700 A.2d 38, 51 (Conn. 1997).

<u>FEDERAL SAFETY STANDARDS</u>

Defendants have also presented evidence that this truck complied with federal safety standards. You may weigh this evidence in determining whether this truck was reasonably safe for its intended purpose.


<u>Wagner v. Clark Equip. Co.</u>, 243 Conn. 168, 700 A.2d 38, 50 (Conn. 1997).

EVIDENCE OF ALTERNATIVE DESIGNS

There has been testimony in this case that the design of the product differs from that of other trucks.  However, this fact is not of itself evidence of a defect.  Our law does not require that a truck or any other product conform to the design incorporated in other similar products.  There may be various alternative designs, each of which may perform with reasonable safety.  The defendants is not obliged to design the safest possible product, or one as safe as others make, or a safer product than the one they have designed, so long as the design they have adopted is reasonably safe.  In other words, as product sellers the defendants are not required to use all means to make the truck safe, nor are they required to use the latest or the most modern means.


Burke v. Fancher, 151 Conn. 640, 642, 201 A.2d 461 (1964);

Westinghouse Elec. Corp. v. Nutt, 407 A.2d 606, 611 (D.C. Ct. App. 1979);

Weakley v. Fischbach & Moore, Inc., 515 F.2d 1260, 1267-68 (5th Cir. 1975)(citing W. Prosser, The Law of Torts § 96 at 645 (4th ed. 1971));

Estate of Spinosa, 621 F.2d 1154, 1161-60 (1st Cir. 1980 )(citing W. Prosser, The Law of Torts § 96 at 645 (4th ed. 1971));

Brown v. General Motors Corp., 355 F.2d 814, 820 (4th Cir. 1966).

CAUSATION

Even if you find that the truck was defective and unreasonably dangerous, you may not find for the plaintiffs on that basis alone.  The plaintiffs must also prove to you by a fair preponderance of the evidence that the alleged defect actually caused their injuries.  In order for the plaintiffs to prevail, they must prove that the alleged defect was both the cause in fact and the proximate cause of the alleged injuries.  This causal connection must rest upon more than surmise or conjecture.  In order to find that the plaintiffs have met their burden of proof, you must find that it is more likely than not that the alleged defect was the cause of their injuries, not that it is merely possible that the alleged defect caused their injuries.

The alleged defect was the cause in fact of the injuries complained of if the injuries would not have occurred were it not for that alleged defect.  A finding of cause in fact does not, by itself, mean that the defendant is legally responsible for the plaintiffs' injuries.  You must also determine whether the defendants' conduct was a proximate cause of the injuries.  A proximate cause is a direct cause.  It is an act or failure to act, followed in its natural sequence by a result without the intervention of any other superseding cause.  Where the sequence of events is unbroken by any intervening or superseding cause, an act or failure to act is a proximate cause of the result.  The defendants claim that the driver of this truck, Mr. Wightman, operated the truck in a negligent manner that was unsafe under the circumstances.  The defendants claim that, even if there was a design defect in this truck, which they deny, Mr. Wightman's negligent operating of the truck was an intervening or superseding cause of this accident.  If you find that Mr. Wightman operated the truck in a manner that was unreasonably dangerous under the circumstances, and that his negligence was an intervening or superseding cause of the accident, you must find that the alleged design defect was not a proximate cause of the accident.  Unless

you find that the alleged defect is both the cause in fact and a proximate cause of the injuries complained of, you must find that the defendants are not legally responsible for the plaintiffs' injuries.

Wagner v. Clark Equip. Co., 243 Conn. 168, 179, 700 A.2d 38 (1997);

Haesche v. Kissner, 229 Conn. 213, 218, 640 A.2d 89 (1994);

Sanders v. Officers Club of Conn., Inc., 196 Conn. 341, 349, 493 A.2d 184 (1985);

Bonner v. Winter, 175 Conn. 41, 48, 392 A.2d 436 (1978).

DUTY TO WARN

Plaintiffs claim that the truck was defective because it lacked certain warnings. When a product seller has reason to anticipate that a danger may result from a particular use, it may be required to give a warning. When a danger is known to the product user, however, no warning is necessary. The defendants can not be liable for injuries caused by dangers of which the user is aware, because the alleged failure to warn a user of such a danger can not have proximately caused any injury.

In determining whether a warning is adequate, you must consider the likelihood that the product will cause the harm suffered, whether the product seller can anticipate that the user or operator will be aware of the risk, and the nature of the potential harm.

Every warning can always be made bigger, brighter and more obvious, but that is not the test. The issue is whether the warnings and instructions provided give reasonable notice of the reasonably anticipated hazards.

