UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ALICE G. SVEGE, ADMINISTRATRIX, ET AL | : | CIVIL NO. 3:01 CV 01771 (JBA) |
| | : | |
| Plaintiffs, | : | |
| VS. | : | |
| | : | |
| MERCEDES-BENZ CREDIT CORPORATION, ET AL | : | |
| | : | |
| | : | |
| Defendants. | : | JULY 20, 2004 |

## JOINT TRIAL MEMORANDUM EXHIBIT E

## OBJECTIONS TO PLAINTIFFS' JURY INSTRUCTIONS

**1.   A.   STRICT LIABILITY IN TORT**

The Plaintiffs assert that "whether the defendants followed industry standards or practices is irrelevant . . . . [and] must not be considered by [the jury]." This is contrary to Connecticut law.

The fact that compliance with industry standards may be relevant to whether a product is defective under Connecticut law is clearly indicated by <u>Wagner v. Clark Equip. Co.</u>, 243 Conn. 168, 700 A.2d 38, 49 (Conn. 1997), in which the Connecticut Supreme Court held that compliance with federal safety standards "is relevant to the issue of defective design in a product liability action." The <u>Wagner</u> court did not merely reject the more general position that compliance with external standards is irrelevant to whether a product is defective, even though the standards under consideration in that case were governmental regulations which provide the minimum standards imposed by positive law. After noting that "the trial court had already charged the jury that it could consider evidence that the forklift complied with the relevant industry standard," the <u>Wagner</u> court held that an additional instruction on compliance with federal safety standards would not have been cumulative, because "compliance with a federal

regulation <u>may carry more weight with a jury than compliance with an industry standard</u>." <u>Id.</u> at 50-51. For this reason, the court concluded that the charge would not be cumulative and that the defendants were entitled to the requested charge regarding compliance with federal regulations. <u>Id.</u> at 51.

In addition, in <u>Potter v. Chicago Pneumatic Tool Co.</u>, 241 Conn. 199, 694 A.2d 1319 (Conn. 1997), the court stated that:

> [t]he plaintiffs assert that state-of-the-art evidence has no place in a strict products liability action because it improperly focuses the jury's attention on the manufacturer's conduct. We disagree. We adopt the majority view and hold that such evidence is relevant and assists the jury in determining whether a product is defective and unreasonably dangerous.

<u>Id.</u>, 694 A.2d at 1347. Although the court went on to define "state of the art evidence" as distinct from industry standards, in so doing it expressed the view that industry standards "may be relevant" in products liability cases:

> "Although customs of an industry may be relevant . . . because those customs may lag behind technological development, they are not identical with the state-of-the-art." (Citation omitted.) <u>O'Brien v. Muskin Corp.</u>, [94 N.J. 169, 463 A.2d 298, 304 (N.J. 1983) (modified by statute as set forth in <u>Roberts v. Rich Foods</u>, 139 N.J. 365, 654 A.2d 1365, 1370 (N.J. 1995))].

<u>Id.</u> This is contrary to Plaintiffs' position that they are irrelevant as a matter of law. The New Jersey Supreme Court case cited was also a strict liability action alleging a product defect. <u>O'Brien v. Muskin Corp.</u>, 463 A.2d at 301.

The cases cited by Plaintiffs in support of this proposed instruction do not support their position. The first is irrelevant, because it was an application of Pennsylvania law. <u>See</u> <u>Holloway v. J.B. Systems, Ltd.</u>, 609 F.2d 1069, 1070 (3d Cir. 1979)(noting that the court is applying Pennsylvania law). The second case cited by Plaintiffs also provides no support for their position. The pertinent passage reads:

> Appellant also argues that it was error for the court to exclude from evidence a manual of the National Safety Council dealing with the care and operation of power presses. Recently some trial courts have been willing to allow a plaintiff to introduce safety manuals in order to show that the defendant's conduct did not measure up to generally accepted minimum standards of care used in the industry. Courts have been reluctant, however, to allow a defendant to use a safety manual to show that he has met the minimum standard, particularly where the industry has formulated the rules. See H. M. Philo, Use of Safety Standards, Codes and Practices in Tort Litigation, 41 Notre Dame Law. 1, 5 (1965).
>
> Here, however, appellant did not intend to use the manual to prove that it had not been negligent in the manufacture of the press, but rather to show that plaintiff's employer did not follow a procedure that might have avoided the accident. Although it might have been proper to have admitted the manual into evidence, it does not appear that its exclusion in this case was prejudicial to appellant. Appellant was allowed to introduce another manual which contained essentially the same material.

