UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ALICE G. SVEGE, ADMINISTRATRIX, ET AL. | : | CIVIL NO.  3:01 CV 01771 (MRK) |
| | : | |
| Plaintiffs, | : | |
| VS. | : | |
| | : | |
| MERCEDES-BENZ CREDIT CORPORATION, ET AL. | : | |
| | : | |
| | : | |
| Defendants. | : | JULY 22, 2004 |

### DEFENDANTS' MEMORANDUM OF LAW IN REPLY TO PLAINTIFFS' MOTIONS IN LIMINE

Defendants respectfully submit this Memorandum of Law in Response to Plaintiffs' Motions in Limine.  Plaintiffs' Motions to preclude testimony by Defendants' witnesses Alan Korn and Kenneth S. Baker, as well as Plaintiffs' Motion to preclude evidence of the driving record of Scottie Wightman including citations issued in connection with the accident that gave rise to this litigation, were incorporated into the Joint Trial Memorandum submitted by the parties as well as being part of a separately filed motion.  Defendants' responses to those objections appear in the Joint Trial Memorandum immediately after each objection.

In addition, Plaintiffs have moved (1) to exclude "Trooper Long's conclusion"; and (2) to preclude Defendants' expert Norris Hoover "from offering expert opinions as to the negligence of Scottie Wightman with regard to his operation of his tractor-trailer on the day of the accident."  Defendants' responses to those motions are as follows.

### I.     "TROOPER LONG'S CONCLUSION"

Plaintiffs ask the Court to "exclude, remove or redact" a single sentence from the PA State Police General Investigation Report (Exhibit 626) and Police Accident Report (Exhibit 627) written by Trooper Martin Long.  As quoted by Plaintiffs, the sentence reads: "Unit 1 was

traveling east on the PA Turnpike in the right lane and traveling too fast for extreme heavy rain conditions."

Plaintiffs attempt to undermine the truth of this statement by asserting that, among the citations issued to Mr. Wightman arising from his role in this incident, "[t]here was no charge that Wightman exceeded the speed limit of 65 mph." (Joint Trial Memorandum at 52.) Wightman, however, was in fact charged with, in opposing counsel's words, "driving at an <u>unsafe</u> speed that resulted in this accident" and pled guilty to that charge. (Deposition of Scottie Wayne Wightman, November 19, 2001, at 41-42 (emphasis added).)

In response to Defendants' assertion that he had not followed a reliable methodology, Plaintiffs' proposed expert John C. Glennon, Jr. stated in his Supplemental Expert Report that he actually relied upon Trooper Long's Reports and accident reconstructions in drawing his own conclusions about the cause of this accident. (<u>See</u> Exhibit 1, at 4 ("Mr. Gilberg did not ask me to do an accident reconstruction of the entire accident reconstruction of the entire accident sequence, since . . . Mr. Gilberg ascertained that an accident reconstruction . . . had already been done by Trooper Martin C. Long . . . . The General Investigation Report of Trooper Long . . . is annexed [to the Supplemental Report]"); <u>id.</u> at 10 ("I also reviewed a copy of the police report . . . ."); <u>id.</u> at 11 (citing the deposition of Trooper Long among additional materials relied on in reaching his conclusions); <u>id.</u> at 24 (asserting that a diagram in a Commercial Driver's License manual depicting a jackknife is "strikingly similar" to a diagram drawn by Trooper Long).)

Glennon further testified at his deposition that he relied upon Long's conclusions in reaching his own opinions, and expressed the view that they were accurate:

```
 8     Q.  Do you reference the trooper's report on page
 9   four of your supplemental report?
10     A.  I talk about the trooper's report on page
11   four, yes.
```

```
12     Q.  And is it your position that Trooper Long's
13   report is an accurate reconstruction of the accident?
14     A.  I believe so, yes.
   *      *      *
24     Q.  Okay.  Did you use Trooper Long's
25   measurements and do a separate analysis with his total
              [page 210]
 1   station numbers?
 2           MR. GILBERG:  Note my objection.
 3     A.  Well, I certainly included his measurements
 4   and diagram in this part of my analysis.
```

(Cont'd Deposition of John Glennon, Feb. 23, 2004, at 209-10 (attached as Exhibit A hereto).)

Defendants respectfully submit that, by relying on Long's reports and conclusions, Plaintiffs have opened the door to this topic. Defendants merely ask to provide to the jury a complete picture of Trooper Long's findings and conclusions so as to permit the jury to assess the reliability of Glennon's methodology. If Plaintiffs are permitted to redact parts of Long's reports, they will likely mislead the jury into believing that Long's analysis supports, or at least does not contradict, Plaintiffs' theory.

