UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ALICE G. SVEGE, ADMINISTRATRIX, ET AL. | : | CIVIL NO. 3:01 CV 01771 (MRK) |
| Plaintiffs, | : | United States District Court |
| | : | District of Connecticut |
| -vs- | : | FILED AT    NEW HAVEN |
| | : | Aug 9, 2004 |
| MERCEDES-BENZ CREDIT CORPORATION, | : | Kevin F. Rowe, Clerk |
| ET AL. | : | |
| | : | August 9, 2004       Deputy Clerk |
| Defendants. | : | |

**PLAINTIFFS' MEMORANDUM OF LAW
ON THE NEED FOR EXPERT TESTIMONY
FOR ITS FAILURE THE WARN CLAIM**

This case is premised on plaintiffs' claim that use of the engine brake on the subject tractor on a curve of a wet and slippery Pennsylvania Turnpike road was the primary cause of the tractor-trailer driven by Scottie Wightman losing control and crossing over the concrete median barrier into the opposite lanes of traffic, striking the Svege SUV, killing Thor Svege, Sr., and seriously injuring his two children, Thor Svege, Jr. and Brianna Svege.

Plaintiffs have pleaded failure to warn claims based upon strict liability in tort, negligence, and breach of implied warranty, as well as that engine brake use on a wet and slippery roadway made the tractor unreasonably dangerous and defective.

The liability of a product seller due to lack of adequate warnings or instructions is governed by Conn. Gen. Stat. §52-572q.

The applicable Statute states the following:

"(a) A product seller may be subject to liability for harm caused to a claimant who proves by a fair preponderance of the evidence that the product was defective in that adequate warnings or instructions were not provided.

(b) In determining whether instructions or warnings were required and, if required, whether they were adequate, the trier of fact may consider: (1) The likelihood that the product would cause the harm suffered by the claimant; (2) the ability of the product seller to anticipate at the time of manufacture that the expected product user would be award of the product risk, and the nature of the potential harm; and (3) the technological feasibility and cost of warnings and instructions.

(c) In claims based on this section, the claimant shall prove by a fair preponderance of the evidence that if adequate warnings or instructions had been provided, the claimant would not have suffered the harm.

(d) A product seller may not be considered to have provided adequate warnings or instructions unless they were devised to communicate with the person best able to take or recommend precautions against harm."

Critical issue of defectiveness under failure to warn provision of CPLA depends not on whether product itself is defective, but, rather, on whether warnings are necessary, and, if so, whether they are adequate. Sharp v. Wyatt, 31 Conn. App. 824, 627A.2nd 1347 (1993).

In evidence at this trial is an SAE report of driver-controlled vehicle tests titled "Directional Control of Retarder-Equipped Heavy Trucks Operating on Slippery Surfaces" conducted by R.W. Radlinski on behalf of and funded by the Vehicle Research and Test Center, natural Highway Traffic Safety Administration.

The tests were, in many respects, similar to the accident sequence in this case and concluded that a tractor-trailer entering a curve on a wet and slippery roadway will jackknife when the retarder is turned on at 2 seconds after the beginning of the turning maneuver. The driver would only have 0.5 seconds to react before the jackknife approaches an uncontrollable level of articulation.

Since perception and reaction time is accepted as 1.5 seconds, an engine brake induced tractor jackknife is tantamount to irreversible loss of control.

Defendants admit that it knew that use of an engine brake on a wet and slippery roadway can cause loss of vehicle control, and defendant Freightliner had inserted that warning in its approximately 260 page Driver's Manual.

Along with the Driver's Manual, Freightliner included <u>the Jacobs Vehicle Systems Professional Drivers Techniques Manual</u> which stated that driving on wet and slippery roads is unpredictable, but advising that drivers experienced on dry roads could drive on wet and slippery roads, but that if a "fishtail" or loss of traction occurred, to turn off the engine brake switch.

The driver of the tractor-trailer testified that it was his intention and practice not to use the engine brake in wet weather, but he had no independent recollection of whether the engine brake switches were on or off, at the time he took his foot off the throttle after going into a curve on a wet highway, then hearing a "popping" sound (characteristic noise of engine brake) before going into a tractor jackknife and losing directional control of his vehicle.

An inspection of the tractor after the accident found the engine brake switches in the "ON" position, although one was broken.

