UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ALICE G. SVEGE, ADMINISTRATRIX, ET AL. | : | NO. 3:01 CV 01771 (MRK) |
| Plaintiffs, | : | |
| VS. | : | United States District Court |
| | : | District of Connecticut |
| | : | FILED AT    NEW HAVEN |
| MERCEDES-BENZ CREDIT CORPORATION, | : | Aug. 10, 2004 |
| ET AL. | : | Kevin F. Rowe, Clerk |
| | : | By Kenneth R. Ghilardi |
| Defendants. | : | AUGUST 9, 2004   Deputy Clerk |

**DEFENDANTS RULE 50 MOTION FOR A DIRECTED VERDICT**

Pursuant to Rule 50(a)(1), Defendants move for a directed verdict. Defendants respectfully submit that Plaintiffs have failed to offer evidence upon which the jury could reasonably conclude either that the Freightliner truck at issue in this litigation is defective or unreasonably dangerous,[1] or that any allegedly defective feature of the truck was a proximate cause of the Plaintiffs' injuries.

I. **THERE IS NO EVIDENCE THAT THE DESIGN OF THE ENGINE BRAKE RENDERS THE ENGINE BRAKE OR THE TRUCK DEFECTIVE OR UNREASONABLY DANGEROUS[2]**

Plaintiffs have asserted that the Defendants could and should have implemented either the "service brake option" or the alternative design offered by their expert Samuel J. Sero that would permit switching back and forth between the service brake option and the system implemented

---

[1] For purposes of this Motion, by use of the terms "defective" and "unreasonably dangerous," Defendants intend to refer to the same legal standard. Thus, insofar as Defendants assert herein that the truck at issue is not "defective," they mean to indicate that it is neither defective nor unreasonably dangerous.

[2] This reference to whether "the design of the engine brake" renders the truck unreasonably dangerous and defective is intended to refer to any design characteristic of the vehicle other than warnings. Issues relating warnings are addressed in Parts II and II below.

on the subject vehicle. Although they have offered evidence that these alternatives are possible, they have not provided any evidence that the truck is defective or unreasonably dangerous without them.

### A.  PLAINTIFFS OFFERED NO OPINION THAT THE TRUCK IS DEFECTIVE

While testifying at trial, Plaintiffs' expert John C. Glennon offered the opinion that the truck was defective or unreasonably dangerous <u>when the engine brake is used on wet pavement</u>. He repeatedly and explicitly disavowed offering an opinion that the <u>truck itself</u> was defective or unreasonably dangerous.

Mr. Glennon's opinion, then, is really only that the <u>practice</u> of using the engine brake on wet pavement is unreasonably dangerous. If this opinion had a reliable basis, it would be pertinent to Plaintiffs' failure to warn claim. As set forth below, however, this opinion is without any basis, and Plaintiffs' failure to warn claim is without evidentiary support in any event.

### B.  GLENNON'S OPINION THAT THE TRUCK IS UNREASONABLY DANGEROUS WHEN THE ENGINE BRAKE IS USED ON A WET ROADWAY IS NOT BASED ON A RELIABLE METHODOLOGY

Defendants hereby renew their <u>Daubert</u> motion and ask the Court to strike Mr. Glennon's testimony in its entirety. Specifically, Defendants assert that Glennon's opinion that the truck at issue is unreasonably dangerous or defective when used on a wet roadway is not based on any methodology, much less a reliable methodology, but instead rests upon pure speculation or conjecture.

Mr. Glennon admitted that engine brakes have been in use on heavy trucks for over forty years, and that approximately 90% of all tractor trailers are now equipped with them. He estimated that the average tractor trailer truck currently in use travels 100,000-150,000 miles per

year. He did not understand that those trucks ordinarily drove only in dry conditions. Nonetheless, aside from the case at bar, he was unaware of a single accident that had been attributed to use of an engine brake, in wet weather or otherwise. He made no attempt to determine whether government or industry databases of accident information, or indeed any other sources, provided any information whatsoever relating to the frequency of accidents attributed to engine brake use, or, indeed, whether had ever been such an accident prior to this case.

