UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ALICE G. SVEGE, ADMINISTRATRIX, ET AL. | : | NO. 3:01cv01771 (MRK) |
| | : | |
| Plaintiffs, | : | |
| VS. | : | |
| | : | |
| MERCEDES-BENZ CREDIT CORPORATION, ET AL. | : | |
| | : | |
| Defendants. | : | SEPTEMBER 8, 2004 |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFFS' MOTION FOR NEW TRIAL**

Defendants Freightliner Corporation, Mercedes-Benz Credit Corporation and Detroit Diesel Corporation (hereinafter "Defendants"), respectfully submit this Memorandum of Law in opposition to Plaintiffs' Motion for New Trial. Plaintiffs have failed to meet their burden of showing that prejudicial error "crept into the record or that substantial justice has not been done," and its Motion for New Trial should accordingly be denied. *Schwartz v. Fortune Magazine*, 193 F.R.D. 144, 145 (S.D.N.Y. 2000).

**I.      FACTUAL BACKGROUND**

Plaintiffs suffered injuries, including death, as a result of a collision between the Chevrolet Suburban in which they were traveling and a tractor trailer truck manufactured or sold by Defendants.[1] Plaintiffs' counsel conceded during opening and closing arguments that the driver of the truck, Scottie Wightman, was driving too fast for the prevailing conditions. Plaintiffs maintained that the accident was also caused in substantial part by the driver's alleged use of the engine brake on a wet roadway. Plaintiffs further maintained, inter alia, that the truck

---

[1] Defendants continue to maintain that Mercedes Benz Credit Corp. is not in fact a "product seller" within the meaning of the Connecticut Product Liability Act.

at issue was defectively designed (1) because it did not permit the driver to switch on the "service brake option," under which the engine brake would be on only when the service brake pedal was depressed, during inclement weather, and (2) because warnings provided with the truck were allegedly inadequate.

Defendants asserted, inter alia, that the engine brake could not have caused the accident (1) because the evidence strongly indicated that the engine brake was not on at the time of the accident, (2) because the coefficient of friction was not low enough to cause loss of traction, and (3) because the physical evidence indicated that loss of traction did not and could not have occurred, either before or after the truck made its initial contact with barrier to its right. Defendants further asserted that the truck was not defective or unreasonably dangerous, because an engine brake that can be used independent of the service brake is a necessary safety device, because there is no evidence that an engine brake has ever caused an accident, and because there is no evidence that it is possible for an engine brake to cause a loss of control on a vehicle equipped with an antilock brake system. With regard to the allegations regarding warnings, Defendants asserted that the warnings were not inadequate, and that any deficiency in the truck's warnings could not have caused the accident in any event, in part because the driver was already aware of the dangers allegedly associated with use of the engine brake.

On September 2, 2004, Plaintiffs filed a Motion for New Trial on the grounds that the judgment was against the weight of the evidence. Plaintiffs bear, and have not met, the heavy burden of demonstrating that they are entitled to a new trial.

## II.     LEGAL ARGUMENT

### A.     Legal Standard

"[I]t is well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Sequa Corp. v. GBJ Corp.*, 159 F. 3d 136, 144 (2d Cir. 1998).  Thus, "'[a] trial court should not grant a new trial simply because, like the proverbial second bite at the apple, the losing party believes it can present a better case if afforded another chance.'" *GTFM, Inc. v. Solid Clothing, Inc.*, No. 01 Civ. 2629 (DLC), 2002 U.S. Dist. LEXIS 24620, at *2 (S.D.N.Y. Dec. 27, 2002) (*quoting Libutti v. United States*, 178 F. 3d 114, 118-19 (2d Cir. 1999))(attached hereto as Ex. A); *see also* Charles A. Wright et al., Federal Practice & Procedure § 2804, at 53 (2d ed. 1995) ("A motion for new trial … should be based upon manifest error of law or mistake of fact, and a judgment should not be set aside except for substantial reasons.").

"A motion for a new trial will not be granted 'unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done.'" *Metromedia Co. v. Fugazy*, 753 F. Supp. 93, 96 (S.D.N.Y. 1990) (quoting 11 C. Wright & A. Miller, Federal Practice and Procedure § 2803 at 32 (1973)).  "Absent a showing of clear error or manifest injustice, it will generally be appropriate to deny relief pursuant to Rule 59 since litigants should neither be required nor without good cause permitted to relitigate already-decided matters." *Bergstein v. Jordache Enterprises, Inc.*, No. 90 Civ. 1461, 1996 U.S. Dist. LEXIS 6894, at *4 (S.D.N.Y. May 17, 1996)(attached hereto as Ex. B).

