Service: **Get by LEXSEE®**
Citation: **2002 U.S. Dist. LEXIS 24620**

*2002 U.S. Dist. LEXIS 24620, \**

GTFM, Inc. and GTFM, LLC, Plaintiffs, -v- SOLID CLOTHING INC., dba ZAM, Defendant.

01 Civ. 2629 (DLC)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2002 U.S. Dist. LEXIS 24620

December 27, 2002, Decided
December 30, 2002, Filed

**DISPOSITION:** Defendant's motions for new trial and to vacate, alter or amend judgment denied.

## CASE SUMMARY

**PROCEDURAL POSTURE:** In a bench trial, the district court found that defendant clothing company engaged in trademark violations under §§ 32 and 43(a) (15 U.S.C.S. §§ 1114 and 1125(a)) of the Lanham Act (Act), and state law violations. The company filed a motion for a new trial or in the alternative for a new trial limited to the issue of damages pursuant to Fed. R. Civ. P. 59(a), and a motion to vacate, alter or amend the judgment pursuant to Fed. R. Civ. P. 59(e).

**OVERVIEW:** Regarding the motion for a new trial, the district court disposed of most of the company's arguments by stating that the arguments were addressed in the prior decision. The district court stressed that many of the issues raised in the instant motions simply repeated the prior arguments without any reasons as to why the district court's prior rulings were based on an error of fact or clear error of law. Rather, the company relied on general allegations of "prejudice" which were insufficient to support a new trial. On the motion to vacate, alter, or amend, the district court stated it previously found that the trademark holders, the plaintiffs in the action, showed their mark had acquired a secondary meaning. The company's disagreement with the court's conclusion did not warrant a vacatur of the judgment. The company previously failed in its functionality argument because it did not show at trial that there was any anticompetitive effect from the trademark holder's use of its "05" mark in any area in which the digits "05" could be used. Finally, contrary to the company's argument, an award of both actual damages and lost profits was not an impermissible double recovery.

**OUTCOME:** The district court denied both motions.

**CORE TERMS:** functionality, new trial, apparel, consumer, functional, garment, trade dress, competitor, trademark, memorandum, style, utilitarian, amend, patent, secondary meaning, moving party, disadvantage, infringement, designation, aesthetic, witness list, calculation, digit, Lanham Act, trademark infringement, conclusion reached, plaintiffs failed, motion to vacate, double recovery, reasons stated

**LexisNexis(R) Headnotes** ♦ Hide Headnotes

Civil Procedure > Relief From Judgment > Motions for New Trial
**HN1**⬇ Fed. R. Civ. P. 59(a)(2) states that a new trial may be granted in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted in suits in equity in the courts of the United States. A trial court should be most reluctant to set aside that which it has previously decided unless convinced that it was based on a mistake of fact or clear error of law, or that refusal to revisit the earlier decision would work a manifest injustice. A trial court should not grant a new trial simply because, like the proverbial second bite at the apple, the losing party believes it can present a better case if afforded another chance. More Like This Headnote

Civil Procedure > Relief From Judgment > Motions to Alter & Amend
**HN2**⬇ The standard for a motion to alter or amend a judgment under Fed. R. Civ. P. 59(e) is the same as the standard for a motion for reconsideration under U.S. Dist. Ct., S.D.N.Y., R. 6.3. Thus, a motion pursuant to Fed. R. Civ. P. 59(e) should be granted only where the moving party demonstrates that a court has overlooked factual matters or controlling decisions that were presented to it on the underlying motion and that could change the conclusion reached by the court. U.S. Dist. Ct., S.D.N.Y., R. 6.3. Courts narrowly construe this standard and apply it strictly against the moving party so as to dissuade repetitive arguments on issues that have already been considered fully by the court. In addition, the moving party may not advance new facts, issues or arguments not previously presented to the court. The decision to grant or deny the motion is within the sound discretion of the district court. More Like This Headnote

