Service: **Get by LEXSEE®**
Citation: **1996 U.S. Dist. LEXIS 6894**

*1996 U.S. Dist. LEXIS 6894, ***

DAVID BERGSTEIN, Plaintiff, -against- JORDACHE ENTERPRISES, INC., Defendant.

90 Civ. 1461 (SAS)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

1996 U.S. Dist. LEXIS 6894

May 17, 1996, Decided
May 21, 1996, FILED

**DISPOSITION:** [*1] Defendant's post-trial motions denied. Plaintiff's motion for prejudgment interest granted in part.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff employee instituted an action against defendant employer asserting breach of contract for failure to pay commissions, breach of an implied contact for a reasonable period of employment and tortious interference with business or contract relations. The jury returned a verdict in favor of the employee. The employer filed a motion for judgment as a matter of law or a new trial. The employee filed a motion to alter or amend the judgment.

**OVERVIEW:** The employer asserted that a judgment notwithstanding the verdict or a new trial had to be ordered because the jury verdict was seriously erroneous as a result of evidence and argument of the employee's counsel. The employee asserted that he was entitled to prejudgment interest. The court denied the employers motion because it determined that the employer had not met the high standard required for a judgment as a matter of law and had not shown that a new trial was warranted since it was clear that the jury verdict in the case was amply supported by the evidence. The court granted the employee's motion to amend the judgment to include prejudgment interest for the breach of contract claim and the implied contract claim because the applicability of interest in a diversity case was controlled by the rule of the jurisdiction whose law determined liability so that prejudgment interest was a matter of legal right in the case.

**OUTCOME:** The court denied the employer's post-trial motions and granted the employee's motion to all prejudgment interest. The court amended the judgment to include $ 61,541.51 in prejudgment interest, in addition to the $ 177,003.00 damage award, for a total of $ 238,544.51.

**CORE TERMS:** prejudgment interest, summation, jury award, new trial, impropriety, breach of implied contract, matter of law, implied contract, termination, juror, entitled to prejudgment interest, repeated, railroad, breach of contract, jury awarded, jury room, authenticate, directory, damages awarded, quite clear, unconscionable, intemperate, miscarriage, post-trial, exhibited, punitive, movant, tactic, wages, duty

**LexisNexis(R) Headnotes** ◆ Hide Headnotes

Civil Procedure > Trials > Judgment as Matter of Law
*HN1* A motion for judgment notwithstanding the verdict pursuant to Fed. R. Civ. P. 50(b) should be granted only where there is a complete absence of evidence supporting the verdict such that the jury's findings could only have been the result of sheer surmise and conjecture or there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded persons could not arrive at a verdict against the movant. In deciding such a motion, the court may not weigh the evidence or assess the credibility of witnesses. Rather, the court must view the evidence in the light most favorable to the non-moving party. The court must also draw all reasonable inferences in favor of the nonmoving party. More Like This Headnote

Civil Procedure > Relief From Judgment > Motions for New Trial
*HN2* In deciding Fed. R. Civ. P. 59 motions, the court should view the verdict in the overall setting of the trial; consider the character of the evidence and the complexity or simplicity of the legal principles which the jury was bound to apply to the facts; and abstain from interfering with the verdict unless it is quite clear that the jury reached a seriously erroneous result. The judge's duty is essentially to see that there is no miscarriage of justice. If convinced that there has been then it is the judge's duty to set the verdict aside; otherwise to not. Absent a showing of clear error or manifest injustice, it will generally be appropriate to deny relief pursuant to Fed. R. Civ. P. 59 since litigants should neither be required nor without good cause permitted to relitigate already-decided matters. More Like This Headnote

Civil Procedure > Summary Judgment > Supporting Papers & Affidavits
*HN3* Admissibility of the underlying evidence is a prerequisite for the admission of a summary document. More Like This Headnote

Civil Procedure > Costs & Attorney Fees > Judgment Interest
*HN4* In a diversity case, prejudgment interest is controlled by the rule of the jurisdiction whose law determines liability. More Like This Headnote

