UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ALICE SVEGE, ADMINISTRATRIX, et al., : : : Plaintiffs, : : v. : : MERCEDES-BENZ CREDIT CORP., et al., : : : Defendants. : | No. 3:01cv1771(MRK) |

## MEMORANDUM OF DECISION

This case arises from a terrible tragedy. On September 16, 1999, a Freightliner tractor-trailer truck (the "Freightliner") driven by Scottie Wightman went out of control, struck a concrete barrier separating the east-bound and west-bound traffic lanes on the Pennsylvania Turnpike, became airborne and ultimately collided with and crushed an SUV driven by Thor Svege, Sr., which was occupied by members of his family who were returning from vacation. Three members of the Svege family were killed and three were injured. Plaintiffs claim that the Defendants, who manufactured and sold the Freightliner, are liable under the Connecticut Product Liability Act, Conn. Gen. Stat. §§ 52-572m *et seq.* ("CPLA"), for alleged defects in the Freightliner that Plaintiffs claimed to have proximately caused the accident and the deaths and injuries of Svege family members.

The case was tried to a jury in August 2004, and on August 18, 2004, the jury returned a unanimous verdict for Defendants. Presently before this Court is Plaintiffs' Rule 59 Motion for a

1

New Trial Upon the Grounds that the Jury's Findings Were Against the Weight of Evidence [doc. # 181].[1]  For the reasons stated below, the Court DENIES Plaintiffs' Motion.

**I.**

At trial, the parties disagreed about both the cause of the accident and whether the Freightliner was defective and submitted evidence on both issues.  The focus of the dispute centered on the Freightliner's engine brake, also known as the "Jake" brake.[2]  In brief, Plaintiffs argued that the Freightliner's engine brake was engaged at the time of the accident and that use of the engine brake on the wet and slippery road conditions that existed on September 16 caused the Freightliner to jackknife and/or careen out of control.  Plaintiffs also asserted that the Freightliner was unreasonably dangerous and defective at the time because use of the engine brake on wet and slippery roadways would cause a loss of vehicle control.  Plaintiffs alleged that Defendants were fully aware of this dangerous condition and yet, despite their knowledge, Defendants did not incorporate or make available feasible mechanisms that would control use of the engine brake system under inclement conditions and that Defendants also failed to provide adequate warnings and instructions regarding the Freightliner's allegedly dangerous propensities.  *See* Am. Substituted Compl. [doc. # 1] ¶ 40.

Defendants denied that the Freightliner was defective or unreasonably dangerous and that

---

[1]  Also still pending on the docket sheet is Defendants' Motion for A Directed Verdict [doc. # 168] which the Court now DENIES as moot.

[2] A "service brake" is what most drivers think of when they think of brakes.  The service brake is actuated by a pedal on the floor of the cab and it slows the vehicle by exerting friction on the wheels using the brake drums and brake shoes.  When the service brake is applied, it affects all of the wheels on a tractor-trailer.  By contrast, the engine brake does not exert friction on each wheel but uses the engine itself to slow and control the vehicle by retarding the rotation of the drive axle.

2

use of the engine brake caused the accident. Specifically, Defendants asserted: that the engine brake was not engaged at the time of the accident; that even if the engine brake had been engaged, the Freightliner's Anti-Lock Braking System ("ABS") would have electronically disengaged the engine brake in the circumstances of this case; and that even if the engine brake had been engaged and was not disengaged by the ABS system, use of the engine brake in the conditions that existed on September 16 did not cause the loss of vehicle control that Wightman experienced that day.[3]  Defendants also contested Plaintiffs' assertion that Defendants failed to provide adequate warnings and instructions regarding use of the engine brake.