A product seller has the duty to fairly protect, by warnings or otherwise, against unreasonable risk of injury. The law does not require the product seller to sell a truck that is accident-proof or foolproof. The defendants' duty is to manufacture and sell a product that is reasonably safe. The law recognizes that all risks cannot be prevented, nor can an accident-free truck be designed.

Potter v. Chicago Pneumatic Tool Co., 241 Conn. 199, 223 n.17, 694 A.2d 1319 (1997);

Gajewski v. Pavelo, 36 Conn. App. 601, 616-17, 622, 652 A.2d 509 (1994), appeal granted in part, 232 Conn. 915, 654 A.2d 355 (1995);

Haesche v. Kissner, 229 Conn. 213, 216, 640 A.2d 89 (1994);

Larsen v. General Motors Corp., 391 F.2d 495, 503 (8th Cir. 1968);

General Motors Corp. v. Saenz, 873 S.W.2d 353, 360-61 (Tex. 1993).

## DUTY TO READ AND HEED INSTRUCTIONS AND WARNINGS

Some products are unreasonably dangerous unless proper warnings or instructions are provided with them.  Where a warning is given, and the product is safe for use if the warning is followed, the product is not defective or unreasonably dangerous.  If you find that the truck at issue in this case is not unreasonably dangerous when used according to the instructions and warnings provided, you must find that it is not unreasonably dangerous.  A seller has a right to expect that its instructions will be followed.  The defendants have a right to rely on the warnings they provide to insulate them from having to insure against all injuries arising from the vehicles they sell.


Ferguson v. F.R. Winkler GMBH & Co. KG, 79 F.3d 1221, 1226 (D.C. Cir. 1996);

Erickson v. Monarch Indus., Inc., 216 Neb. 875, 347 N.W.2d 99, 109 (1984);

Edwards v. Sears, Roebuck & Co., 512 F.2d 276, 289 (5th Cir. 1975) citing W. Prosser, Law of Torts § 102, at 668-669 (4th ed. 1971);

Restatement (Second) of Torts, § 402A cmt. j. (1965);

Vitanza v. Upjohn Co., 257 Conn. 365, 778 A.2d 829, 836 (2001)(citing Restatement § 402A cmt. j) .

FAILURE TO WARN – CAUSATION

The plaintiffs must prove not only that there is some inadequacy in the warnings provided by the defendants. They must also prove that the allegedly inadequate warning caused the injury. To meet that burden, the plaintiffs must prove that if an adequate warning had been provided, the injuries would not have occurred. If the plaintiffs' injuries would have occurred even if different and allegedly better warnings were given, plaintiffs have not established the necessary causal connection.

When the user – in this case, the truck driver – is aware of the danger which would have been the subject of that warning, any failure to provide an adequate warning of that danger cannot be the proximate cause of any injury. A product seller cannot be held liable for a failure to warn a user of dangers of which the user was already aware. Therefore, unless you find that the plaintiffs have proven that Scottie Wightman was not aware of the alleged danger associated with using the engine brake, you may not find any defendant liable based on a failure to warn.


Gajewski v. Pavelo, 36 Conn. App. 601, 616-17, 652 A.2d 509 (1994), aff'd, 236 Conn. 27, 670 A.2d 318 (1996);

Conn. Gen. Stat. § 52-572q(c);

Haesche v. Kissner, 229 Conn. 213, 218 (1994);

DeJesus v. Craftsman Mach. Co., 16 Conn. App. 558, 573, 548 A.2d 736 (1988).

EVIDENCE OF HABIT OR ROUTINE

You have heard evidence that the truck driver, Scottie Wightman, was in the habit of turning off the engine brake when he encountered wet weather while driving a tractor trailer.  You may consider this evidence in determining whether he acted in accordance with that habit on the morning of the accident.

Fed. R. Evid. 406.

TRUCK OPERATOR'S DUTY TO KEEP TRUCK UNDER REASONABLE CONTROL

Defendants maintain that Scottie Wightman was responsible for causing the accident by failing to keep his truck under proper and reasonable control, by traveling at an unreasonable speed in light of the weather conditions.

Under the law, an operator of a motor vehicle must have his or her vehicle under reasonable control at all times so that, when reasonable care requires, the vehicle can be slowed, stopped, or turned to avoid a collision.  A vehicle operator has a constant duty to keep a proper lookout, to maintain proper control of the vehicle, and to operate the vehicle at a reasonable speed at all times.  It was therefore Mr. Wightman's duty to reduce the speed of his vehicle, if reasonable control so demanded.  In securing such reasonable control of his automobile, it was his duty to consider the condition of the weather, the condition of the pavement and other reasonably obvious factors that might influence such control.  If you find that Mr. Wightman failed to exercise reasonable control over his vehicle, you may find that his negligence was the sole proximate cause of this accident.