Di Meo v. Minster Machine Co., 388 F.2d 18, 20 (2d Cir. 1969)(emphasis added). The only remark in this case that provides even minimal support for Plaintiffs' position is the first underlined passage. That dicta merely states that courts have been reluctant to admit safety manuals evidence. Moreover, far from holding that this or any other evidence of industry standards is irrelevant as a matter of law, the court notes that "it might well have been proper" to admit such evidence in the very case before it.

**2.  THE PRODUCT WAS IN A DEFECTIVE CONDITION UNREASONABLY DANGEROUS TO THE CONSUMER AND TO THIRD PERSONS WHOM THE PRODUCT SELLER COULD EXPECT TO BE ENDANGERED BY ITS USE.**

In purporting to set forth the law regarding strict liability, this instruction suggests that there is no dispute that the "tractor jackknife[ed], [lost] directional control, [struck] a concrete barrier to its right, then crossed over the barrier separating opposing lanes of traffic," and that the dispute is limited to the cause of this loss of control. In fact, Defendants deny that the truck jackknifed prior to the loss of control and prior to its crossing the median barrier.

In addition, Plaintiffs' proposed instruction does not provide to the jury standards for determining whether a product is in fact defective or unreasonably dangerous. It does not advise the jury that a product defect may not be inferred from the mere fact that a product is capable of causing harm or from the fact that an even safer design alternative was possible. It does not indicate which other factors may properly be weighed by the jury. In summary, it gives the jury no guidance and would leave the jury free to make this critical determination without reference to established legal standards.

B.  **FAILURE TO WARN**

Plaintiffs' proposed jury instruction incorrectly presents as fact Plaintiffs' claims that "Loss of control was significantly enhanced when the engine brake was enabled in a curve in combination with a wet slippery roadway"; "The warning given by Freightliner did not emphasize the catastrophic consequences which can occur if the engine brake was used on wet pavement, especially on a curve"; "There was no active indication, much less warning, in the tractor cab regarding the active status of the engine brakes when they were in fact enabled (switch or switches turned on) so that driver would know that the engine brake was active under conditions when it should not be used"; and "Had an active warning and indication of the engine brake status been available in the cab of the tractor, it is more probable than not that harm to the plaintiffs would not have occurred based on the circumstances of this accident." The statement that there was <u>no</u> active indication in the cab is particularly inappropriate, because it is seemingly beyond dispute that both the switch positions and the loud noise made by the brake constitute active indicators.

This proposed instruction is also inadequate because it does not advise the jury as to the relevance of the evidence presented by the Defendants that the driver was already aware of the risks involved with use of the engine brake on wet roadways.  In fact, under Connecticut law, Defendants "could not be liable for a failure to warn [the product user] of dangers of which he was already aware."  Gajewski v. Pavelo, 36 Conn. App. 601, 616, 652 A.2d 509 (1994), aff'd, 236 Conn. 27, 670 A.2d 318 (1996).

It is also noteworthy and inappropriate that the Plaintiffs request an instruction that is based on language from Restatement (Second) of Torts, § 402A cmt. j. (1965), but fails to provide other relevant language from that same comment.  That comment also states that "[w]here warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous."  Restatement (Second) of Torts, § 402A cmt. j. (1965).  Comment (j) has indeed been adopted by Connecticut courts.  See Vitanza v. Upjohn Co., 257 Conn. 365, 778 A.2d 829, 836 (2001)(citing Restatement § 402A cmt. j).

Plaintiffs also state that "Plaintiffs claim that the warning given was insufficient and inadequate because it did not provide a complete disclosure of the existence and extent of the risk involved."  While Plaintiffs apparently do claim this, they do not provide support for the position that Connecticut law defines sufficiency or adequacy of warnings in this manner. Complete disclosure of the existence and extent of risks involved is impractical, and particularly unnecessary where the risks involved are obvious.  Where the risk at issue involves loss of control of a tractor trailer truck, it is obvious that the extent of potential harm includes an accident of the sort at issue here.