## II.    OPINION TESTIMONY OF NORRIS HOOVER

In support of their position that Norris Hoover should not be permitted to offer "expert opinions as to the negligence of Scottie Wightman with regard to his operation of his tractor-trailer on the day of the accident," Plaintiffs merely state that "[i]ssues relating to negligent operation of motor vehicles are well within the capacities of jurors to decide and do not require expert testimony to aid jurors in coming to a decision." (Plaintiffs' Motions in Limine and Accompanying Memorandum of Law at 5.)

It is respectfully submitted that while <u>some</u> issues relating to negligent operation of motor vehicles are within the familiarity of the average juror,[1] the average member of the community does not know how safely to operate a tractor trailer truck.  It is for this reason that a driver must obtain a Commercial Driver's License (CDL) in order to drive such a vehicle.  If drivers of passenger cars were presumed to have an adequate understanding of how safely to operate a tractor trailer, the issuance of a separate CDL would be unnecessary.

Hoover, who is an experienced truck driver and does have a CDL, has stated in his expert report, inter alia, that "[m]ost CDL manuals instruct the driver to down shift before starting downhill and prior to entering a curve.  Mr. Wightman's decision to wait until the trailer started downhill sliding was not the most practical method of safe operation of his vehicle"; that "Mr. Wightman should have regained directional control of his vehicle"; that "Mr. Wightman was an inadequately skilled commercial vehicle operator"; and that "Mr. Wightman's negligent actions were the cause of this accident."  (<u>See</u> Defendant's Exhibit 618, Report of Norris Hoover dated June 29, 2003 at 4, 7.)

As Hoover further explained at his deposition, his opinion that Wightman should have regained control of his vehicle is based in part on considerations such as at what angle of articulation a driver should be able to regain control and prevent a jackknife, as well as what steps can and should be taken in order to do so.  (<u>See, e.g.</u>, Deposition of Norris Hoover, July 18, 2003, at 129-31.)   Issues such as what manner of downshifting constitutes "the most practical method of safe operation of [this] vehicle" and when and how a jackknife can be prevented are outside the knowledge or experience of the ordinary juror.

---

[1] <u>See, e.g.</u>, <u>Satcher v. Honda Motor Co.</u>, 52 F.3d 1311, 1318 (5th Cir. 1995) ("The jury hardly needed expert testimony to explain that driving in the wrong lane of traffic is negligent.")

Other courts have recognized that the proper and safe operation of a commercial vehicle is an appropriate subject for expert testimony.  See, e.g., Bosse v. Ideco Div. of Dresser Industries, Inc., 412 F.2d 567, 568 (10th Cir. 1969)(affirming judgment where sole basis for appeal was that "[t]he [expert] witness, over appellant's objection, [stated] that in his opinion the 'truck was going too fast' and 'in too high a gear.'"); see also Keils v. Covenant Transport, Inc., No. 90-5928, 1991 U.S. App. LEXIS 16631, *4, n.1 (6th Cir. July 16, 1991):

> without a proffer we are unable to ascertain whether the expert had an opinion that it was contrary to the usual standard of care for truck drivers to fail to pull off onto the shoulder where, as [the driver] testified, he did not know if the shoulder would support his loaded tractor trailer and was also concerned about its slope; whether the usual standard of care for truck drivers required vehicles to be promptly towed rather than repaired at the side of the highway where the truck is off the main travelled portion of the highway rather than use an accessible emergency lane; whether drivers should attempt to exit even if they will block the exit lane; or whether there was little likelihood that the brakes would lock up while attempting to exit. In the absence of a proffer, we have no way to determine whether plaintiff could have been harmed by the failure to admit the expert's testimony.

Thus, Plaintiffs' assertion that "[i]ssues relating to negligent operation of motor vehicles are well within the capacities of jurors to decide and do not require expert testimony to aid jurors in coming to a decision" is simply incorrect if taken to refer to all issues relating to negligent operation of motor vehicles.  Plaintiffs do not assert that the particular issues with regard to which Hoover is expected to testify are within the knowledge and experience of the average juror, and it is respectfully submitted that such an assertion would be plainly without merit.

## I.    CONCLUSION

For the foregoing reasons, and those expressed in the Joint Trial Memorandum, Defendants respectfully request that the Court deny Plaintiffs' Motions in Limine.

              DEFENDANTS, FREIGHTLINER
              CORPORATION, MERCEDES-BENZ
              CREDIT CORPORATION, and
              DETROIT DIESEL CORPORATION


By_____
  Paul D. Williams (ct05244)
  Daniel J. Foster (ct24975)
  Day, Berry & Howard LLP
  CityPlace I
  Hartford, Connecticut 06095-3499
  (860) 275-0100
  (860) 275-0343 (fax)
  Their Attorneys


## CERTIFICATION

  THIS IS TO CERTIFY that a copy of the foregoing was mailed, on this date, postage prepaid, to:

  Leo Gilberg, Esq.
  305 Broadway
  New York, NY 10007


_____
  Paul D. Williams