What the defendants failed to communicate and warn, and, in fact, have concealed, is the full seriousness of the problem. Namely, that an engine-brake-induced jackknife can come about

3

so suddenly, that with the typical driver reaction time, drivers like the driver of this tractor, with 16 years experience, cannot recognize the critical condition they are in before the jackknife is at the point of no return and loss of control is irreversible.

Defendants Freightliner and Detroit Diesel are SAE members, and as manufacturers are deemed to be experts in their field with expert knowledge as to what the products they manufacture are capable of doing or not doing.

It is plaintiffs' position that defendant product sellers could reasonably foresee that operator's of their tractors, like Scottie Wightman, could lose control of a tractor-trailer if the engine brake was enabled when the vehicle went into a curve on a wet and slippery roadway.

Foreseeability on a negligence theory is crucial, but inapplicable in establishing causation in a failure to warn case under the CPLA. Sharp v. Wyatt, *supra*.

The jury has also heard deposition testimony of Scottie Wightman that he never looked to see if the engine brake switch was "ON" at any time during the course of driving eastbound that day on the Pennsylvania Turnpike. He testifies on Page 154, Line 4:

> "Q. Did you actually look at the speedometer at any time prior to the accident near the time of the accident to determine what your speed actually was?
>
> A. Yes.
>
> Q. And how long in advance of the accident had that happened?
>
> A. Seconds.
>
> Q. What was the reason that you were looking at your speedometer at that point in time?
>
> A. It's common practice to do what they call a sweeping motion, where you look in the left mirror, you look at the road, down at your instrumentation, back to the road, right mirror, back to the road, back to instrumentation.

> Q. And the sweeping sequence that you described would begin on the right side of the vehicle?
>
> A. The left.
>
> Q. I'm sorry. The left, the driver's side, correct?
>
> A. Correct.
>
> Q. And you'd begin by looking at your mirrors?
>
> A. Correct.
>
> Q. And then sweep the horizon for your roadway and your instruments?
>
> A. You would look into the left mirror, directly at the road in front of you, a quick glance at instrumentation, back to the road, to the right mirror, back to the road, and back to the instrumentation.
>
> Q. Okay. When you refer to instrumentation, would that include the electronic switch for the engine brake that is –
>
> A. In some instances, yes.
>
> Q. Was that part of your routine to check that as part of your instrumentation as you commonly did your sweeps?
>
> A. In this particular incident, no.
>
> Q. How about during the course of driving eastbound on the Pennsylvania turnpike that day prior to the accident?
>
> A. No, I never looked to see if it was on."

The jury also heard evidence from Mr. Wightman that if the engine brake was on at the time of the accident, there was no way he would think to turn it off. Page 59, Line 3.

> "Q. I'm speaking about – we're talking about at the time of the accident. When you say you don't know whether it was on or wasn't on, wouldn't the first thing you would do before you started steering be to turn off the engine brake?
>
> A. If it was off, there would be no need to reach and turn if off.
>
> Q. But if it was on, would that be the first thing you would do?

    A.    In reaction time, no.

    Q.    So the first thing you would do would be to steer the vehicle in the way you said you did?

    A.    You are correct.

    Q.    And the second thing would be to apply the hand brake –

    A.    Yes.

    Q.    -- to the trailer. And the third thing would be to drop gears?

    A.    Yes.

    Q.    And when would you turn off the engine brake?

    A.    If the engine brake would have been on at that particular time, thee is no way that you would think to reach and turn it off."

Plaintiffs contend that defendants did not give an adequate warning since it did not disclose the catastrophic consequences of irreversible loss of control caused by jackknifing, which once initiated, occurs at a rate too rapid for drivers to control.

Furthermore, there was no warning present when and where needed, namely, on the dashboard.

Plaintiffs have offered, and there is in evidence, Exhibit 33, an alternate design for their warning claim both an Engine Brake Active Light as well as a Service Brake Control of Engine Brakes, both designed and made available to Freightliner by Detroit Diesel, and already wired into the subject tractor, but never made operational by Freightliner.

The Service Brake Control of Engine Brakes would allow the dash-mounted engine brake switch to be set to the ON position but not engage the engine brakes until the service brake is pressed.