Instead, according to his redirect testimony, Mr. Glennon based this opinion on (1) the fact that Defendants warn against using the engine brake on wet roadways, and (2) Mr. Radlinski's study (Plaintiffs' Exhibit 28). These two items do not provide a basis upon which it may be inferred with a reasonable degree of certainty that use of the engine brake on wet roadways is unreasonably dangerous.

It is respectfully submitted that warnings provided by Defendants tend to show, at most, that Defendants believed that warnings were appropriate in light of the possibility of lawsuits involving use of their products. Just as it may not be unreasonably dangerous to permit a child play with a particular toy unsupervised, even if the toy maker chooses to instruct against this practice on the advice of counsel or for other reasons, the fact that Defendants instruct operators not to use the engine brake on wet roadways does not provide a basis for an expert to conclude, with reasonable certainty or otherwise, that the product is defective or <u>unreasonably</u> dangerous if this instruction is disregarded.

Similarly, the Radlinski study provides little, if any, basis for the conclusion that it is possible for use of the engine brake on a wet roadway to result in loss of control under real-world conditions. It does not provide any basis for the conclusion that this practice is unreasonably

-3-

dangerous, even on vehicles without ABS.[3] As demonstrated at trial, Mr. Glennon was very generous in estimating the lateral friction demand on the vehicle driven by Scottie Wightman at the time of the accident. Thus, for example, he assumed that the radius of the curve was far lower than the curve of the roadway - 1336 feet instead of 1884 feet - notwithstanding the fact that, as he admitted, an articulated vehicle such as a tractor trailer truck would need to turn at a wider curve in order to keep the trailer within the lane. Even with the assumption that Mr. Wightman, a very experienced driver driving in the rain at 55-58 miles per hour along a downhill curve, turned much more sharply that the curve required, Glennon's calculation of the lateral friction demand at the time of the accident - the amount of friction necessary to maintain steering control - was only .1279. During his testimony, Glennon admitted that he did not know what the lateral friction demand had been in any of the test runs conducted by Radlinski. When he performed them with a calculator on the stand, however, he admitted that they were all at least .2083.[4] This number is 62.9% higher than the lateral friction demand calculated by Mr. Glennon.

In short, the fact that an engine brake can result in loss of control under the circumstances documented by Radlinski does not show that use of an engine brake can cause a loss of control in real world circumstances, even given the unwarranted assumption that an ABS makes no difference at all. As he confirmed at trial, Mr. Glennon's calculations and opinions were based on the assumption that, at the time of the accident, conditions were far outside the ordinary range of wet roadway conditions, due to what he described at his deposition as "extreme conditions . . .

---

[3] As the Court, Plaintiffs and Mr. Glennon are aware, Defendants contend that the fact that the vehicles tested by Radlinski had no ABS is one of many reasons for their lack of relevance to any opinion regarding the safety of the truck involved in this accident.

[4] Although Glennon noted that Radlinski referred to a truck having a lateral friction demand of 0.14, Radlinski indicates that this number comes from "[e]xamination of results from simulations of vehicle performance in turning maneuvers," and not from any test. See Ex. 28 at 2.

. extreme weather, large amounts of water on the road, things like that." Cont'd Dep. of John C. Glennon Jr. at 307 (attached as Ex. 3 to <u>Defendants' Memorandum of Law in Support of their Motion to Preclude Testimony of Plaintiffs' Experts, Glennon, Sero, and Clement, and for Summary Judgment</u>, Apr. 13, 2004). As set forth above, he also assumed that Wightman, despite his high speed and the amount of water on the roadway, went around the curve at a far sharper angle than the design of the road itself anticipated, or than would be necessary to keep the trailer in the lane. Even under all of those real or hypothetical circumstances, the lateral demand for friction was far lower than had ever been shown to result in loss of control due with an engine brake engaged. In light of this, it is respectfully submitted that there is no evidence, and no basis for a reasonable inference, that it is even possible for an engine brake to cause loss of control under even the most extreme real world circumstances. More importantly, even if it is assumed that this is indeed technically <u>possible</u>, there is certainly no basis in the evidence for the conclusion that this possibility is sufficiently realistic or likely as to render use of the engine brake on a wet roadway unreasonably dangerous.[5]