A party moving for a new trial under Rule 59 of the Federal Rules of Civil Procedure must demonstrate that the jury "has reached a seriously erroneous result or that the verdict is a miscarriage of justice." Smith v. Lightning Bolt Production, Inc., 861 F.2d 363, 370 (2d Cir.

1988) (denying motion for new trial where, based on the evidence, the party seeking new trial failed to establish the verdict was a seriously erroneous result warranting new trial). Although "a motion for a new trial may be granted even if there is substantial evidence to support the jury's verdict, . . . . where the resolution of the issues depended on assessment of the credibility of the witnesses, it is proper for the court to refrain from setting aside the verdict and granting a new trial." Densberger, 125 F. Supp. 2d 585, 597 (D. Conn. 2000), *aff'd*, 297 F.3d 66 (2d Cir. 2002) (citations and internal quotation marks omitted); *see also id.* at 597-98 (refusing to grant a new trial where "the court finds that there is ample evidence in the record to support the jury's verdict").

### B. Plaintiffs' Motion for New Trial Fails to Show That The Verdict is Against the Weight of the Evidence

Plaintiffs argue, in effect, that they were entitled to findings in their favor because the evidence in favor of the Defendants was "greatly outweighed . . . by the Plaintiffs' evidence." (Pls.' Mot. for New Trial at 2.) As set forth below, this is far from the truth. This statement also disregards the fact that Plaintiffs have the burden of proof on all issues in this case. Thus, while Plaintiffs begin the argument in favor of their Motion with an assessment of alleged deficiencies in Defendants' evidence, Defendants were not required to introduce any evidence. The jury was entitled to disregard or disbelieve that evidence put on by the Plaintiffs, particularly in light of the weaknesses in their case exposed upon cross-examination of Plaintiffs' experts Messrs. Glennon and Sero.

### 1. The jury could reasonably have found that the engine brake was not on at the time of the accident

The simplest and most obvious possible basis for the jury's finding that no alleged defect relating to the engine brake caused the Plaintiffs' injuries is the one emphasized by the Court to Plaintiffs' counsel during a charging conference when the latter incorrectly asserted that the existence of a defect would establish causation as a matter of law. Specifically, the jury could have determined that the Plaintiffs failed to prove that Mr. Wightman had the engine brake on at the time of the accident. Such a finding would be in accordance with, and not contrary to, the great weight of the evidence.

Plaintiffs rely heavily on a statement by Mr. Wightman that he was uncertain whether the engine brake was on at the time of the accident. Wightman, however, also stated repeatedly that the engine brake was in fact off at the time of the incident, and the jury was entitled to credit this testimony. At no time did Wightman testify to the contrary that he believed the engine brake had been on. Furthermore, he testified both that it was his habit to turn it off in the rain in general, and that it was his intention to have it off on the morning in question in particular.

The engine brake makes a loud noise when on, and Plaintiffs do not deny that Wightman would have heard the noise on the morning of the accident. Indeed, they assert that he did hear the noise, and that the noise he identified as a single pop sounding like a .357 magnum handgun was in fact the noise of the engine brake. The jury heard testimony that while the engine brake does cause "pops" as air is forced out of the engine cylinders, the engine brake in fact makes a continuous noise because this popping occurs ninety times per second. The jury was also entitled to credit this testimony, which was uncontradicted. Indeed, the jury could plainly hear the noise made by the engine brake when Plaintiffs' counsel played the videotape of Mr.

Koepke's August 2003 demonstration of the interaction between the engine brake and the antilock brake system.

Thus, the evidence clearly indicated, and the jury could reasonably have believed, that if Mr. Wightman had not turned off the engine brake switch when he entered the Pennsylvania Turnpike, as he stated was his "best recollection," he would have heard this noise every time he took his foot of the throttle during the hundreds of miles that the evidence indicated he had traveled on the Pennsylvania Turnpike. From this they could reasonably have concluded (a) that if indeed he had forgotten to turn off the engine brake when he intended to, he would have turned it off when reminded by the noise long before reaching the scene of the accident, and (b) that any noise he heard only once and could not identify, such as the single loud pop he reported hearing, could not have been the engine brake.