Trademark Law > Subject Matter > Secondary Meaning
**HN3**⬇ Where a trademark is not inherently distinctive, the plaintiff is required to show secondary meaning. More Like This Headnote

Trademark Law > Infringement > Determinations
**HN4**⬇ For purposes of trademark law, a product feature is functional if it is essential to the use or purpose of the article or if it affects the cost or quality of the article. If the product feature is an aesthetic rather than utilitarian feature, it is appropriate to consider whether protecting it from infringement will place competitors at a significant non-reputation-related disadvantage. An important policy underlying the functionality doctrine is the preservation of competition. The effect upon competition is really the crux of the functionality inquiry, and, accordingly, the functionality doctrine preserves competition by ensuring competitors the right to compete effectively. More Like This Headnote

Trademark Law > Infringement > Determinations
**HN5**⬇ For purposes of trademark law, the functionality doctrine -- at least to the extent it is based on utilitarian as opposed to aesthetic functionality -- addresses features that affect the cost or quality of a product, such as those that can be protected by a patent, and determines whether a grant of trademark protection to those features will undermine the ability of competitors to compete. More Like This Headnote

Trademark Law > Infringement > Determinations

Evidence > Procedural Considerations > Burdens of Proof
**HN6** See 15 U.S.C.S. § 1125(a)(3).

Trademark Law > Infringement > Damages
**HN7** 15 U.S.C.S. § 1117(a) of the Lanham Act, provides that a plaintiff shall be entitled, subject to the principles of equity, to recover: (1) defendant's profits; (2) any damages sustained by the plaintiff, and the costs of the action. This provision is interpreted in the conjunctive. Both damage and profit awards may be assessed according to the circumstances of a case. More Like This Headnote

**COUNSEL:** [*1] For Plaintiffs: Louis S. Ederer, John Maltby, Joseph P. Tucker, Gursky & Ederer, LLP, New York, NY.

For Defendant: Mark L. Sutton, John Park, Benjamin Jesudasson, Los Angeles, CA.

**JUDGES:** DENISE COTE, United States District Judge.

**OPINIONBY:** DENISE COTE

**OPINION:** OPINION AND ORDER

DENISE COTE, District Judge:

After a bench trial on July 1 and 2, 2002, this Court held by Opinion and Order dated July 11, 2002 (the "July 11 Opinion"), GTFM, Inc. and GTFM, LLC v. Solid Clothing Inc., 215 F. Supp. 2d 273 (S.D.N.Y. 2002), that defendant Solid Clothing Inc. ("Solid") engaged in intentional trademark infringement in violation of Section 32 of the Lanham Act (the "Act"), 15 U.S.C. § 1114, false designation of origin in violation of Section 43(a) of the Act, 15 U.S.C. § 1125(a), common law trademark infringement and unfair competition, and the violation of New York General Business Law Sections 360-1 and 349. Solid has submitted a motion for a new trial or in the alternative for a new trial limited to the issue of damages pursuant to Rule 59(a), Fed. R. Civ. P., and a motion to vacate, alter or amend the judgment pursuant to Rule [*2] 59(e), Fed. R. Civ. P. For the reasons stated, Solid's motions are denied.

I. Motion for a New Trial

**HN1** Rule 59(a)(2), Fed. R. Civ. P., states that a new trial may be granted "in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted in suits in equity in the courts of the United States." "[A] trial court should be most reluctant to set aside that which it has previously decided unless convinced that it was based on a mistake of fact or clear error of law, or that refusal to revisit the earlier decision would work a manifest injustice." LiButti v. United States, 178 F.3d 114, 118 (2d Cir. 1999). "[A] trial court should not grant a new trial simply because, like the proverbial second bite at the apple, the losing party believes it can present a better case if afforded another chance." Id. at 118-19.