Civil Procedure > Costs & Attorney Fees > Judgment Interest
Contracts Law > Remedies > Reliance Damages
*HN5* Under Pennsylvania law, prejudgment interest is a matter of legal right in breach of contract cases. More Like This Headnote

Civil Procedure > Costs & Attorney Fees > Judgment Interest
*HN6* The statutory rate in Pennsylvania is six percent simple interest. 41 Pa. Stat. Ann. § 202 (Supp. 1988) More Like This Headnote

**COUNSEL:** For DAVID BERGSTEIN, plaintiff: Arthur M. Wisehart, Wisehart & Koch, New York, NY.

For JORDACHE ENTERPRISES, INC., defendant: Howard R. Flaxman, Blank, Rome, Comisky & McCauley, Philadelphia, PA.

**JUDGES:** Shira A. Scheindlin, U.S.D.J. Magistrate Judge Naomi R. Buchwald

**OPINIONBY:** Shira A. Scheindlin

**OPINION: OPINION AND ORDER**

**SHIRA A. SCHEINDLIN, U.S.D.J.**

I. Introduction

On November 6, 1995, a jury returned a verdict in favor of Plaintiff David Bergstein, awarding him a total of $ 177,003. n1 The jury awarded a total of $ 139,595 on Plaintiff's breach of contract claim for failure to pay sales commissions from March 5, 1986 until Bergstein's termination on August 11, 1989. On Plaintiff's claim for breach of implied contract to be employed for a reasonable time beyond August 11, 1989, the jury determined that four months constituted a reasonable time and awarded Bergstein $ 12,408. Finally, the jury awarded $ 25,000 on Bergstein's claim for tortious interference with business or contractual relations.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 Defendant incorrectly states that the total verdict in favor of Plaintiff was $ 176,003. See Def. Mem. (JNOV) at 1.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [*2]

Both parties have made post-trial motions. Defendant seeks an order pursuant to Fed. R. Civ. P. 50(b) for judgment as a matter of law. In the alternative, Defendant seeks a new trial under Rule 59. Plaintiff has moved under Rule 59(e) to alter or amend the judgment. Specifically, Bergstein seeks prejudgment interest.

II. Standard

A. Motion under Rule 50(b)

HN1 A motion for judgment notwithstanding the verdict pursuant to Rule 50(b) should be granted only "where there is a complete absence of evidence supporting the verdict such that the jury's findings could only have been the result of sheer surmise and conjecture or there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded persons could not arrive at a verdict against" the movant. Ware v. ABB Air Preheater, Inc., 1995 U.S. Dist. LEXIS 14159, 91-C V-37S, 1995 WL 574464 (W.D.N.Y. Sept. 28, 1995) (citing Song v. Ives Laboratories, Inc., 957 F.2d 1041, 1046 (2d Cir. 1992)) . In deciding such a motion, "the Court may not weigh the evidence or assess the credibility of witnesses. Rather, the Court must view the evidence in the light most favorable to the non-moving party." Banff Ltd. v. Express, Inc.,1995 U.S. Dist. LEXIS 19374, [*3] 93 Civ. 2514, 1996 WL 2003 (S.D.N.Y. Dec. 29, 1995) (citing Samuels v. Air Transport Local 504, 992 F.2d 12, 14-16 (2d Cir. 1993); Alpex Computer Corp. v. Nintendo Co., 1994 U.S. Dist. LEXIS 17515, 86 Civ. 1749, 1994 WL 681752 (S.D.N.Y. Dec. 5, 1994)). The Court must also "draw all reasonable inferences in favor of plaintiff, the nonmoving party." Ware, 1995 U.S. Dist. LEXIS 14159, 1995 WL 574464, at *2 (citing Konik v. Champlain Valley Physicians Hosp. Medical Center, 733 F.2d 1007,

1013 (2d Cir.), cert. denied, 469 U.S. 884, 83 L. Ed. 2d 190, 105 S. Ct. 253 (1984)).