On their verdict form, the jury was asked to answer a series of questions addressed to each of Plaintiffs' theories of liability under the CPLA. *See* Pls.' Rule 59 Mot. [doc. #181], Ex. A. The jury rejected each of Plaintiffs' theories of strict liability. In particular, the jury answered "No" when asked whether the Freightliner was defective or unreasonably dangerous in any of the following three respects claimed by Plaintiffs: "Because the engine brake on the Freightliner could be used in wet weather on a slippery roadway"; "Because Defendants failed to provide adequate warnings and instructions regarding use of engine braking in wet pavement conditions"; "Because the tractor-trailer was not reasonably fit for its intended purpose since it could not be driven safely on wet and slippery surfaces with the engine brake enabled." *Id*. at 1. The jury was told on the verdict form that if they did not find the Freightliner to be defective or unreasonably dangerous, there was no need to answer whether the defective or unreasonably dangerous condition of the Freightliner was a proximate cause in producing Plaintiffs' claimed injuries.

---

[3] In particular, Defendants argued that the coefficient of friction was not low enough to cause a loss of traction and that the physical evidence at the scene indicated that an engine brake induced loss of traction did not occur.

The jury followed that instruction.

Similarly, the jury also rejected Plaintiffs' breach of implied warranty theory of liability. The jury answered "No" when asked whether the Freightliner was unfit for the ordinary purposes for which it was intended, and as a result of that answer, the jury was not required to address (and did not address) the issue of proximate cause on Plaintiffs' breach of implied warranty theory. *Id.* at 3.

On Plaintiffs' negligence theory of liability, the jury was asked whether Defendants had been negligent in any of the following four respects:

> (1)   In equipping the Freightliner with an engine brake that was known to cause loss of vehicle control when enables on a wet and slippery roadway?
>
> (2)   In not having tested the engine brakes despite having used the engine brakes since 1976?
>
> (3)   In failing to adequately warn and instruct that use of the engine brake on a wet and slippery roadway could lead to loss of vehicle control?
>
> (4)   In failing to manufacture a Freightliner that was reasonably fit for its intended purpose?

The jury answered "No" to Questions (1) and (4) above but answered "Yes" to Questions (2) and (3), thereby concluding that Defendants had been negligent in not having tested the engine brakes and in failing to adequately warn and instruct that use of the engine brake on a wet and slippery roadway could lead to loss of vehicle control. *Id*. at 3.  The jury's "Yes" answers on Plaintiffs' negligence theories required the jury to proceed to the next question:

> Do you find by a preponderance of the evidence that the Defendants' negligence was a proximate cause in producing the injuries and deaths that resulted from the collision between the Freightliner tractor-trailer and the Svege SUV?

To that question, the jury answered "No," which concluded the jury's deliberations. *Id*. Based upon the jury's answers to the questions on the verdict form, the Court entered a judgment for Defendants on August 20, 2004 [doc. # 176].

Plaintiffs now move for a new trial. Notably, Plaintiffs do not claim that there was any error in the Court's charge to the jury or in the verdict form itself. Nor do Plaintiffs argue that a new trial is necessary because of any error in the Court's many rulings on evidence or witnesses. The sole basis on which Plaintiffs seek a new trial is their claim that all of the jury's findings other than its finding that Defendants were negligent in failing to warn and to test, are against the weight of the evidence.

## II.

As Plaintiffs acknowledge, a grant of a new trial "is usually warranted only if [the district court] is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Sorlucci v. New York City Police Dep't*, 971 F.2d 864, 875 (2d Cir. 1992) (quoting *Smith v. Lightening Bolt Prods., Inc.,* 861 F.2d 363, 370 (2d Cir. 1988)); *see* Pls.' Rule 59 Mot. [doc. # 181] at 1. "Absent a showing of clear error or manifest injustice, it will generally be appropriate to deny relief pursuant to Rule 59 since litigants should neither be required nor without good cause permitted to relitigate already-decided matters." *Bergstein v. Jordache Enterp., Inc.*, 1996 U.S. Dis. LEXIS 6894, at *4 (S.D.N.Y. May 17, 1996). In short, "Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.' " *Sequa Corp. v. GBJ Corp.*, 159 F.3d 136, 144 (2d Cir. 1988).