Even if you find that the engine brake was on at the time of the accident and contributed to the initial loss of control, if you find that Mr. Wightman had a reasonable opportunity to regain control of his vehicle and avoid the accident, but that he was unable to do so because he had not kept his vehicle under reasonable control, then you may find that Mr. Wightman's negligence was the sole proximate cause of the accident.

Marcio v. Helm's Express, Inc., 154 Conn. 615, 621, 228 A.2d 128 (1967);

Clough v. Urguhart, 4 Conn. Supp. 302, 304 (1936).

<u>DEFINITION OF "PRODUCT SELLER"</u>

The Plaintiffs have brought this action under the Connecticut Product Liability Act.  The Defendants can only be liable for injuries to the Plaintiffs under that law if they are product sellers.  Mercedes Benz Credit Corporation denies that it is a product seller and claims instead that it only provides financing for the sale of automobiles.  Under the Connecticut Product Liability Act, the term "product seller" means any person or entity, including a manufacturer, wholesaler, distributor or retailer who is engaged in the business of selling such products whether the sale is for resale or for use or consumption. The term "product seller" also includes lessors or bailors of products who are engaged in the business of leasing or bailment of products.

A lessor is one who conveys by a lease the right to use or control property that had been under the lessor's control.  A bailor is one who delivers property to a bailee for a certain purpose under an express or implied contract called a bailment.  In order to be either a bailor or a lessor, a party must have been in control of the property in the first place.

Conn. Gen. Stat. §§ 52-572m;

<u>Black's Law Dictionary</u> (7th ed. 1999);

<u>Hill v. Pizzo</u>, No. CV980579951, 2001 Conn. Super. LEXIS 377 at *9 (Conn. Super LEXIS Feb. 7, 2001) (citing <u>B.A. Ballou and Co., Inc. v. Citytrust</u>, 218 Conn. 749, 753, 591 A.2d 126 (1991));

<u>LaFlamme v. Dallessio</u>, 261 Conn. 247, 802 A.2d 63, 70 (2002).

CALCULATION OF DAMAGES – REQUIRED REDUCTIONS FOR LOST EARNINGS

      If you find that defendants are liable for the death of Thor Svege, Sr., and find further that their actions or inactions caused the loss of future earnings by Thor Svege, Sr., you may award to the plaintiff, Thor Svege, Sr., damages representing those lost future earnings.  In the event that you award damages for lost future earnings, you must subtract probable income taxes and necessary personal living expenses when you calculate the amount of those damages.

Tesler v. Johnson, 23 Conn. App. 536, 542, 583 A.2d 133 (1990).

DAMAGES – EARNING CAPACITY

In measuring damages based upon the destruction of the deceased's earning capacity, it is proper for you to consider the salary or wages he had been earning before the injury which caused his death. These are not conclusive, however, but only evidence of the value of his earning capacity. It is likewise proper for you to consider his general experience as a wage earner and his qualifications for conducting a gainful occupation. Necessarily the damages would be limited to that period of time which you may find would have been the length of life of the deceased had he not been killed. Consequently, you must consider how long you believe the decedent might fairly have expected to live. Experience and statistics show that a man of a certain age may reasonably be expected to live a given number of years. That is an average which statisticians reach from the study of a great many cases; that does not mean that this deceased would actually have lived for the time indicated by the average. He might have died before, and he might have lived longer. The average is only one element for you to consider, however. You must also consider the health and physical condition of the deceased, his strength or his weakness, any physical impairment which has come to him, and all the evidence offered which you find reasonably to indicate his probable length of life. You must take into account all of the natural incidents of life which in the normal process of existence might be expected to affect the deceased's capacity to carry on life's activities. Accident, sickness, disability, old age and the like are common incidents of life. Consequently, you must consider not only the decedent's normal life expectancy but also his expectancy with respect to those other incidents of human existence which affect one's ability to earn and to carry on life's activities. The normal expectancy for the deceased in this case is shown to be years. What his individual expectancy is,

is a question for you to determine upon all of the evidence and application of the rules I have given you.

In measuring the extent of the deceased's loss of earning capacity, you must consider and deduct from his probable net earnings the amount of probable income tax saved.

In measuring that loss, you must also consider and deduct the probable cost of future personal living expenses. By personal living expenses I mean those personal expenses which, under the standard of living followed by Thor Svege, Sr., it would have been reasonably necessary for him to incur in order to keep himself in such a condition of health and well-being that he could maintain his capacity to enjoy life's activities, including the capacity to earn money.