In this instruction, Plaintiffs also provide a misleading and incomplete statement regarding the use of evidence of habit or custom. This proposed instruction notes that, under Fed. R. Evid. 406, the jury "may consider the habit or custom of the driver of normally having the engine brake active in dry weather and turning it off in wet weather." What they fail to acknowledge is that this rule provides only that the evidence may be used "to prove that the conduct of the person . . . on a particular occasion was in conformity with the habit or routine practice." Id. Defendants submit that the jury should not be advised that they may consider evidence of habit or custom except as proof that the individual – Scottie Wightman – actually acted in accordance with this habit or custom. Plaintiffs evidently want the jury to conclude that Wightman did not act in accordance with his habit or custom, but would have acted in accordance had an engine brake indicator light been present, although Plaintiffs (a) admit that these were not the circumstances because there was no such light, and (b) insist that, under those counterfactual circumstances, Wightman would have acted differently than he actually did because those circumstances would have been different. This is not a proper use of habit evidence, as Rule 406 makes clear. There is no evidence that Wightman was in the habit of leaving the engine brake off in the rain, but then turning it on when he began to lose control of the vehicle. To the contrary, he testified that, during a loss of control event, "[i]f the engine brake would have been on at that particular time, there is no way that you would think to reach and turn it off." Deposition of Scottie Wightman, November 19, 2001, at 59. Nor is there any evidence as to what Wightman's habitual response to an indicator light would be, because Plaintiffs do not assert that he ever drove a truck with one or developed any such habit. Even if, as Plaintiffs claim, he would have acted differently under those circumstances, he can not have developed a habitual response to them.

In summary, the evidence of habit and custom in this case may not properly be used to support Plaintiffs' theory that Wightman did not act in accordance with his habit or routine on the day of the accident, but, contrary to his testimony, nonetheless would have turned off the engine brake after losing control of the vehicle if there had been an indicator light. Plaintiffs' proposed jury instruction on the use of habit evidence is incomplete, and, as a result, is misleading on this point.

As discussed more extensively below in response to Plaintiffs' proposed instruction number (3), in explaining the law of causation, this instruction fails to distinguish between cause in fact and proximate cause, and fails to explain that the jury may conclude that the negligence of third parties was a superseding or intervening cause of this accident. Plaintiffs' instruction also fails to instruct the jury that they may not find a causal link between an alleged failure to warn and the Plaintiffs' injuries unless they find, inter alia, that the Plaintiffs have proven by a preponderance of the evidence that the driver would have behaved differently, and avoided the accident, if different or additional warnings had been provided. This is omission is glaring in light of the considerable authority that, as stated by Prosser, "[t]he seller is entitled to have his due warnings and instructions followed; and when they are disregarded, and injury results, he is not liable." See Edwards v. Sears, Roebuck & Co., 512 F.2d 276, 289 (5th Cir. 1975) citing W. Prosser, Law of Torts § 102, at 668-669 (4th ed. 1971); see also Ferguson v. F.R. Winkler GMBH & Co. KG, 79 F.3d 1221, 1226 (D.C. Cir. 1996)(seller "has a right to rely on [this] warning . . . to insulate it from becoming a virtual insurer against all injuries arising from its product" (citation and internal quotation marks omitted)); Erickson v. Monarch Indus., Inc., 216 Neb. 875, 347 N.W.2d 99, 109 (1984) (seller has a right to assume its warnings will be followed).