Plaintiffs' expert John C. Glennon, Jr. has testified to his opinion that the Service Brake Control of the Engine Brakes would have prevented this accident because placing the operator's

6

foot on the service brake to enable the engine brake in wet and slippery weather would permit the driver to timely access the ABS system and stabilize the wheel speeds on all the wheels of the tractor-trailer combination, if a sudden tractor jackknife is initiated.

Plaintiffs' alternate design would be limited to inclement weather by a transfer switch (Exhibit 39) which would then also permit the engine brake to be enabled by release of the throttle in good weather in the usual manner.

The Engine Brake Active Light on the dashboard of the tractor would go on and remain on whenever the engine brake is active.

Samuel J. Sero, P.E., plaintiffs' electrical and electronics expert testified as to the feasibility of these Detroit Diesel options, how to use transfer switches to retain the advantage of engine brake use in good weather and how to limit its disadvantages of causing loss of control in bad weather conditions.

Mr. Sero testified that making the Service Brake Control operational with transfer switches was cost-effective amounting from $5.00 to $7.00.

He also testified to the cost-effectiveness of the Active Engine Brake Light as the cost of basically drilling a hole in the dashboard and purchasing some wiring.

Also introduced as evidence in this trial is expert opinion in the form of a chart taken from "*What Is a Warning and When Will It Work?* from Proceedings of the Human Factors Society, Page 427. (Exhibit 607).

Exhibit 607 is annexed herein as Exhibit A.

The chart itself entitled "*When Won't a Warning Change Behavior?*" offers sufficient guidelines to the jury to permit it to decide whether if adequate warnings had been provided the plaintiffs would not have suffered the harm.

The Svege case is strikingly similar to Densberger v. United Technologies, Corp., 125 F.Supp. 2nd J85 (D. Conn. 2000) where a jury verdict that defendant had negligently failed to warn that an ESS Kit installed on a helicopter could cause the helicopter to become uncontrollable was affirmed by the Second Circuit.

The helicopter did become uncontrollable in flight and crashed leading to death and personal injury to its occupants.

No human factors expert testified in Densberger, *supra* that had an adequate warning been given the pilot would have heeded the warning and the pilot's behavior would have changed so that no harm would come to the helicopter's occupants.

In Potter v. Chicago Pneumatic Tool Company, et al., 241 Conn. 199 (May, 1997), Connecticut's highest Court held that a jury, under appropriate circumstances, may infer a defect from the evidence without the necessity of expert testimony.

"Pursuant to failure to warn provision of product liability statute, cause in fact exists if issuance of adequate warnings would have prevented injury or death at issue." C.G.S.A. §52-572q(c) quoting Sharp v. Wyatt, *supra*.

The Trial Court does not sit as trier of fact when ruling on whether plaintiffs have made out a prima facie case.

This is not a case where a jury's ability to evaluate the facts is involved with scientific and technical knowledge that requires an expert to assist the trier of the fact.

Advisory Committee Notes 91972) under rule 702 states:

> "Whether the situation is a proper one for the use of expert testimony is to be determined on the basis of assisting the trier. "There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a

specialized understanding of the subject involved in the dispute." Ladd, Expert Testimony, 5 Vand.L.Rev. 414, 418 (1952). When expert opinions are excluded, it is because they are unhelpful and therefore superfluous and a waste of time. 7 Wigmore §1918." F.R.C.P. 2004 edition, Page 423.

Section 52-572q(c) provides that "in warnings cases based on this section, the claimant shall prove by a fair preponderance of the evidence that if adequate warnings or instructions had been provided, the claimant would not have suffered the harm." Questions regarding the existence of a causal link classically are reserved for determination by the trier of fact. Hughes v. National Car Rental Systems, Inc., 22 Conn.App. 586, 590, 577 A.2d 1132, cert. denied; 216 Conn. 817, 580 A.2d 57 (1990). Proximate cause "becomes a question of law only when the mind of a fair and reasonable person could reach only one conclusion.... The question should be submitted to the trier of fact if there is room for a reasonable disagreement." Hall v. Winfrey, 27 Conn.App. 154, 158, 604 A2d 1334, cert. denied; Conn. 903, 606 A.2d 1327 (1992). Sharp v. Wyatt, *supra*.

According to the testimony of Scottie Wightman at this trial, a Freightliner manual he read in 1997 stated that use of the engine brake on a wet and slippery roadway could cause loss of traction and it was not labeled as a "warning."