### C.    WITH OR WITHOUT GLENNON'S OPINION, THERE IS NO BASIS UPON WHICH THE JURY COULD CONCLUDE THAT THE DESIGN OF THE ENGINE BRAKE RENDERED THE TRUCK UNREASONABLY DANGEROUS

Although a jury may find that a truck or engine brake is defective or unreasonably dangerous without hearing expert testimony to that effect, it is respectfully submitted that such a finding would require <u>some</u> basis in the evidence. It is respectfully submitted that, in the present case, such a finding would require evidence based upon which the jury reasonably could find

---

[5] Of course, when weather or roadway conditions are sufficiently bad, <u>any</u> use of the truck, with or without the engine brake, will be unreasonably dangerous. It is respectfully submitted that the danger of using the truck under sufficiently extreme circumstances is open and obvious.

-5-

either (a) that the truck would be safer without an engine brake than with one, or (b) that an alternative design of the engine brake not only would have prevented the accident at issue, but also is safer than the existing system to a sufficient degree that failure to implement it renders the truck defective or unreasonably dangerous. There is no basis upon which the jury reasonably could draw either of these inferences.

### 1. There is no basis for the inference that the subject vehicle would be safer without an engine brake than with one

It is undisputed, and Glennon admits, that the engine brake is in fact a safety device which increases braking power of heavy trucks and prevents overheating or fading of the service brakes. Even assuming that it is possible for use of the engine brake to result in loss of control under some circumstances, there is no evidence upon which it could reasonably be inferred that the fact that this vehicle was equipped with an engine brake rendered it unreasonably dangerous. Plaintiffs do not assert that the presence of the engine brake rendered this vehicle defective or unreasonably dangerous or that the truck would have been safer without an engine brake than it was with the engine brake.

### 2. There is no basis for the conclusion that failure to implement any alternative design for the engine brake rendered the truck defective or unreasonably dangerous

Plaintiffs have asserted that the design of the engine brake, as implemented in this vehicle, rendered the vehicle unreasonably dangerous. Plaintiffs have offered two design alternatives, namely, the service brake option, under which the engine brake comes on only when the service brake pedal is depressed, and the design offered by Sero permitting the truck to be switched back and forth between the service brake option and the system actually implemented.

-6-

Although Defendants concede that Plaintiffs are not required, as a matter of law, to provide an alternative design, Defendants respectfully submit that there is no evidence upon which it could reasonably be found that any alternative design would have had safety advantages that outweighed those of the system implemented. It follows from this that there is no evidence that the engine brake on the subject vehicle was defectively designed.

As noted above, Mr. Glennon's only opinion regarding whether the truck or any of its components was in any way defective or unreasonably dangerous was that use of the engine brake on wet roadways was unreasonably dangerous. Mr. Sero was precluded from offering any opinion that any design option would be better than any other. In addition, Glennon testified that, to the best of his knowledge, no truck manufacturer had implemented the service brake option, and thus, to the best of his knowledge, no trucks actually use it. There is an obvious risk that, by requiring use of the service brake in order to activate the engine brake, the service brake option would undercut one of the primary safety advantages of the engine brake, namely, its ability to prevent overheating or fading of the service brakes. Despite this, Mr. Glennon testified that he had done no analysis of the risks and benefits that would be associated with use of the service brake option, and the Plaintiffs have not provided an adequate basis upon which the jury could perform such an analysis.

In summary, Plaintiffs ask that the jury find that approximately 90% of trucks on the road today are unreasonably dangerous, despite having presented no evidence that the allegedly dangerous feature has <u>ever</u> resulted in an accident or other harm outside of in present case, and despite having presented no opinion testimony that might have been subject to cross-examination to the effect that an alternative design would have been safer. Defendants respectfully submit that the evidence in this case, viewed in the light most favorable to the Plaintiffs, can not support

-7-

a reasonable inference that the design of the engine brake rendered the truck at issue defective or unreasonably dangerous.