Finally, Plaintiffs note that a photograph taken more than seven weeks after the incident showed the engine brake switches in the "on" position. The jury was not required to assume that the position of these switches did not change during or after the accident, particularly because (a) there was evidence that the driver was unrestrained at the time of the accident and may have inadvertently collided with the switches, (b) Plaintiffs were unable to discount the possibility that, before the picture was taken, someone else entered the cab, which the evidence showed had a large hole at the back and was not covered by a tarp, (c) the cab was so deformed as a result of the accident that it was not even possible to determine in what gear it had been, and (d) at some point after the accident, after Mr. Wightman called for emergency assistance on citizens' band (C.B.) radio channel 9, the position of the C.B. channel switch was also altered, although there was no apparent motive for altering it intentionally.

In summary, even if the evidence could have been sufficient to support a finding that the engine brake was on at the time of the accident, the weight of the evidence strongly suggests that it was not.  The jury therefore could reasonably have determined that Mr. Wightman did not have the engine brake on at the time of the accident.  Such a determination would be consistent with, and indeed would require, a finding that no alleged defect in the truck or negligence by the Defendants was a proximate cause of Plaintiffs' injuries.

> **2.      Even if the jury did not determine that the engine brake was off at the time of the accident, the jury could reasonably have found that the accident was not caused by use of the engine brake**

Plaintiffs assert that use of the engine brake caused the truck to lose traction, which in turn resulted in a loss of control.  To the contrary, the evidence strongly suggests that the accident was not caused by a loss of traction.  Common sense, and the explanation of "traction" provided to the jury, indicate that if a vehicle loses traction, it will no longer move in the direction in which its wheels are pointed, but will instead continue to move in the direction in which its momentum carries it.  It follows form this that if a truck loses traction on a road that curves to the right, it will strike the barrier on the left side.  In the present case, the truck first struck the barrier to its right, meaning that it was turning at a sharper angle than that of the road itself, rather than going straight ahead as the road curved.  According to both common sense and Mr. Howerton's testimony, this could not happen if there had been a loss of traction.  Mr. Howerton further explained at length why the physical evidence on the roadway indicated that the motion of the truck across the roadway after striking the barrier on its right was inconsistent with the possibility that the coefficient of friction was low enough to cause loss of traction, because otherwise the truck would have continued to move along its own side of the road and

would have struck the barrier on the left farther down the road and at a shallower angle. The jury was entitled to credit this testimony, which was not seriously undermined by cross-examination.

Plaintiffs incorrectly assert that Howerton's opinion that "the engine brake could not cause loss of control under the conditions that existed in the tractor or on the roadway" at the time of the accident "is negated by" the jury's finding that the Defendants did not provide adequate warnings that "use of the engine brake on a wet and slippery road *could* lead to loss of control." (Pls.' Mot. for New Trial at 2-3 (emphasis added).) The premise that it is *possible* for an engine brake to cause loss of control under some circumstances is fully consistent with the finding that it could not have caused loss of control in this case.

>   3.  **The jury's finding that no deficiency in the warnings provided with the truck was a proximate cause of the Plaintiffs' injuries is consistent with the weight of the evidence**

Plaintiffs maintain that the jury was required, based on the evidence, to find that deficiencies in warnings provided with the truck proximately caused Plaintiffs' injuries. As set forth at greater length in Defendants' Rule 50 Motion for a Directed Verdict,

> Even if the Defendants had a duty to issue warnings with regard to use of the engine brake, and even if Defendants breached that duty, Plaintiffs have provided no evidence based upon which it could reasonably be inferred that that breach was a proximate cause of the Plaintiffs' injuries. Specifically, Plaintiffs have provided no evidence that their injuries would not have occurred if Defendants had placed warnings in a different location or if Defendants had provided additional information in warnings.

(Defs.' Rule 50 Mot. for a Directed Verdict at 8.)

In their Motion for a New Trial, Plaintiffs state that "Wightman was not aware that loss of vehicle control meant irreversible loss of control . . . ." (Pls.' Mot. for New Trial at 14.) Although Plaintiffs represent that this contention is a fact, it was not found by the jury and is not supported by either a shred of evidence or by common sense. Similarly, any suggestion that

Wightman – an experienced driver – was not fully aware of the "catastrophic consequences" that can result from loss of control of a tractor trailer is both absurd as a matter of fact and irrelevant as a matter of law. See Haesche v. Kissner, 229 Conn. 213, 221-22, 640 A.2d 89 (1994).