Solid argues that it is entitled to a new trial because plaintiffs GTFM, Inc. and GTFM, LLC (collectively, "GTFM") resorted to "trial by ambush" by (1) adding five trial witnesses to their witness list two weeks before the date of trial, (2) failing to disclose certain documents relating to their [*3] calculation of Solid's sales until approximately one

week before trial, and (3) failing to disclose their theory of recovery until approximately a week and a half before trial. In the alternative, defendants seek a new trial limited to the issue of damages.

With respect to Solid's argument regarding GTFM's addition of five witnesses to its witness list, Solid merely reargues its motion in limine received by the Court on June 21 but not filed until July 2. At a telephone conference on June 21, the Court heard argument on that motion, granted it as to two witnesses, n1 and denied it as to three witnesses. The motion was denied with respect to Norman Weisfeld because Solid had deposed him, and with respect to Laura Dienes Middlen and Ken Weprin because GTFM offered their testimony in response to defenses identified by Solid in the weeks immediately before trial n2 and because Solid would have an opportunity to depose them before trial. In support of the instant motion for a new trial, Solid says nothing about the reasons the Court gave at the June 21 telephone conference for its disposition of the motion in limine. Nor does it make any effort to argue that the Court's disposition [*4] of the motion was based on an error of fact or clear error of law. Rather, Solid relies on general allegations of "prejudice." This is insufficient to support a new trial.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 The two witnesses that were stricken from the plaintiffs' witness list for failure to disclose them previously were private investigators who had visited the defendant's business premises in an undercover capacity.

n2 Laura Dienes Middlen, a former associate at the law firm representing GTFM, was identified by plaintiffs as a witness to rebut the defense that she, acting as an agents for plaintiffs, had made an admission or concession about the likelihood of confusion in a response to a Patent and Trademark office action that she prepared. Ken Weprin, a sports announcer, was identified by plaintiffs as a witness to rebut the argument that a zero followed by a single digit is a number that athletes commonly wear.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Solid's arguments regarding GTFM's failure to disclose certain documents and its theory of recovery until the eve of trial [*5] are without merit. Indeed, they are remarkable for their audacity. As set forth in the July 11 Opinion, 215 F. Supp. 2d at 291-93, Solid's conduct of discovery was marked by the repeated failure to produce documents relating to its sales of goods bearing the "05" designation. GTFM was unable to calculate Solids' sales and its damages based on those sales until shortly before trial because of Solid's failures to produce the documents on which such calculations would be based. For example, numerous invoices for the sale of "05" garments were discovered for the first time during the June 18-20 inspection of Solid's premises. The only business records that Solid ever produced in discovery to document expenses related to the sale of "05" garments were records showing payments to the garment manufacturers.

As with its arguments relating to the five witnesses, Solid fails to argue that the Court made any error of fact or law, but rather merely argues generally that it has been prejudiced. The motion principally complains that the plaintiffs' calculations included revenue from the sale of garments with style numbers that could not be linked to any specific style, that is, garments that have [*6] been denominated the "Unknowns." See

id. at 286. As explained in the July 11 Opinion, it was Solid who was in a position to identify the style numbers for the Unknowns and show that they were not sales of "05" garments. To this date it has not identified one style number on which the July 11 Opinion relied in computing damages that was for a garment style that did not bear the "05" mark. In sum, Solid has not shown that it is entitled to a new trial either in whole or limited to the issue of damages.

II. Motion to Vacate, Alter, or Amend

HN2⊤The standard for a motion to alter or amend a judgment under Rule 59(e), Fed. R. Civ. P., is the same as the standard for a motion for reconsideration under Local Civil Rule 6.3. See Cohen v. Koenig, 932 F. Supp. 505, 506 (S.D.N.Y. 1996). Thus, a motion pursuant to Rule 59(e) should be granted only where the moving party demonstrates that the Court has overlooked factual matters or controlling decisions that were presented to it on the underlying motion and that could change the conclusion reached by the court. See Local Rule 6.3; Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). Courts [*7] narrowly construe this standard and apply it strictly against the moving party so as to "dissuade repetitive arguments on issues that have already been considered fully by the court." Caleb & Co. v. E.I. DuPont De Nemours & Co., 624 F. Supp. 747, 748 (S.D.N.Y. 1985). In addition, the moving party may not "advance new facts, issues or arguments not previously presented to the Court." Morse/Diesel, Inc. v. Fidelity & Deposit Co. of Maryland, 768 F. Supp. 115, 116 (S.D.N.Y. 1991). The decision to grant or deny the motion is within the sound discretion of the district court. See Devlin v. Transportation Communications Int'l Union, 175 F.3d 121, 132 (2d Cir. 1999).