B. Motions under Rule 59

The standard for deciding Rule 59 motions is less strict than the standard for granting judgment as a matter of law. <sup>HN2</sup>In deciding Rule 59 motions, the Court

> should view the verdict in the overall setting of the trial; consider the character of the evidence and the complexity or simplicity of the legal principles which the jury was bound to apply to the facts; and abstain from interfering with the verdict unless it is quite clear that the jury reached a seriously erroneous result. The judge's duty is essentially to see that there is no miscarriage of justice. If convinced that there has been then it is [the judge's] [*4] duty to set the verdict aside; otherwise to not.

Bevevino v. Saydjari, 574 F.2d 676, 684 (2d Cir. 1978). See also Smith v. Lightning Bolt Prods., Inc., 861 F.2d 363, 370 (2d Cir. 1988) (citing Bevevino). "Absent a showing of clear error or manifest injustice, it will generally be appropriate to deny relief pursuant to Rule 59 since litigants should neither be required nor without good cause permitted to relitigate already-decided matters." Ware, 1995 U.S. Dist. LEXIS 14159, 1995 WL 574464, at *2 (citing Int'l Ore & Fertilizer Corp. v. SGS Control Servs., Inc., 38 F.3d 1279, 1287 (2d Cir. 1994), cert. denied, 132 L. Ed. 2d 280, 115 S. Ct. 2276 (1995)).

III. Discussion of Defendant's Rule 50(b) and Rule 59 Motions

Defendant proposes several grounds in support of its motion for judgment as a matter of law or for a new trial.

A. Sales to J.C. Penney

Jordache argues that any damages awarded by the jury relating to J.C. Penney are speculative because there was no admissible evidence regarding Bergstein's sales to J.C. Penney. Jordache is simply wrong. See Tr. at 79-80, 345-47, 435-37. Jordache claims that some of this evidence should not have been admitted. n2 <sup>HN3</sup>Admissibility [*5] of the underlying evidence is a prerequisite for the admission of a summary document. See, e.g., Paddack v. Dave Christensen, Inc., 745 F.2d 1254, 1259 (9th Cir. 1984); In re Brackin, 148 Bankr. 953, 957 (Bankr. N.D. Ala. 1992) (citing Wright v. Southwest Bank, 554 F.2d 661, 663 n.5 (5th Cir. 1977); Needham v. White Laboratories, Inc., 639 F.2d 394, 403 (7th Cir.), cert. denied, 454 U.S. 927, 70 L. Ed. 2d 237, 102 S. Ct. 427 (1981)).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n2 The evidence was calculated by Valerie Hansen, a collection manager for a subsidiary of Jordache (see Tr. at 187), at the direction of the Court. Her calculations were based on a J.C. Penney directory of stores that Jordache said it could not authenticate. See Tr. at 212.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

The evidence at issue, reflected in Defendant's Trial Exhibit ("DX") 39, is a breakdown of sales to J.C. Penney stores in western Pennsylvania and West Virginia. See Tr. at 336-354. I directed Jordache to calculate this information only after it became clear to me that Plaintiff **[*6]** had asked for the information during discovery, that Defendant had failed to produce it, and that Defendant was capable of producing it. See generally Tr. at 187-213. The failure to authenticate the J.C. Penney directory of stores is due to Defendant's neglect. When Bergstein requested the breakdown during discovery, Jordache had plenty of time to produce the directory and had plenty of time to authenticate it. J.C. Penney is Jordache's customer (see Tr. at 190). Jordache cannot now claim the benefit of its failure to comply with Plaintiff's discovery request. DX 39 was properly admitted at trial. See Tr. at 434.