Unlike on a motion for judgment as a matter of law under Rule 50, however, the trial

judge in considering a Rule 59 motion for a new trial may weigh the evidence and need not view the evidence in the light most favorable to the verdict winner. *Manley v. AmBase Corp.*, 337 F.3d 237, 245 (2d Cir. 2003). Furthermore, a court may grant a new trial under Rule 59 even if there is substantial evidence to support the jury's verdict. *Id.*

### III.

In Plaintiffs' new trial motion, they assert that this case is "strikingly similar" to *Densberger v. United Technologies Corp.*, 125 F. Supp. 2d 585 (D. Conn. 2000). Insofar as the disposition of the new trial motion in *Densberger* is concerned, the Court would agree. For in denying the Rule 59 motion in *Densberger*, Judge Janet C. Hall made the following statement that aptly sums up this Court's view of Plaintiffs' motion for a new trial in this case:

> Reviewing the evidence presented at trial, the court finds that there is substantial, credible evidence presented at trial to support the jury's verdict . . . The court is not persuaded by [the movant's] attempts to characterize the evidence in its favor and will not second-guess the jury's credibility judgments . . . The court is simply not convinced that the jury reached a seriously erroneous result or that the verdict is a miscarriage of justice. As such, [the] motion for a new trial on the basis that the jury's verdict is against the weight of the evidence is denied.

*Id.* at 598.

Over the course of nearly two weeks, both sides submitted lay and expert testimony and substantial documentary evidence in support of their respective positions. In the Court's view, the jury was not required to credit Plaintiffs' witnesses, Plaintiffs' version of events or Plaintiffs' legal theories over Defendants. Yet, that is the premise of Plaintiffs' new trial motion. In particular, the Court notes that Defendants submitted substantial and credible evidence that Wightman had disengaged the engine brake before he lost control of the Freightliner. In fact, in

weighing the evidence on this point, the Court would have to conclude that Defendants' evidence that the engine brake was not engaged at the time of the accident was far more substantial and credible than Plaintiffs' evidence to the contrary. This evidentiary disparity on whether the engine brake was even engaged at the time of the accident undoubtedly explains the jury's verdict that any negligence on Defendants' part in testing or in warnings was not the proximate cause of the injuries and deaths that occurred on September 16.

On the other issues on which the jury found against Plaintiffs, the Court also believes that the Defendants submitted substantial and credible evidence that supports the jury's findings. In particular, both parties submitted the testimony of several expert witnesses on whether the Freightliner was defective or unreasonably dangerous and also on the cause of the accident. While there were some flaws in either the background, work, or testimony of each side's experts – a point that both counsel made to the jury in closing argument – the jury was entitled to credit the testimony of Defendants' experts over Plaintiffs'. The Court certainly cannot conclude that the jury reached a seriously erroneous result or that its verdict represents a serious miscarriage of justice in any respect.

This was a hotly contested case in which each side presented the jury with a substantial amount of evidence in support of their respective (and diametrically opposed) positions. The jurors listened carefully to the evidence presented, the arguments of counsel and the instructions from the Court. They then worked their way through the verdict form in a systematic and deliberate fashion over the course of nearly three days of deliberations, and despite the obvious emotional appeal of Plaintiffs' case, the jurors followed the Court's instructions and rendered a just and true verdict on the evidence without regard to the consequences of their verdict. The

Court does not believe that there is any basis to set aside the jury's hard work and their considered judgment of the facts.

### IV.

Accordingly, Plaintiffs' Rule 59 Motion For a New Trial [doc. # 181] is DENIED. Defendants Motion for A Directed Verdict [doc. # 168] is DENIED as moot.  **The Clerk is directed to close this file.**

IT IS SO ORDERED,

/s/     <u>Mark R. Kravitz</u>
United States District Judge

Dated at New Haven, Connecticut: <u>September 28, 2004</u>.