In determining the amount to be awarded for the destruction of Thor Svege, Sr.'s earning capacity, you must make due allowance for the fact that a present payment will be made in lieu of sums which, had he lived, would have been received by him at periodic times in the future. By that I mean, if one of you received $100 today, it would be worth more to you than if you received $10 annually until ten payments were made. That is so because if you had the entire $100 now you would have the use of it and perhaps get interest on the entire amount for the 10-year period, whereas if you accumulated that same total in the annual payments, you would get interest for the whole period only of the first payment and from the second year for the sum of the first two and so on.

Connecticut Jury Instructions, § 245

Floyd v. Fruit Industries, Inc., 144 Conn. 659 (1957)

Chase v. Fitzgerald, 132 Conn. 461 (1946).

CALCULATION OF DAMAGES – PRESENT VALUE OF LOST EARNINGS

Furthermore, when determining the amount of damages for lost future earning capacity, you must reduce the total lost earnings to their present value, as you determine it to be.


Zuchowicz v. United States, Civ. No. 2-91-cv-1033(WWE), 1996 U.S. Dist. LEXIS 20179 , *3 (D. Conn. Nov. 25, 1996);

Powers v. United States, 589 F. Supp. 1084, 1102 (D. Conn. 1984);

See also Monessen S. R. Co. v. Morgan, 486 U.S. 330, 339-340, 108 S. Ct. 1837; 100 L. Ed. 2d 349 (1988) (The U.S. Supreme Court has "consistently recognized that damages awards in suits governed by federal law should be based on present value.  The self-evident reason is that a given sum of money in hand is worth more than the like sum of money payable in the future. . . . Hence, [in a case governed by federal law] failure to instruct the jury that  present value is the proper measure of a damages award is error.")

DAMAGES – SPECULATION

In determining the amount of damages to be awarded to any party, you may award only those damages that have been proven to your satisfaction by a preponderance of the evidence. You may not base any award of damages on speculation or guesswork.

Sir Speedy, Inc. v. L&P Graphics, Inc., 957 F.2d 1033, 1038 (2d Cir. 1992);

Douglass B. Wright & William L. Ankerman, Connecticut Jury Instructions §§ 222 (e), (g) (4th ed. 1993).

DAMAGES – SYMPATHY

You have heard evidence that the plaintiffs in this case have suffered injuries, including death.  Under no circumstances may you allow sympathy and compassion, or the fact that the defendants are corporations, to affect your consideration of the evidence regarding damages to the plaintiffs.

Scala v. Moore McCormack Lines, Inc., 985 F.2d 680, 684 (2d Cir. 1993);

Gigliotti v. United Illuminating Co., 151 Conn. 114, 120-21, 193 A.2d 718 (1963);

Gumbart v. Waterbury Club Holding Corp., 28 F. Supp. 170, 172 (D. Conn. 1939).

<u>PUNITIVE DAMAGES</u>

In addition to the compensatory damages, the plaintiff seeks additional damages that we call exemplary or punitive damages.  In order to recover them, the plaintiff must prove more than an invasion of her rights.  She must prove that the wrong done her arose from the defendant's reckless disregard for the safety of the product users who were injured by the product.

Reckless misconduct is something more than mere negligence.  To be reckless, the actor must recognize that its action or failure to act involves a risk to others substantially greater than that which is necessary to constitute negligence.  It requires a conscious choice of a course of action either with knowledge that it will involve serious danger to others or with knowledge of facts that would disclosure this danger to any reasonable person.

It is, therefore, incumbent upon the plaintiff to establish by a fair preponderance of the evidence that the defendant acted with heedless and reckless disregard of her rights and that such conduct was a proximate cause and a substantial factor in her injuries.

If the plaintiff has not proven to you that the defendants acted with reckless disregard for the safety of the users of its products, then you must find for the defendants on this claim.

Conn. Gen. Stat. § 52-240b;

3 Edward Devitt, <u>et al.</u>, <u>Federal Jury Practice & Instructions</u> § 85.19, at 345-46 (4th ed. 1987);

U.S. Fifth Circuit District Judges Association, <u>Pattern Jury Instructions</u> No. 15.13, at 182 (1994 ed.).

Respectfully submitted,

DEFENDANTS,
FREIGHTLINER CORPORATION,
MERCEDES-BENZ CREDIT
CORPORATION, and
DETROIT DIESEL CORPORATION


By_____
       Paul D. Williams (ct05244)
       Daniel J. Foster (ct24975)
       Day, Berry & Howard LLP
       CityPlace I
       Hartford, Connecticut 06095-3499
       (860) 275-0100
       (860) 275-0343 (fax)
       Their Attorneys