**3.    THE DEFECT CAUSED THE INJURY OR INJURIES FOR WHICH COMPENSATION IS SOUGHT.**

Plaintiffs correctly assert that the causal relationship between the <u>crash</u> and the death of Thor Svege, Sr., as well as any injuries suffered by Plaintiffs as a result of the crash, is "obvious." Plaintiffs incorrectly maintain, however, that the jury may infer that, if the jury finds the truck to be defective, they may – indeed, must – infer that that defect caused the accident. In fact, causation must be proven by the Plaintiffs. In order to prove causation, the Plaintiffs would have to prove that the engine brake was on at the time of the accident. If the defect found relates to warnings, Plaintiffs would have to prove that the driver would have behaved differently, and the accident would have been avoided, if different and superior warnings were in place. Furthermore, Plaintiffs' proposed jury instruction neglects to mention that they must also prove that an alleged defect was the <u>proximate</u> cause of the accident. Plaintiffs have asserted in a previous suit that the accident was caused by, inter alia, the excessive speed and reckless driving of Scottie Wightman. Defendants maintain that, even if a defect in the truck was a cause in fact of this accident, which is expressly denied, the negligence or recklessness of Scottie Wightman was an intervening or superseding cause, cutting off the chain of proximate causation. For this and other reasons, whether use of the engine brake could have been a proximate cause of this accident will be in dispute at trial, even if it could be proven that use of the engine brake was a cause in fact.

**C.    NEGLIGENCE**

Defendants believe that this entire section is unnecessary and likely only to confuse the jury. Although they have claimed that Defendants were negligent, Plaintiffs have brought this

suit under the Connecticut Products Liability Act [CPLA]. Under the CPLA, "[a] product liability claim as provided in sections 52-240a, 52-240b, 52-572m to 52-572q, inclusive, and 52-577a may be asserted and <u>shall be in lieu of all other claims against product sellers, including actions of negligence, strict liability and warranty, for harm caused by a product</u>." Conn. Gen. Stat. § 52-572n (a) (emphasis added). Even if Defendants could be liable for negligence, each of the alleged basis for finding such negligence – an alleged breach of the duty "to make such tests and inspections as were reasonably necessary to secure the production of a safe product," alleged "fail[ure] adequately to warn and instruct," and alleged "negligent … failure to manufacture a tractor that was reasonably fit for its intended purpose" - depend on proving the elements of Plaintiffs' strict liability claim.

Finally, this section again provides an incomplete instruction on causation, because it fails to define proximate cause and, therefore, fails to inform the jury that they may find that the actions of a third party constitute a superseding or intervening cause that cuts off proximate causation and, therefore, liability.

### D.   **BREACH OF IMPLIED WARRANTY**

Like the proposed negligence instruction, this section is unnecessary and inappropriate, because the CPLA provides Plaintiffs' exclusive remedy against Defendants. Furthermore, as Plaintiffs state, it depends on a showing that the truck at issue is not "fit for its intended purposes." Plaintiffs are therefore not entitled to an additional instruction regarding breach of implied warranty.

In addition, this section incorrectly describes "use of the engine brake on a wet and slippery roadway" as "conditions known to cause loss of vehicle control," misrepresenting as

fact one of Plaintiffs' allegations. Finally, in subpart (6), this proposed instruction improperly describes the law with regard to causation for reasons described at length above.

### E. CONCLUSION

Regarding strict liability, Plaintiffs' proposed conclusion grossly misstates their burden of proof in this case by suggesting to the jury that they may find in their favor without any proof of causation whatsoever. Furthermore, it again states that use of the engine brake under the circumstances of this accident is "known to cause loss of control" when in fact this is a disputed issue that the Plaintiffs must prove to be fact.

The proposed language states that a defect may be found if "the tractor was unreasonably dangerous when the engine brake was used on a wet and slippery roadway" or if "the tractor was not reasonably fit for its intended purpose because it could not be driven safely on wet and slippery surfaces with the engine brake on." This misstates the issues in dispute in this case. Plaintiffs have maintained that the engine brake should not be used on a wet and slippery roadway in the first place, not that the truck is unreasonably dangerous unless a driver may safely use the engine brake on such a surface. It Plaintiffs intend to prove that an engine brake is such an important safety device, even on wet roadways, that a driver's inability to use it in such conditions would make the vehicle unfit and unreasonably dangerous as a whole, they have thus far failed to advise Defendants of this.

This proposed instruction also contains paragraphs regarding negligence and breach of implied warranty. As further explained above, Defendants object to these as unnecessary and tending to cause confusion.