Nowhere do defendants claim they ever issued a warning that engine brake use on a wet and slippery road would lead to irreversible loss of control and death.

[21, 22] Whether a warning is adequate is a decision for the trier of fact. General Statutes §52-572q(b). "Warnings must specifically identify for the user the danger inherent in the products use.' " Ames v. Sears, Roebuck & Co., *supra*, 8 Conn.App. at 646, 514 A.2d 352, quoting Giglio v. Connecticut Light & Power Co., 180 Conn. 230, 235, 429 A.2d 486 (1980). When warnings are required, it is also necessary that they are adequately comprehensible.

Giglio v. Connecticut Light & Power co., 180 Conn. 230, 429 A.2d 486 (1980).

According to the CPLA, pursuant to §52-572q(b), the anticipated awareness of an expected user with respect to the dangers of a particular product factors into the trier's determination of whether warnings were required and, if so, whether those provided were adequate.

Moreover, the defendants claim that they have discharged their duty to warn requires the Court to make what amounts to a factual determination.

Issues of credibility should remain with the jury in this case.

Wherefore, anticipated motions by defendants to seek dismissal at the end of plaintiffs' case upon the grounds that plaintiffs have not submitted a *prima facie* case for jury consideration and for a judgment as a matter of law should be denied.

Cause, in fact, is a genuine issue of material fact. <u>Miranti v. Brookside Shopping Center, Inc.</u>, 159 Conn. 24, 30, 266 A.2d 370 (1969).

        Respectfully submitted,

        Plaintiffs: Alice G. Svege,
        Administratrix of The Estate
        of Thor Svege, Sr. and Alice G. Svege, as
        guardian of the Estate of Minor Children,
        Thor Svege, Jr. and Brianna Svege

        By: _____
        LEO GILBERG, ESQ.
        305 Broadway
        New York, NY 10007
        212-822-1440
        Federal Bar No. CT22824

## CERTIFICATION

THIS IS TO CERTIFY that a copy of the foregoing was sent on this date by FACSIMILE to the following:

Judge Mark R. Kravitz
U.S. District Court: District of Connecticut
141 Church Street
New Haven, CT 06510

Paul E. Williams, Esq.
Day, Berry & Howard, LLP
City Place I
Hartford, CT 06095

THIS IS TO FURTHER CERTIFY that the original of the above will be filed with the Clerk of the Court on August 9, 2004.

LEO GILBERG, ESQ.

# WHEN *WON'T* A WARNING CHANGE BEHAVIOR?

**1. The person does not read [understand] the warning message, because:**

**A. The person:**
1. Is **not alert and sober**,
2. Or is **not seeking information**,
   *(Feels no need for information, based on past experience. Either:*
   - *No hazards are suspected, or*
   - *The hazards are obvious)*
3. Or **filters out** the warning.
   *(Is over loaded with information or task requirements, or Has been exposed previously to excessive, unnecessary warnings)*

**B. The sign or label:**
1. Is **not present** when and where needed, or is **always present**, even when not needed,
2. Or includes **too little information**, or **too much information**,
3. Or is **not noticeable** to a person who is seeking information, or **Not brief, legible, and understandable**.

**OR**

**2. The warning message does not change behavior, because:**

**The person:**
1. Was already aware of the hazard, (and sees the warning as unnecessary),
2. Or does not believe the warning,
   *(The warning probably will not be believed if*
   - *The information is inconsistent with experience*
   - *Others are successfully ignoring the warning*
   - *The source of the warning is not credible)*
3. Or **accepts/ignores** the risk,
   *(The risk probably will be accepted [or ignored] if:*
   *the person believes:*
   - *Severe consequences are unlikely*
   - *The hazard is under his/her control*
   - *The activity is worth the risk*
   - *Social pressure outweighs the risk*
   - *The cost/effort of avoidance outweighs the risk)*
4. Or is **not capable** of making an appropriate change,
5. Or **forgets** to change.

Adapted from Figure 1 in Ayres, T.J., Gross, M.M., Wood, C.W., Horst, D.P., Beyer, R.R. & Robinson, J.N. (1989). What is a warning and when will it work? <u>Proceedings of the Human Factors Society</u>, page 427.