## II. THERE IS NO EVIDENCE THAT THE PLAINTIFFS' INJURIES WOULD NOT HAVE OCCURRED IF THE DEFENDANTS HAD PROVIDED DIFFERENT OR ALLEGEDLY SUPERIOR WARNINGS OF ANY KIND

Even if the Defendants had a duty to issue warnings with regard to use of the engine brake, and even if Defendants breached that duty, Plaintiffs have provided no evidence based upon which it could reasonably be inferred that that breach was a proximate cause of the Plaintiffs' injuries. Specifically, Plaintiffs have provided no evidence that their injuries would not have occurred if Defendants had placed warnings in a different location or if Defendants had provided additional information in warnings. Where the evidence does not support a finding that Plaintiffs' injuries were caused by an alleged failure to warn, a Court may "properly reject a failure-to-warn theory as a matter of law." Lamontagne v. E.I. Du Pont de Nemours & Co., 41 F.3d 846, 859-60 (2d Cir. 1994)(citations omitted).

### A. THERE IS NO EVIDENCE THAT THE PLAINTIFFS' INJURIES WOULD NOT HAVE OCCURRED IF THE DASHBOARD HAD BEEN EQUIPPED WITH AN INDICATOR LIGHT OR ANY OTHER INDICATION RELATING TO THE ENGINE BRAKE

As further set forth in Defendants' Second Supplemental Memorandum of Law in Support of Their Motion to Preclude Testimony of Plaintiffs' Expert David E. Clement, under Connecticut law, a party may prevail on a failure to warn claim only if the evidence supports a finding that the injuries suffered would not have occurred if a more effective warning had been in place.[6] Thus, under Connecticut law, causation in a failure to warn case is not presumed but

---

[6] Conn. Gen. Stat. § 52-572q (c); see also DeJesus v. Craftsman Mach. Co., 16 Conn. App. 558, 573, 548 A.2d 736 (1988).

-8-

must be proven. As also set forth in that Memorandum, the evidence in the present case is not sufficient to support a finding that any failure to warn of dangers associated with the use of the engine brake proximately caused the Plaintiffs' injuries. With regard to the indicator light Plaintiffs assert should have been installed, there is no evidence that it would have any tendency to alter the behavior of experienced drivers in general, particularly given the presence of other indicators of engine brake status in the cab, especially the noise of the engine brake itself. More importantly, there is no evidence that an additional indicator would have altered the behavior of Mr. Wightman, personally. It is respectfully submitted that such a determination would be no less speculative if made by a jury than if made by Dr. Clement.

### B. THERE IS NO EVIDENCE THAT THE PLAINTIFFS' INJURIES WOULD NOT HAVE OCCURRED IF THE DEFENDANTS HAD PROVIDED WARNINGS THAT CONTAINED DIFFERENT OR ADDITIONAL INFORMATION

Plaintiffs have suggested that Defendants should have provided warnings to truck operators that (a) explained not only that use of the engine brake in wet conditions could cause loss of control, but also that once lost, control could not be regained, and (b) emphasized the potentially catastrophic consequences of loss of control. It is respectfully submitted that the evidence does not support a finding of liability on this basis.

First, as discussed in Part III.A above, there is simply no evidence in the present case that any kind of different warning would have altered Mr. Wightman's behavior. This lack of evidence of "but-for causation" is particularly striking with regard to alleged deficiencies in written warnings provided in operators' manuals, because the evidence is undisputed that Mr. Wightman did not read those manuals. Second, it is respectfully submitted that an experienced truck driver can be expected to understand that loss of control ordinarily <u>means</u> an inability to

-9-

regain control. It is further respectfully submitted that the evidence does not support a finding that any failure to advise Mr. Wightman that a loss of control might constitute or result in an inability to regain control could have contributed to this accident, in part because there no basis upon which it could reasonably be inferred that he was not aware of this.