In an effort to identify *some* evidence that failure to warn could have caused this accident, Plaintiffs cite out of context statements made by Mr. Wightman. Specifically, they left out the underlined portion of the following testimony:

```
 5    Q  Okay. When you refer to instrumentation, would
 6  that include the electronic switch for the engine brake that
 7  is --
 8    A  In some instances, yes.
 9    Q  Was that part of your routine to check that as
10  part of your instrumentation as you commonly did your
11  sweeps?
12    A  In this particular incident, no.
13    Q  How about during the course of driving eastbound
14  on the Pennsylvania Turnpike that day prior to the accident?
15    A  No, I never looked to see if it was on.
16    Q  And is that because you knew you had already
17  turned it off?
18    A  Correct.
```

(Pls.' Mot. for New Trial at 9; Dep. of Scottie Wightman at 155). Similarly, Plaintiffs correctly assert that Wightman testified that "if [the engine brake] was on" at the time of the accident, he would not have thought to turn it off, because instead he would attempt to steer the vehicle, apply the hand brake, and drop gears. (Pls.' Mot. for New Trial at 9-10.) Plaintiffs fail to note, however, that dropping gears would automatically disengage the engine brake, because, as Mr. Koepke testified and as is generally known, changing gears requires depressing the clutch. As Plaintiffs' expert Mr. Sero testified, depressing the clutch would disengage the engine brake.

More importantly, Wightman's testimony is not evidence that he would have turned off the engine brake if the truck were equipped with an indicator light, assuming that (a) it was on at the time, and (b) the noise of the engine brake did not remind him to turn it off. Even if it were,

it would not justify granting Plaintiffs' motion, because, inter alia, (1) the jury could reasonably have concluded that the engine brake was not on and / or that it did not cause the accident, (2) the jury could reasonably have concluded that the better evidence indicated that, if the existing indicators such as the noise did not remind Wightman to shut off the engine brake, an indicator light would not have made any difference, or (3) the jury may have concluded that the warnings were deficient only because, e.g., they failed to ensure that drivers would become aware that use of the engine brake on a wet roadway can cause loss of control, but that this was not relevant to the present case because Mr. Wightman already knew this.

Plaintiffs actually seek to shift their burden of proof to Defendants, asserting that the jury's verdict should be set aside because the jury "decided that the defendants' failure to warn constituted negligence" and "[t]he defendants never offered any evidence whatsoever at trial to rebut the strong inference that the defendants' negligence was in fact a but-for-cause of the plaintiffs' death and injuries." (Pls.' Mot. for New Trial at 13.)  This is both false and irrelevant.

It is false because Defendants offered evidence that the driver knew of the dangers allegedly associated with use of an engine brake and did not read the warnings provided by the Defendants, evidence that the engine brake was not on at the time of the accident, and evidence that the engine brake did not cause the accident.  It is irrelevant because proof of negligence does not shift to Defendants the burden of proving a lack of causation.  Specifically, as Defendants have repeatedly noted, under Connecticut law, causation in a failure to warn case is not presumed, but must be proven, even if it is found that warnings were inadequate.  <u>See, e.g., Defendants' Second Supplemental Memorandum of Law in Support of Their Motion to Preclude Testimony of Plaintiffs' Expert  David E. Clement</u> (citing, inter alia, Conn. Gen. Stat. § 52-572q

(c); DeJesus v. Craftsman Mach. Co., 16 Conn. App. 558, 573, 548 A.2d 736 (1988)). The jury evidently found that Plaintiffs had not proven this.

Nor is Densberger, upon which Plaintiffs rely, to the contrary. In Densberger, the court declined to overturn the jury's verdict, precisely because there *was* evidence to support it:

> Reviewing the evidence presented at trial, the court finds that there is substantial, credible evidence presented at trial to support the jury's verdict . . . . The court is not persuaded by UTC's attempts to characterize the evidence in its favor and will not second-guess the jury's credibility judgments . . . . The court is simply not convinced that the jury reached a seriously erroneous result or that the verdict is a miscarriage of justice. As such, UTC's motion for a new trial on the basis that the jury's verdict is against the weight of the evidence is denied.