In its sixty-nine page memorandum in support of its Rule 59(e) motion, Solid largely repeats the arguments from its 107 page pretrial memorandum, which were fully addressed in the July 11 Opinion. Its post-trial brief includes very few references to the law and, with the exception of its argument regarding functionality, does not contend that the July 11 Opinion erred in reciting the principles of law to be applied in this case. With only a few exceptions, Solid does not point [*8] to factual matters that it claims were overlooked in the July 11 Opinion. Rather, Solid engages in a stream of argument, in some cases marching page by page through the Opinion, to explain why it disagrees with the reasoning of the Court. None of Solid's arguments have merit.

First, Solid argues that the plaintiffs failed to show that the "05" mark possesses secondary meaning and that the "05" mark is a strong mark. Without any citation to case law, and ignoring evidence discussed in the July 11 Opinion, Solid principally argues that the popularity of the "05" mark with consumers and imitators does not connote the existence of secondary meaning. Instead, it contends that that popularity reflects nothing more than the success of an ornamental design. The July 11 Opinion fully addressed these issues and Solid's arguments in connection with them. HN3⊤Because the "05" mark is not inherently distinctive, the plaintiffs were required to show secondary meaning. Each of the factors identified in Centaur Communications, Ltd. v. A/S/M Communications, Inc., 830 F.2d 1217, 1222 (2d Cir. 1987), was evaluated. See 215 F. Supp. 2d at 294-95. While Solid may disagree [*9] with the conclusion reached, it has identified no error requiring a vacatur of the judgment.

Second, Solid argues that the plaintiffs failed to show that its use of the "05" mark is likely to confuse consumers. Specifically, Solid argues that the indicia of source that it uses on its products are sufficient to differentiate its "05" apparel from GTFM's, and that the plaintiffs' use of the mark FUBU, particularly on the baseball jerseys, was sufficient to dispel confusion. These arguments were directly considered and rejected in the July 11

Opinion. See id. at 295-296.

Third, Solid argues that GTFM failed to show that it is likely to "bridge the gap" with respect to Solid's apparel or that GTFM's and Solid's apparel are of sufficient proximity to make consumer confusion likely. Solid makes essentially the same arguments in its Rule 59(e) motion as it did at trial. These arguments were fully considered and addressed in the July 11 Opinion. See id. at 296.

Fourth, Solid argues, as it did in its pre-trial memorandum, that GTFM failed to present any evidence of actual confusion either in the form of survey evidence or evidence of confusion among consumers. [*10] Solid argues that the testimony from Joseph Nadav, the President of a company with a chain of clothing stores, was not persuasive evidence of confusion. Nadav was credible and his testimony was important evidence of confusion by a sophisticated buyer. The fact that GTFM presented no survey weighed against a finding of actual confusion. Thus, these arguments was fully considered and addressed in the July 11 Opinion. See id. at 290, 296-97.