B. Finding of Implied Contract

Jordache also argues that the evidence does not support the jury's verdict that there was sufficient consideration to support an implied contract. Again, Defendant is incorrect. Plaintiff's testimony showed that Bergstein bought a house in response to Jordache's urging him to obtain an upscale showroom. Tr. at 37-40. Based on Plaintiff's testimony, the jury was entitled to find that Bergstein incurred substantial additional consideration. The jury's conclusion that Jordache had an implied contract with Bergstein for him to work **[*7]** for the company for four additional months is reasonable and is supported by the evidence.

C. Damages for Implied Contract

Next, Jordache argues that the jury's verdict awarding damages for breach of implied contract is duplicative of the jury's award of unpaid commissions for 1989. Defendant's argument lacks merit. The argument assumes that the jury's award for unpaid commissions for 1989 was for the entire year, rather than for sales by Bergstein until the date of his termination (August 11, 1989) . In fact, the verdict sheet asks in Part I, Question 2 whether Bergstein had "proved, by a preponderance of the evidence that Jordache failed to pay him sales commissions to which he is entitled on any sales made during the period March 5, 1986 to the date of his termination." In Question 3 of Part I, the jury was then asked to "set forth the dollar amounts, if any, that Jordache failed to pay Mr. Bergstein in each of the following years: (a) 3/5/86-12/31/86; (b) 1987; (c) 1988; (d) 1989." If Jordache found this portion of the verdict sheet confusing or objectionable, it could have objected or asked for clarification during the charge conference. Jordache did neither. See Tr. **[*8]** at 474-75. Further, as Plaintiff suggests, the jury may reasonably have concluded that Plaintiff was entitled to commissions after his termination for orders placed before he was fired but shipped afterward. Also, the damages for breach of implied contract encompass the additional consideration provided by Bergstein as well as lost commissions during the four-month period.

D. Jury's Use of Document Not Received in Evidence and Statements in Summation Regarding the Document

Plaintiff's Exhibit 40 was marked for identification at the trial but was never received in evidence. Tr. at 471, 473. The jurors were instructed not to take the exhibit with them into the jury room. Tr. at 496, 502. However, while deliberating, the jury sent a note asking about PX 40. It then became clear that at least one of the jurors brought the exhibit into the jury room. Tr. at 558. Jordache argues that the jury's use of PX 40 during its deliberations was prejudicial and that the prejudice was not cured by the Court's

subsequent instruction. See Tr. at 558-60. Jordache also argues that in summation, Plaintiff's counsel improperly "made what amounted to a missing document charge and a request [*9] that the jury make an adverse inference therefrom." Def. Reply Mem. (JNOV) at 8.

Again, Jordache's arguments lack merit. Some of the numbers in the exhibit were in evidence as part of Bergstein's tax returns. Tr. at 559. Other numbers in the exhibit are found in the testimony of Bergstein and Valerie Hansen. These alternative sources for the numbers, combined with the curative instruction in which the Court clearly stated which parts of the exhibit were already in evidence and which were contested, eliminate any possible prejudice that may have resulted from the jury's use of PX 40 during deliberations. Further, Jordache is mistaken in contending that PX 40 goes to the "very heart of the case." Def. Mem. (JNOV) at 21. The exhibit refers only to damages. In order to consider damages, the jury must first have decided the issue of liability against Jordache.

Finally, Jordache objects to the following portion of Bergstein's summation: n3

> If you find a trout in the milk, you know that milk has been adulterated, and if you find something about the claim of defendants in this case, you know it's fishy. They are the ones who have control of all the documents. They are the ones who [*10] have control of the records. They are the ones who have the effrontery to come into court and still not know until we worked last night just how much of the sales in Pennsylvania . . . were credited to the company, not paid to David Bergstein, or where the territory really was . . .