### III. DEFENDANTS' BURDEN ON SPECIAL DEFENSES

Plaintiffs misstate Defendants' burden of proof in this case. "An affirmative defense is defined as '[a] defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all allegations in the complaint are true." Saks v. Franklin Covey Co., 316 F.3d 337, 349 (2d Cir. 2003) (citing, inter alia, Black's Law Dictionary 430 (7th ed. 1999)) (emphasis added). As the Plaintiffs indicate in this section, Defendants intend to offer evidence that the ABS would disengage the engine brake without application of the service brake, that this feature would have prevented the engine brake from causing this accident even if it had been on, and that this truck could not lose traction unless the coefficient of friction was on the order of ice. This evidence, however, will not be offered to prove additional facts that, if true, would relieve Defendants of liability even if Plaintiffs proved their prima facie case. Consequently, these facts are not affirmative defenses and Defendants have no burden of proof with regard to them. To the contrary, all of this evidence tends to show only that an element of Plaintiffs' prima facie case – that the engine brake caused this accident – is false. Defendants do not have the burden of proving that the engine brake did not cause the accident, Plaintiffs have the burden of proving that it did cause the accident.

**BURDEN OF PROOF, GENERALLY**

By oversimplifying the issues in dispute, the Plaintiffs provide a description of the issues in dispute that is inaccurate. Just as important, this instruction again misstates the burden of proof by suggesting that the Plaintiffs have less to prove than the law in fact requires. In addition, a later part of the instruction incorrectly states that the Defendants must prove their "defenses" by a preponderance of the evidence. In fact, by undertaking to demonstrate that the elements of Plaintiffs' prima facie case are false, Defendants have not assumed any burden of proof.

### C.     DAMAGES

Defendants submit that Plaintiffs' instructions on damages are incomplete in that they do not advise the jury that they may not base their findings regarding damages on speculation or on sympathy. Given that Plaintiffs seek, inter alia, damages for future non-economic damages, an instruction regarding speculation is necessary to provide some guidance to the jury. Given the potential emotional impact of Plaintiffs' evidence and arguments relating to damages, an instruction on sympathy is appropriate to decrease the likelihood that the jury will award damages based on considerations other than the evidence.

#### 1.     Economic Damages

This proposed instruction fails to advise the jury that any damages for future economic losses must be decreased to their present value. See, e.g., Powers v. United States, 589 F. Supp. 1084, 1102 (D. Conn. 1984). It also fails to inform the jury that damages for lost future income must deduct income taxes and necessary living expenses. Tesler v. Johnson, 23 Conn. App. 536, 542, 583 A.2d 133 (1990). If the court does not instruct the jury on these matters, than the damages awarded, if any, will almost certainly be greater than those to which the Plaintiffs are entitled, if any.

#### 2.     Non-Economic Damages  (Thor Svege, Sr.)

Plaintiffs incorrectly assert that, upon a showing of liability, they are entitled to "Damages for the death itself to Thor Svege, Sr.," in addition to damages for the destruction of his capacity to carry out and enjoy life's activities and the lost wages claimed in subsection (C)(1) ("Economic Damages"). This would invite the jury to provide a double recovery.

The Connecticut Supreme Court has indeed recognized a right to recover damages for "death itself, even though instantaneous, without regard to earnings or earning capacity." <u>Floyd v. Fruit Industries, Inc.</u>, 144 Conn. 659, 136 A.2d 918, 924 (Conn. 1957). That Court has also explained, however, that it recognized damages for "death itself" so as to provide recovery for the death of individuals for those who have no substantial earning capacity, not as a supplement to the measure of damages for those who do:

> Damages for wrongful death, as such, are allowed as compensation for the destruction of the decedent's capacity to carry on life's activities, including his capacity to earn money, as he would have if he had not been killed. . . . <u>In the case of one who is gainfully employed</u>, especially one who earns a relatively large income, as did the present decedent, <u>the destruction of earning capacity may well be the principal element of recovery resulting from the death</u>. . . . But we have consistently pointed out that damages for wrongful death are not restricted to those arising from the mere destruction of earning capacity. Some damages are recoverable for death itself, even though instantaneous, without regard to earnings or earning capacity. . . . In [a case] involving the death of a married woman who had neither an earned income nor any reasonable prospect of acquiring one, the defendants in effect claimed that the jury's assessment of damages for her death was restricted to the element of the destruction of earning capacity. This claim was held erroneous and led to a re-examination of our rule and an attempt to restate it so as to facilitate its application in the case of housewives and others who might not have substantial earning capacity. At the same time, we amplified and clarified our settled rule allowing recovery of damages for death itself, apart from its effect on earning capacity. <u>Chase v. Fitzgerald</u>, [132 Conn. 461, 45 A.2d 789, 793 (Conn. 1946)]."