Finally, Defendants respectfully submit that the fact that loss of control of a tractor trailer can lead to catastrophic accidents is unquestionably an open and obvious danger associated with loss of control of a tractor trailer. This is true even if loss of control can result from dangers that are themselves no open and obvious. "The Connecticut Product Liability Act . . . does not impose a duty to warn of known or open and obvious dangers, and, accordingly, there can be no liability for injuries resulting from open, obvious and known dangers." Gajewski v. Pavelo, 36 Conn. App. 601, 617, 652 A.2d 509 (Conn. App. 1994)(citation omitted). Thus, Defendants' alleged failure to emphasize the catastrophic consequences associated with the loss of control of a tractor trailer can not give rise to liability for Plaintiffs' damages under Connecticut law.

Furthermore, under Haesche v. Kissner, 229 Conn. 213, 640 A.2d 89 (1994), the awareness of pertinent dangers that Mr. Wightman did have precludes a finding of causation as a matter of law.[7] In that case, the plaintiff, sixteen year old Haesche, "suffered serious injury to his eye" as a result of being hit by a BB fired from an air rifle operated by Kissner, who was seventeen years of age. Id., 229 Conn. 214-15. The injury occurred during the course of an activity known by the participants as "war games," in which Haesche, Kissner, and two other

---

[7] But see Battistoni v. Weatherking Prods., 41 Conn. App. 555, 676 A.2d 890 (1996) (holding, without distinguishing Haesche, that whether failure to warn a twelve year old child of dangers relating to diving into an insufficiently deep swimming pool was a question for the jury where the child testified that while she was aware that there were some risks associated with diving into the pool, she did not realize that serious harm could result therefrom). It is respectfully submitted that the age of the child in Battistoni serves to distinguish that case both from Haesche v. Kissner and from the present case.

-10-

youths aged fifteen and sixteen "went to a wooded area, divided into two teams, dispersed and began hunting for and shooting at each other." Id. at 215.

The plaintiff sued, inter alia, the manufacturer of the air rifle, Coleman Company, Inc. (Coleman), alleging "that Coleman's failure to provide adequate warnings regarding the ability of the [air rifle] to cause serious eye injury violated the Product Liability Act . . . ." Id. at 215. The trial court granted summary judgment in favor of Coleman, finding that "genuine issue of material fact regarding whether the conduct of [Coleman] was the proximate cause of the named plaintiff's injuries,"[8] and the Supreme Court affirmed.[9] Id. at 214.

The Supreme Court explained that

> Generally, questions regarding the existence of a causal link are reserved for the trier of fact . . . however, the issue becomes one of law "when the mind of a fair and reasonable [person] could reach only one conclusion . . . ." . . . . In the present case, the plaintiff alleged that Coleman had failed to warn Kissner of the possibility that a BB shot from the air rifle that he had purchased could seriously injure a person's eye. To prevail on his failure to warn claim, the plaintiff had the burden of proving that if the product had

---

[8] The trial court granted summary judgment in favor of Coleman on the product liability claim as a result of concluding "both that the risk of serious eye injury was an open and obvious danger of which Coleman had no duty to warn, and that the alleged failure to warn could not have proximately caused the plaintiff's injury." Haesche v. Kissner, 229 Conn. at 216. The Supreme Court, however, affirmed

> because, on the basis of the evidence before the trial court, a fair and reasonable person could conclude only that the failure to warn did not cause the plaintiff's injuries. We, therefore, do not address the issue of whether, under Connecticut law the risk of serious eye injury resulting from misuse of a BB gun is so "open and obvious" a danger as to obviate a manufacturer's duty to warn.

Id. at 217. Consequently, the Supreme Court's decision in that case applies even where the danger at issue is not "open and obvious."

[9] As the Court noted in Haesche, "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party . . . . The test is whether a party would be entitled to a directed verdict on the same facts." Id. (citation omitted). Thus, this case applies to a motion for a directed verdict just as it would apply to a motion for summary judgment.

-11-

>contained an adequate warning, Kissner would not have participated in the war games and, as a result, the plaintiff would not have suffered a serious eye injury.

Id. at 218-19 (citations omitted).