Densberger, 125 F. Supp. 2d at 598 (emphasis added). Similarly, while Plaintiffs cite Densberger for the proposition that "because Wightman was not aware that loss of vehicle control meant irreversible loss of control, proximate cause did not rest on what Wightman would have done if he knew," (Pls.' Mot. for New Trial at 14 (emphasis added)), that case does not support this suggestion that Plaintiffs' need not provide evidence of but-for causation.

In summary, the jury's finding that failure to provide adequate warnings and instructions was not a proximate cause of Plaintiffs' injuries is not contrary to the weight of the evidence, but is in fact in accord with the weight of the evidence.[2]

### 4. The jury's finding that failure to test the engine brake was not a proximate cause of the Plaintiffs' injuries is consistent with the weight of the evidence

As set forth in Defendants' Supplemental Memorandum of Law in Support of Their Rule 50 Motion for a Directed Verdict, there was no evidence that failure to test was a proximate cause of this accident. Even if proper testing would have demonstrated that an engine brake can

---

[2] As noted above, Defendants assert that there is no evidence that would support a finding that failure to provide adequate warnings or instructions was a proximate cause of Plaintiffs' injuries. See Defs.' Rule 50 Mot. for a Directed Verdict at 8-13.

cause a truck equipped with ABS to lose traction on a wet roadway, and even if proper testing would have revealed that this can happen under real world conditions – where lateral forces are far lower than those introduced by Radlinski as set forth in Exhibit 28 – there is no evidence that the accident would have been avoided. Specifically, there is no evidence that such testing would have led Freightliner (a) to cease using engine brakes, which are admittedly a necessary safety device, (b) to implement an option under which the engine brakes could be made operational only when the service brakes are being used, despite the safety considerations weighing against this design,[3] or (c) to expand its existing warnings, which already warn drivers not to use the engine brake on wet roadways at all. Even if the evidence would *permit* a jury to make such a finding, at the jury's finding that failure to test the engine brake was not a proximate cause of the Plaintiffs' injuries was not contrary to the weight of the evidence.

### III.    CONCLUSION

When deciding a Motion for New Trial, the Court should "invoke its discretionary power only in the exceptional case where the verdict is clearly, decidedly, or overwhelmingly against the weight of the evidence." *Sisk v. Manzanares*, 270 F. Supp. 2d 1265, 1273 (D. Kan. 2003). In

---

[3] Ironically, despite asserting that Wightman forgot to turn off the engine brake, Plaintiffs evidently assume that he would have remembered to switch it to the service brake option when he encountered the wet roadway. The jury was not required to make this assumption. Indeed, common sense suggests that it would be easier to remember to turn the engine brake off than to switch it from one control option to another, because the noise serves as a reminder that it is on.

More importantly, there was no evidence whatsoever that requiring that the engine brake be used only in conjunction with the service brake, either at all times or part of the time, would be safer or would reduce accidents. To the contrary, the evidence indicated that the primary safety benefit of the engine brake is that it could be used *without* the service brake, thereby preventing the service brake from overheating. Perhaps more importantly, there was no evidence that an alternative design would prevent accidents, because there was no evidence that any accidents – or even loss of traction – had ever been caused by use of an engine brake in real world conditions.

the present case, the jury heard eight days' worth of evidence. The presumption that they gave due consideration to that evidence is bolstered by the fact that they deliberated for three days before reaching their unanimous decision. In accordance with the evidence, the jury unanimously found that Plaintiffs had failed to prove by a preponderance of the evidence that any act or omission by any Defendant caused Plaintiffs' injuries. Although Plaintiffs evidently are dissatisfied with the outcome, it is respectfully submitted that they have provided no basis for disturbing the jury's findings.

        Respectfully submitted,

        DEFENDANTS,
        FREIGHTLINER CORPORATION,
        MERCEDES-BENZ CREDIT
        CORPORATION, and
        DETROIT DIESEL CORPORATION

By_____
    Paul D. Williams (ct05244)
    Daniel J. Foster (ct24975)
    Day, Berry & Howard LLP
    CityPlace I
    Hartford, Connecticut 06095-3499
    (860) 275-0100
    (860) 275-0343 (fax)
    Their Attorneys

## **CERTIFICATION**

THIS IS TO CERTIFY that a copy of the foregoing was mailed, on this date, postage prepaid, to:

Leo Gilberg, Esq.
305 Broadway
New York, NY 10007

_____
Daniel J. Foster