Fifth, Solid argues that it did not act in bad faith and that it did not engage in willful infringement. In support of its argument, it essentially rephrases the arguments it presented in its pre-trial memorandum. In addition, it explains that its principal's "perjury" at deposition was a tactical ploy to reduce the cost of settlement, and that his "misrepresentations" at trial were designed to save face, and argues that the perjury and misrepresentations should not be used as evidence of bad faith. The July 11 Opinion properly considered this conduct as evidence of a consciousness of wrongdoing. Nothing in this motion indicates any error in the finding that Solid acted in bad faith in copying the "05" mark. See id. at 297-98. [*11]

Sixth, Solid argues that consumers of GTFM's apparel are sufficiently sophisticated to be able to differentiate GTFM's from Solid's products. Solid also attempts to distinguish the cases on which the July 11 Opinion relied when finding that it was relevant to consider a likelihood of confusion in the post-sale context. None of Solid's arguments indicate that the analysis in the July 11 Opinion of the sophistication of the relevant group of buyers was in error. See 215 F. Supp. 2d at 298.

Seventh, Solid makes a series of arguments to support its contention that the "05" mark is functional. These arguments stand in sharp contrast to the position Solid took before the Patent and Trademark Office, when it sought to register its "Players 05" mark. Solid begins with the contention that the Court did not address whether the "05" mark is aesthetically functional. Solid further contends that the analysis in the July 11 Opinion is flawed because it substituted an analysis of the likelihood of confusion for an analysis of functionality, and in a related error, ignored certain functional uses of the characters "05" by labeling them non-trademark uses.

As set forth in the July [*12] 11 Opinion, see 215 F. Supp. 2d at 302, HN4 a product feature is functional "if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." Traffix Devices, Inc. v. Mktg. Displays, Inc., 532 U.S. 23, 32, 149 L. Ed. 2d 164, 121 S. Ct. 1255 (2001) (citation omitted). If the product feature is an aesthetic rather than utilitarian feature, it is appropriate to consider whether protecting it from infringement will place competitors at a "significant non-reputation-related disadvantage." Id. at 33. "An important policy underlying the functionality doctrine is the preservation of competition. . . . The effect upon competition is really the crux of the functionality inquiry, and, accordingly, the functionality doctrine preserves competition by ensuring competitors the right to compete effectively." Valu Engineering,

Inc. v. Rexnord Corp., 278 F.3d 1268, 1277 (Fed. Cir. 2002) (citations omitted).

Solid did not make an aesthetic functionality argument at trial. Rather, Solid based its functionality argument on the definition of utilitarian functionality set forth in Traffix Devices **[*13]** . Specifically, Solid argued that the "05" mark is functional because it is "essential to the use or purpose" of the apparel to which GTFM affixed it. See 215 F. Supp. 2d at 302. Regardless of which form of functionality applies, however, for the reasons set forth in the July 11 Opinion, Solid failed to show that the "05" mark was either essential to the use or purpose of the apparel to which it was affixed or put competitors of GTFM at a significant non-reputation related disadvantage. Id. at 302-03.

In support of its argument that the July 11 Opinion substituted an analysis of consumer confusion for an analysis of functionality, Solid cites Valu Engineering, which it had not cited at trial, for the proposition that "functionality may be established by a single competitively significant application in the recited identification of goods, even if there is no anticompetitive effect in any other areas of use, since competitors in that single area could be adversely affected." Valu Engineering, 278 F.3d at 1277-78 (emphasis supplied). Valu Engineering dealt with the utilitarian functionality of conveyer guide rail configuration **[*14]** designs, for which appellant had once sought a utility patent, and based its reasoning on the so-called "Morton-Norwich factors" for determining trademark functionality set forth in In re Morton-Norwich Products, Inc., 671 F.2d 1332, 1340-41 (C.C.P.A. 1982), factors which are not used in the Second Circuit. In any event, Valu Engineering itself analyzes functionality in terms of its effect on competition. Valu Engineering, 278 F.3d at 1277 (citation omitted). Solid did not show at trial that there is any anticompetitive effect from GTFM's use of the "05" mark in any area in which the digits "05" are or may be used. According to the Valu Engineering decision, **HN5** the functionality doctrine -- at least to the extent it is based on utilitarian as opposed to aesthetic functionality -- addresses features that affect the cost or quality of a product, such as those that can be protected by a patent, and determines whether a grant of trademark protection to those features will undermine the ability of competitors to compete. Valu Engineering, 278 F.3d at 1275-76.