Tr. at 493. Despite Jordache's contention, these statements do not amount to a missing document charge. At best, it amounts to a charge that Defendant did not, before trial, compute a piece of information that it could have computed. The Court has already noted that this charge is valid. Tr. at 211-12. Moreover, the cases cited by Defendant are inapposite.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 Jordache objected during Bergstein's summation as well. I overruled the objection. Tr. at 493.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

In Koufakis v. Carvel, 425 F.2d 892 (2d Cir. 1970), the court granted a new trial because of "repeated improprieties by one counsel" that "severely prejudiced his adversary." 425 F.2d at 901. However, the improprieties in Koufakis consisted of Plaintiff's counsel repeatedly [*11] likening one of the defendants to a Mafia member. Id. Plaintiff's counsel also suggested throughout the trial that "the defendant should respond in damages because he is rich and the plaintiff is poor." Id. at 902. A third tactic the lawyer employed was "converting [defendant's] failure to testify into an opportunity to engage in repeated name-calling." Id. at 903. No such tactics were employed in this case.

In <u>Sharkey v. Penn Central Transp. Co., 493 F.2d 685, 689 (2d Cir. 1974)</u>, the court found that plaintiff's counsel had impermissibly used evidence for a purpose for which it was not admitted. In that case, an action under the Federal Employers' Liability Act for damages sustained by a railroad employee in a train accident, plaintiff's counsel emphasized in summation the plaintiff's loss of wages, as well as the fact that the railroad had made a 28-year employee a scapegoat for the accident. However, the court instructed the jury that the plaintiff could not recover for lost wages in this action, and that this was not a wrongful discharge case. Nonetheless, the Circuit Court held that the jurors "should have been more forcefully instructed that the fact that the **[*12]** plaintiff did not return to work for the railroad was not their concern in this case and that no damages for lost earnings were to be awarded." <u>493 F.2d at 688.</u> The Circuit Court concluded that "the verdict [$ 125,000] . . . was unconscionable and reflected a prejudice against the [defendant] exacerbated by an intemperate summation which resulted in a punitive verdict." <u>Id. at 689.</u> By contrast, in the instant case the verdict was not unconscionable, punitive, or "clearly excessive" (id.), nor was Plaintiff's counsel's summation intemperate. n4

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 See also <u>Commercial Credit Business Loans, Inc. v. Martin, 590 F. Supp. 328 (E.D. Pa. 1984).</u> In that case, "a new trial [was] required because of a persistent pattern of misconduct by defendants' counsel that continued despite [the Court's] numerous admonitions." <u>590 F. Supp. at 330.</u> This "wholly improper conduct" included counsel's "insistence on testifying, his persistence in stating his personal opinions regarding witnesses' testimony, and his repeated aspersions directed towards opposing counsel." <u>Id. at 332.</u> The court "noted at least 23 instances of improper statements in" the summation alone. Id. Moreover, these improprieties began in the attorney's opening statements and "continued unabated throughout" the trial. <u>Id. at 333.</u> None of these conditions exists here. Plaintiff's counsel in this case exhibited no improper behavior, let alone "frequent and grave improprieties." <u>Id. at 335.</u> Even if this Court were to conclude that counsel's above-quoted summation statement is objectionable, which it does not, that single statement hardly rises to the level of impropriety exhibited by counsel in Commercial Credit.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*13]**

In sum, Plaintiff's counsel did not act improperly, either in referring to PX 40 or in alluding to Plaintiff's difficulty in obtaining requested information. Despite two instructions from the Court (see Tr. at 496, 502), one juror accidentally took PX 40 into the jury room. The curative instruction was sufficient to render the error harmless.

E. Conclusion: Defendant's Motions

Defendant has not met the high standard required of a party seeking judgment as a matter of law. Consequently, Jordache's Rule 50(b) motion is denied. Nor has Defendant shown that a new trial is warranted. Far from being "quite clear that the jury reached a seriously erroneous result" (see <u>Bevevino, 574 F.2d at 684)</u>, it is evident that the jury's verdict is amply supported by the evidence. Because there has been no miscarriage of justice, Jordache's motion for a new trial is denied.