<u>Id.</u> at 924-25 (citations omitted) (emphasis added). In the passage from <u>Chase v. Fitzgerald</u> cited here, the court had made clear that damages later referred to as being for "death itself" were in fact for the loss of capacity to carry on life's activities, other than the capacity to earn money:

> The rule for measuring damages resulting from death may then be briefly summarized as follows: It is that sum which would have compensated the deceased so far as money could do for the destruction of his capacity to carry on life's activities as he would have done had he not been killed, <u>including</u> the destruction of his earning capacity, for such time as he would probably have lived, but with due allowance for the effect which the ordinary vicissitudes of life might have had upon his continued enjoyment of those capacities and, as far as destruction of earning capacity is concerned, for the fact that a present payment

> will be made in lieu of sums which, had he lived, would have been received at periodic times in the future.

Chase v. Fitzgerald, 132 Conn. 461, 45 A.2d 789, 793 (Conn. 1946).

In summary, by asserting a right to recovery a sum of money for "death itself," in addition to other measures of damages, Plaintiffs assert a right to a double recovery. The estate of Thor Svege, Sr. is not entitled to recover twice for the same loss or losses.

Defendants also object to this requested instruction because there is no authority supporting the recovery of damages for "mental pain and suffering which [Thor Svege, Sr.] experienced when he realized his life and that of his family was in danger," such as that to which this proposed jury instruction suggests the estate of Thor Svege, Sr. is entitled.

### 3. **Damages for Thor Svege, Jr., and Briana Svege**

### B. **Future Non-Economic Damages**

Plaintiffs' claim that recovery may be had for "suffering of any kind" is excessively broad and gives the jury inadequate guidance. Insofar as adequate guidance is provided by more specific portions of this instruction, the "suffering of any kind" instruction is made unnecessary. In addition, we object to separate instructions on past and future non-economic damages as it unnecessary and may cause confusion.

### V. **PUNITIVE OR EXEMPLARY DAMAGES**

This instruction presents a view of disputed facts so heavily slanted in favor of the Plaintiffs that it would deprive Defendants of a fair trial. This proposed instruction, practically speaking, instructs the jury that the Plaintiffs are entitled to punitive damages. It states various allegations as fact, including that the Defendants engaged in serious misconduct. Particularly inappropriate is the statement that "[w]hat the defendants failed to communicate, and, in fact, have concealed, is the full seriousness of the problem. Namely, that when an engine brake is

enabled on wet pavement on a curve an engine-brake-induced jackknife can come about so suddenly, that with the typical driver reaction time, drivers like the driver of this tractor, with 16 years experience, cannot recognize the critical condition they are in before the jackknife is at the point of no return and loss of control is irreversible." (Emphasis added).

Having stated these allegations as fact, this proposed instruction then tells the jury in its final sentence that if any of these statements are indeed the facts, Plaintiffs are "entitled to" punitive damages. This is contrary to the correct standard, which requires a showing that "the harm suffered was the result of the product seller's reckless disregard for the safety of product users, consumers or others who were injured by the product." Conn. Gen. Stat. § 52-240b. Plaintiffs also submit that the jury should be provided with a definition of "reckless disregard" so that it is not confused with mere negligence.

Finally, this instruction invites the jury to add punitive damages. In fact, in a Connecticut products liability case, the amount of punitive damages, if any, must be determined by the court. See id. ("If the trier of fact determines that punitive damages should be awarded, the court shall determine the amount of such damages not to exceed an amount equal to twice the damages awarded to the plaintiff.")

                                    DEFENDANTS,
                                    FREIGHTLINER CORPORATION,
                                    MERCEDES-BENZ CREDIT
                                    CORPORATION, and
                                    DETROIT DIESEL CORPORATION

                                By_____
                                    Paul D. Williams (ct05244)
                                    Daniel J. Foster (ct24975)
                                    Day, Berry & Howard LLP
                                    CityPlace I
                                    Hartford, Connecticut 06095-3499

(860) 275-0100<br>
(860) 275-0343 (fax)<br>
Their Attorneys