>In support of its motion for summary judgment, Coleman presented affidavits, deposition testimony, and other documentary evidence tending to show that no warning would have changed Kissner's behavior. . . . Kissner was familiar with the operation and potential power of the air rifle. . . . . Kissner further testified that he had known that a BB shot from the [air rifle] could seriously injure a person's eye. . . . . Kissner also testified that at the time of the shooting he had known that his parents disapproved of his using BB guns . . . . [and] that he had been so concerned with concealing his purchase that he had never looked at the outside or the inside of the gun's box for any written warnings or instructions. Most importantly, Kissner testified that his father had instructed him in the use of and dangers posed by the misuse of BB guns. . . . Kissner's father had warned him explicitly "not to point [the gun] at anybody" and that a person was "not supposed to shoot BBs at people. It's dangerous."

Id. at 219-21.

The plaintiff offered depositions of two expert witnesses. The first was to the effect that "the warnings accompanying the [air rifle] had been inadequate, that the dangers presented by air rifles are not publicly known and are not adequately perceived through common sense, and that the failure to provide proper warnings had rendered the [air rifle] defective," and the second was to the effect that the air rifle was defective because it was too powerful for its intended use, target shooting. Id. at 221. Perhaps most significantly, "[t]he plaintiff also noted that, in response to a request for admissions, Kissner had indicated that prior to the shooting he had not known that a BB could penetrate the eye." Id.

>Notwithstanding this, the Supreme Court concluded that
>
>[v]iewing this evidence in the light most favorable to the plaintiff, we conclude that a fair and reasonable person could not conclude that a warning would have altered Kissner's behavior. Although Kissner stated in his response to the plaintiff's request for admission that he did not know a BB could actually penetrate the eye, he testified in his deposition that he was aware that serious eye injury could result from his misuse of the [air rifle]. Furthermore, despite this knowledge, Kissner wilfully disregarded and disobeyed his parent's explicit warnings and prohibitions regarding the use of air rifles. Conversely, the evidence offered by the plaintiff in opposition does not substantiate his adverse claim. The testimony of the plaintiff's experts bears on the issue of the adequacy of the warnings

-12-

in the abstract, but does not refute Coleman's assertion that no warning would have altered Kissner's behavior.

Id. at 221-22. Defendnats submit that, in light of the evidence in the case at bar, they are entitled to a directed verdict under Haesche.

In fact, Defendants respectfully submit that, if anything, it is even more clear in the present case that a directed verdict should issue. While Kissner was a minor, Scottie Wightman is a professionally trained and licensed commercial driver of many years experience. Wightman's testimony demonstrates that he was in the habit of turning off the engine brake when he encountered a wet roadway. Unlike Kissner, Wightman has never suggested that he was unaware of the full extent of the dangers he allegedly faced or the harm he might cause. Finally, while the Supreme Court states that Kissner "wilfully disregarded and disobeyed his parent's explicit warnings and prohibitions regarding the use of air rifles," the case indicates that the warnings were no more explicit than the statement that Kissner was "'not to point [the gun] at anybody' and . . . was 'not supposed to shoot BBs at people. It's dangerous.'" Id. at 221, 222. The warnings were not explicit with regard to the extent of damage that could occur if in fact a person was hit by a BB.

In summary, Defendants respectfully submit that Plaintiffs have failed to provide any evidence that, if the Defendants had provided different and allegedly superior warnings in any form, the injuries suffered by Plaintiffs would not have occurred. Accordingly, Defendants respectfully submit that they are entitled to a directed verdict on Plaintiffs' failure to warn claim.

### III. THE EVIDENCE DOES NOT SUPPORT SEPARATE INSTRUCTIONS OR INTERROGATORIES RELATING TO NEGLIGENCE OR IMPLIED WARRANTY

As set forth above, Defendants assert that the evidence does not support a finding of liability against them under any theory. Even if it did, however, Defendants respectfully submit that the evidence in this case does not justify submitting to the jury separate instructions or interrogatories relating to negligence or implied warranty.