Solid continues to argue in its Rule 59(e) memorandum, as it did **[*15]** at trial, that GTFM is considering suing various producers of apparel bearing the number "05" and names of colleges, and that this is evidence that the granting of trademark protection to GTFM's use of "05" will prevent "competitively significant" uses of that number on apparel designating graduation classes or athletes. As was made clear in the July 11 Opinion, however,

Solid failed to show that the granting of trademark protection to the "05" mark would in fact preclude any school from selling apparel with its school name in combination with a "Class of" designation. n3 215 F. Supp. 2d at 302 and n.8. Taken at face value, Solid's argument would prevent the trademarking of any two and many four digit numbers for use on clothing or on any other products schools sell to students and alumni.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -


n3 Solid contends that, pursuant to 15 U.S.C. § 1125(a)(3), GTFM bears the burden of proof regarding functionality. Section 1125(a)(3) provides:

> **HN6** In a civil action for trade dress infringement under this Act for trade

dress not registered on the principal register, the person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional.

15 U.S.C. § 1125(a)(3). The July 11 Opinion held that GTFM failed to articulate the elements of its trade dress and was not entitled to trade dress protection. 215 F. Supp. 2d at 298-99. The functionality issue concerns the "05" trademark, not GTFM's alleged trade dress.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*16]

Solid also relies on Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101 (2d Cir. 2001), for the proposition that the "nonfunctionality requirement protects competition even at the cost of potential consumer confusion." Id. at 116 (citation omitted). In this statement, Yurman acknowledges that courts will deny protection to functional marks even if doing so results in consumer confusion. This principle, however, does not conflict with the analysis in the July 11 Opinion. The July 11 Opinion granted protection to GTFM's use of the "05" mark because Solid had failed to show that "a competitor will be put at a significant disadvantage because the feature sought to be protected is essential to the use or purpose of the thing or affects its cost or quality." Nora Beverages, Inc. v. Perrier Group of America, Inc., 269 F.3d 114, 121 n.4 (2d Cir. 2001) (citation omitted). See 215 F. Supp. 2d at 302-03.

Finally, Solid initially argued that GTFM could not recover both actual damages and lost profits. HN7 Section 1117(a) of the Lanham Act provides, however, that "the plaintiff shall be entitled . . . subject to the principles of [*17] equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and the costs of the action." 15 U.S.C. § 1117(a) (emphasis supplied). This provision is interpreted in the conjunctive. See George Basch Co. Inc. v. Blue Coral, Inc., 968 F.2d 1532, 1537 (2d Cir. 1992) ("both damage and profit awards may be assessed 'according to the circumstances of the case'"). In its reply brief, Solid admits that an award of both damages and lost profits is possible, but appears to contend without explanation that such an award would lead to a double recovery in this case. GTFM has shown for the reasons explained in the July 11 Opinion that it is entitled to damages and lost profits. See 215 F. Supp. 2d at 304-05. Solid did not show at trial and has not shown now that this would constitute an impermissible double recovery.

Conclusion

For the reasons stated, Solid's motion for a new trial and motion to vacate, amend, or alter the judgment are denied.

SO ORDERED:

Dated: New York, New York

December 27, 2002

DENISE COTE

United States District Judge

Service: **Get by LEXSEE®**
Citation: **2002 U.S. Dist. LEXIS 24620**
View: Full
Date/Time: Wednesday, September 8, 2004 - 2:54 PM EDT

\* Signal Legend:
- ⬢ - Warning: Negative treatment is indicated
- ▲ - Caution: Possible negative treatment
- ◆ - Positive treatment is indicated
- Ⓐ - Citing Refs. With Analysis Available
- ⓘ - Citation information available

\* Click on any *Shepard's* signal to *Shepardize®* that case.

About LexisNexis | Terms and Conditions

Copyright © 2004 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.