IV. Discussion of Plaintiff's Rule 59 Motion

Plaintiff seeks prejudgment interest on the jury award. The laws of New York and Pennsylvania differ with respect to prejudgment interest. "*HN4*In a diversity case, prejudgment interest is controlled by the rule of the jurisdiction whose law determines liability." [*14] N. Bloom & Son (Antiques) Ltd. v. Skelly, 673 F. Supp. 1260, 1269 (S.D.N.Y. 1987) (citing Entron, Inc. v. Affiliated FM Ins. Co., 749 F.2d 127, 131 (2d Cir. 1984)). Under the law of this case, Pennsylvania law determines liability. See Opinion of Judge Cannella dated June 21, 1991, at 4, 13-14. Accordingly, Pennsylvania law governs the determination of whether Plaintiff is entitled to prejudgment interest.

*HN5*Under Pennsylvania law, prejudgment interest is a matter of legal right in breach of contract cases. Knop v. McMahan, 872 F.2d 1132, 1144 (3d Cir. 1989) (citing Buford v. Wilmington Trust Co., 841 F.2d 51, 56-57 (3d Cir. 1988)); see also American Enka Co. v. Wicaco Mach. Corp., 686 F.2d 1050, 1057 (3d Cir. 1982) (award of contract prejudgment interest is mandatory). Therefore, Bergstein is entitled to prejudgment interest on the portion of the damages the jury awarded on the breach of contract and breach of implied contract claims. "Interest is recoverable from the time for performance on the amount due . . . . " Knop, 872 F.2d at 1144 (citing Restatement (Second) of Contracts § 354). The Court accepts Plaintiff's suggestion that for each year for which [*15] damages were awarded, the end of that year is an appropriate time from which to calculate prejudgment interest. See Pl. Reply Mem. (Prejudgment Interest) at 8-9. *HN6*The statutory rate in Pennsylvania is six percent simple interest. 41 Pa. Stat. Ann. § 202 (Purdon Supp. 1988); see also Rizzo v. Haines, 520 Pa. 484, 555 A.2d 58, 69 (Pa. 1989). Finally, Bergstein is not entitled to prejudgment interest for the damages awarded by the jury on his tort claim. n5 My calculation of the interest due Bergstein is set forth below.

Jury Award for 1986: $ 11,079.00
Interest due: $ 11,079.00 x .06 x (8 + (331/365)) n6 = $ 5,920.74

Jury Award for 1987: $ 35,820.00
Interest due: $ 35,820.00 x .06 x (7 + ((331/365)) = $ 16,993.40

Jury Award for 1988: $ 22,956.00
Interest due: $ 22,956.00 x .06 x (6 + ((331/365)) = $ 9,513.22

Jury Award for 1989: $ 69,740.00
Interest due: $ 69,740.00 x .06 x (5 + ((331/365)) = $ 24,716.62

Jury Award for 1989 (breach of implied contract): $ 12,408.00
Interest due: $ 12,408.00 x .06 x (5 + ((331/365)) = $ 4,397.53

Total interest due: $ 61,541.51

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n5 See American Enka, 686 F.2d at 1056-57 (award of damages for delay in tort actions is discretionary with the fact-finder). [*16]

n6 The fraction 331/365 represents the portion of 1995 preceding the judgment on

November 27.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -V. Conclusion

For the foregoing reasons, Defendant's post-trial motions are denied. Plaintiff's motion for prejudgment interest is granted to the extent described in Part IV, supra. The judgment entered in this case upon the jury verdict on November 27, 1995, shall be and hereby is amended to include $ 61,541.51 in prejudgment interest, in addition to the $ 177,003.00 damage award, for a total of $ 238,544.51.

SO ORDERED:

Shira A. Scheindlin

U.S.D.J.

Dated: New York, New York
May 17, 1996

Service: **Get by LEXSEE®**
Citation: **1996 U.S. Dist. LEXIS 6894**
View: Full
Date/Time: Wednesday, September 8, 2004 - 2:55 PM EDT

* Signal Legend:
● - Warning: Negative treatment is indicated
▲ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
ⓘ - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

About LexisNexis | Terms and Conditions

Copyright © 2004 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.