If the evidence presented to the jury could support findings (a) that Plaintiffs were not entitled to recover in strict liability under the Connecticut Products Liability Act (CPLA), and (b) that Plaintiffs were entitle them to recover under a theory of negligence or implied warranty, an instruction on negligence or implied warranty would be appropriate. See Densberger v. United Techs. Corp., 297 F.3d 66 (2d Cir. 2002). Based on the allegations and the evidence in the present case, however, any claim Plaintiffs may have under either theory would also necessarily entitle them to recover under a theory of strict liability. Put differently, Defendants concede that, if Plaintiffs could prove that the Freightliner truck at issue was defective and unreasonably dangerous, and that the fact that it was defective or unreasonably dangerous was a proximate cause of the Plaintiffs' losses, Plaintiffs would be entitled to recover damages. Plaintiffs need not prove the additional elements necessary to establish negligence or breach of implied warranty in order to recover, and instructing the jury on elements that the Plaintiffs need not prove would risk unnecessary confusion.

Defendants submit that Densberger is not to the contrary. In that case,

> because an element of strict liability required the jury to find that "the defect existed at the time of sale" and because an element of breach of implied warranty of merchantability required the jury to find that UTC sold goods "which were not merchantable at the time of sale," the court instructed the jury to consider UTC's liability for breach of a manufacturer's post-sale, "continuing duty to warn of all known or knowable dangers associated with using its product" under the plaintiffs' negligence theory of liability only.

Densberger v. United Techs. Corp., 125 F. Supp. 2d 585, 594 (D. Conn. 2002). Subsequently,

> the jury, answering interrogatories on a special verdict form, found UTC liable in negligence for failing to warn the Army that the helicopter could become uncontrollable during foreseeable flight conditions. The jury rejected all other grounds of liability, including those based on failure to warn under the strict liability and implied warranty theories.

Densberger, 297 F.3d at 69.

The issue before the Second Circuit was whether Connecticut recognized a post-sale duty by product sellers to warn of hazards associated with the products sold,. The Second Circuit agreed that "while duty to warn for strict product liability is attributed only at the time of sale, duty to avoid negligence in failure to warn persists in post-sale situations." Id. at 71. The Court further concluded that an action for negligence relating to failure to warn that was not covered by the CPLA was also not precluded by it. Id. at 70.

The Court did not directly address the propriety of the jury instructions. It may clearly be inferred that a separate instruction on negligence was proper in the circumstances of that case, because the jury could find the defendants not liable in strict liability or under an implied warranty while simultaneously finding them liable in negligence. It is respectfully submitted, however, that it would have been inconsistent for the jury to find liability in either strict liability or implied warranty, but not the other. Densberger does not address whether this would have been inconsistent, nor does it address, directly or indirectly, whether it was proper to submit separate instructions or special interrogatories on these subjects to the jury, because that subject was not germane to the issue on appeal. It is Defendants' position that separate charges on strict liability and implied warranty would be inappropriate in the present case, and that different jury findings with regard to those theories would necessarily be inconsistent.

It is further respectfully submitted that, in the present case, a separate charge on negligence would also be inappropriate, because, under the facts alleged in the present case, it

would be inconsistent for the jury to find that the Defendants are liable in negligence while finding that they are not liable under a strict liability theory. Plaintiffs have asserted that the truck at issue had defects of two varieties, concerning (1) the design of the engine brake itself, i.e., the circumstances upon which it could be engaged, and (2) warnings associated with the truck. The first of these two sorts alleged defect existed, if at all, at the time of sale. It is respectfully submitted that it would be unnecessary and inappropriate to instruct the jury that it might find the Defendants liable for that alleged defect under a theory of negligence or implied warranty, because any such finding would necessarily require a finding of the elements of a strict liability claim. It is further respectfully submitted that this conclusion is fully consistent with the Second Circuit's ruling in <u>Densberger</u>.

Regarding the second alleged defect, Plaintiffs could have, but did not, allege that the Defendants <u>negligently</u> failed to warn of dangers associated with this truck. Instead, their complainnt alleges that

> The Defendants are liable ... <u>pursuant to</u> [the] <u>Connecticut Product Liability Act</u> ... because ... the crash ... was caused and contributed to by the defendants and/or their agents, servants, and employees, in that they <u>negligently</u> designed, manufactured, tested and inspected the Freightliner tractor with a defectively designed component diesel engine and its engine brake which would cause wheel lockup on wet and slippery roadways, <u>or</u> that they are <u>strictly liable because said component engine and its engine brake were in a defective condition in that adequate warnings and instructions were not provided</u> with regard to the use of the engine brake in heavy rain conditions ... and said defective condition existed when the Freightliner tractor was sold, leased and placed in the stream of commerce and continued in existence without substantial change up to and including the time of the crash.

Amended Substituted Complaint and Request for Trial by Jury at ¶ 40. Thus, the Plaintiffs have not alleged that Defendants are liable in negligence for failure to warn. Just as important, Plaintiffs have never suggested that Defendants learned of the alleged defect in the truck after the product was sold but before the accident occurred.

-16-

Densberger would require that the Court instruct the jury on negligence only if, in light of the evidence, the jury could reasonably find (a) that the truck at issue was not unreasonably dangerous at the time of sale, despite the warnings it had or did not have, but (b) at some time between the sale and the accident, Defendants breached a duty to warn of the dangerous propensities of the truck. Otherwise, it is respectfully submitted that Densberger is inapplicable. Plaintiffs have never sought to amend their pleadings to assert a negligent failure to warn, nor have they ever suggested that the evidence could permit a finding that the truck was not unreasonably dangerous at the time of sale but that Defendants nonetheless breached a duty to warn after the sale but before the accident. For these reasons, it is respectfully submitted that Densberger is not on point and that Plaintiffs are entitled to recover, if at all, in strict liability.

## IV.   THE EVIDENCE DOES NOT SUPPORT AN AWARD OF PUNITIVE DAMAGES

Under Conn. Gen Stat. § 52-240b, titled "Punitive damages in product liability actions," "[p]unitive damages may be awarded if the claimant proves that the harm suffered was the result of the product seller's reckless disregard for the safety of product users, consumers or others who were injured by the product." No evidence would support such a finding in this case. As set forth at length above, there is no evidence that there have been any actual accidents arising from use of the engine brake, on wet roadways or otherwise. As also set forth at length above, what little evidence there is that such a result is possible is based on a study done on trucks without ABS.

Under the CPLA,

> In order to survive a motion to strike a claim for punitive damages based on . . . 52-240b, the allegations of the complaint must allow for the presentation of facts necessary to show a reckless disregard for the safety of product users. . . . The mere use of the word "reckless" in a pleading is insufficient to raise an actionable claim without some factual allegations in support thereof . . . To satisfy a claim of recklessness, the defendant's acts

-17-

must be alleged to have been done with a reckless indifference to the interests of others. Walden v. Service Merchandise, No. CV 000070248S, 2000 Conn. Super. LEXIS 2498, *3 (Sept. 21, 2000) (attached hereto as Exhibit A). In the present case, Plaintiffs have alleged that Scottie Wightman acted recklessly. See Plaintiffs' Amended Substituted Complaint and Request for Trial By Jury, filed Jan. 8, 2002, ¶¶ 27, 31, 52, 72. Plaintiffs' Complaint does not allege that Defendants acted recklessly. See id. ¶ 40 (alleging that Defendants acted negligently or were strictly liable). More importantly, Plaintiffs have never alleged that any Defendant committed any act in reckless disregard for the safety of anyone, and the evidence would not support a finding that any Defendant has done so. Accordingly, even if the Court denies this Motion to Dismiss with regard to Defendants' liability in other respects, Defendants respectfully request that the Court dismiss Plaintiffs' claims for punitive damages.

>Respectfully submitted,
>
>DEFENDANTS,
>FREIGHTLINER CORPORATION,
>MERCEDES-BENZ CREDIT
>CORPORATION, and
>DETROIT DIESEL CORPORATION
>
>By_____
>Paul D. Williams (ct05244)
>Daniel J. Foster (ct24975)
>Day, Berry & Howard LLP
>CityPlace I
>Hartford, Connecticut 06095-3499
>(860) 275-0100
>(860) 275-0343 (fax)
>Their Attorneys